UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-40252-FDS

| | |
|---|---|
| PETERBOROUGH OIL COMPANY, INC. and DIANE CLARK, Plaintiffs, | ) ) ) ) |
| v. | ) ) |
| GREAT AMERICAN INSURANCE CO. Defendant. | ) ) ) ) |

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Peterborough Oil Company, Inc. ("Peterborough") filed this action against Great American Insurance Co. ("Great American") for breach of contract and violations of Massachusetts General Laws Chapters 93A and 176D, seeking defense and indemnification in connection with a suit brought against Peterborough by Cheryl Carter. The case is now before this Court on Peterborough's Motion for Summary Judgment by which Peterborough seeks a ruling that Great American pay the costs of defense, the costs of this suit, and indemnify it for a final judgment entered against Peterborough, if any.

As demonstrated below, under Massachusetts law, Peterborough is entitled to judgment for the defense costs incurred to date in the Carter case, the defense costs to be incurred on appeal, and its costs in bringing this action to require Great American to fulfill its contractual obligations. In addition, Peterborough is entitled to judgment that Great American must indemnify Peterborough for the judgment entered against it in the underlying Carter case.

Finally, Peterborough is entitled to summary judgment on its claim under Massachusetts General Laws Chapters 93A and 176D, where, as here, liability is clear and Great American continues to disclaim coverage.

In the underlying Carter case, the Plaintiff alleged that Peterborough maliciously prosecuted her and, after trial, the jury found that Peterborough did so. A judgment was entered against Peterborough in the amount of $300,000. The insurance policy issued by Great American <u>expressly</u> provides coverage for malicious prosecution. There exists no applicable exclusion. Hence, Great American violated its clear and obvious duty to defend and to indemnify Peterborough by its continuing denial of coverage.

## FACTS

In 2002, Cheryl Carter brought a lawsuit against Peterborough and Clark (hereafter both will be referred to as "Peterborough"), alleging malicious prosecution and intentional infliction of emotional distress arising out of the Middlesex County District Attorney's Office unsuccessful prosecution of Carter for Larceny over $250 in violation of G.L. c. 266,§ 30. (Ex. A to Bachrach Aff. at ¶¶ 22-37,42.) The Complaint alleges that Carter never worked for Peterborough after it was discovered that over $6,000 was missing on January 21, 1999, and that her employment was formally terminated on February 16, 1999. (Ex. A to Bachrach Aff. at ¶¶ 11,15.) Peterborough's alleged wrongful actions occurred months after her employment with Peterborough terminated. Carter alleged that Peterborough wrongfully and maliciously procured the continuation of a criminal prosecution against her when it had allegedly become clear that probable cause did not exist. (Ex. A to Bachrach Aff. at ¶¶ 22-37.) Specifically, Carter based the malicious prosecution claim, both in her complaint and in her trial testimony, on Peterborough's alleged statement to a police officer at a probable cause hearing <u>on May 21, 1999</u>, several months after her employment

was terminated, to proceed with the hearing, after Carter's counsel represented that there was a video surveillance tape which allegedly contained exculpatory evidence.

Peterborough promptly notified Great American of Carter's suit, provided it with a copy of the summons and complaint, and demanded that Great American fulfill it defense and indemnity obligations. Great American denied coverage. (Ex. B to Bachrach Aff.) In March of 2004, Peterborough notified Great American of the approaching trial date and again demanded that Great American fulfill its defense and indemnity obligations as required by the policy. (Ex. C to Bachrach Aff.) Great American again disclaimed coverage under the policy. (Ex. B to Bachrach Aff.)

In the face of Great American's denial is the undisputed fact that <u>the policy expressly provides liability coverage for malicious prosecution</u>. Coverage B of the Policy provides coverage for "personal injury" "caused by an offense arising out of [Peterborough's] business." (Ex. D to Bachrach Aff. at 5.) As relevant here, "Personal Injury" is defined in the Policy as "injury, other than 'bodily injury,' arising out of one or more of the following offenses: … <u>b. malicious prosecution</u>." (Ex. D to Bachrach Aff. at 5.) (emphasis added.)

In denying coverage, Great American essentially relies on the "Employment-Related Practices Exclusion," which provides, in relevant part (Ex. D to Bachrach Aff. at 5):

> This insurance does not apply to:
> 1. "Personal injury" to:
>    a. a person arising out of any:
>       1. refusal to employ that person;
>       2. termination of that person's employment;
>       3. employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation discrimination directed at that person; or ….

Both as alleged in the Complaint and based on the trial testimony, this exclusion does not apply. As alleged in paragraph 23 of her Complaint and at trial, the evidence established that Carter's claims were not based on <u>any</u> refusal to employ, termination of employment or employment-related practice. Rather, Carter's claims were based on Peterborough's alleged statement to a police officer at a probable cause hearing <u>on May 21, 1999</u>, to proceed with the hearing, after Carter's counsel represented that there was a video surveillance tape which allegedly contained exculpatory evidence, more than three months <u>after</u> her termination. This was the key evidence upon which Carter relied in arguing that Peterborough maliciously prosecuted her. Indeed, in Carter's oppositions to Peterborough's post-trial motions, Carter asserted (Ex E to Bachrach Aff.):

> [T]here was ample evidence that Peterborough took an active part in continuing or procuring the continuation of criminal proceedings against Carter. ***The primary evidence*** was that at the second probable cause hearing, when officer Bolonis and Clark were informed of a surveillance tape that showed someone other than Carter playing scratch tickets without paying for them, Officer Bolonis asked Carter what Peterborough wanted to do. Rather than review the tape, Clark said that Peterborough wanted to prosecute. And therefore, without ever seeing the surveillance tape, the Clerk-Magistrate issued the criminal complaint against Carter. (*emphasis added*)

After trial, the jury returned a verdict against Peterborough on, among other grounds, malicious prosecution in the amount of $300,000. (Ex. F to Bachrach Aff.) Peterborough timely appealed. On September 28, 2004, Peterborough again notified Great American of its duty to defend and indemnify Peterborough relative to the appeal and the judgment entered against Peterborough. (Ex. G to Bachrach Aff.) Great American again disclaimed coverage in a letter dated October 29, 2004. (Ex. H to Bachrach Aff.)

## ARGUMENT

### I.  Summary Judgment Standard.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). When deciding a motion for summary judgment, the facts must be viewed in the light of the non-moving party. Leahy v. Raytheon Co., 315 F.3d 11, 17 (1st Cir. 2002). Summary judgment must enter against the non-moving party if the non-moving party fails to establish any element essential of its case. Celotex Corp. v. Catrett, 477 U.S. 377, 382 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252 (1986).

### II.  The Standard For Determining Great America's Duty To Defend.

"It is well settled in this jurisdiction that a liability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity." Doe v. Liberty Mutual Insurance Co., 423 Mass. 366, 368-69 (1996). The obligation to defend is broader than the duty to indemnify and turns on the facts alleged in the complaint. Millipore Corp. v. Travelers Indemnity Co., 115 F.3d 21, 35 (1st Cir. 1997); Boston Symphony Orchestra Inc. v. Commercial Union Insurance Co., 406 Mass. 7, 10-11 (1989); Sterilite Corp. v. Continental Casualty Co., 17 Mass. App. Ct. 316, 318 (1983). Great American had to defend Peterborough if the allegations in the underlying Carter suit were "reasonably susceptible" of an interpretation that they state a claim covered by Great American's policy. Merchants Insurance Co. of New Hampshire Inc. v. United States Fidelity & Guarantee Co., 143 F.3d 5, 6-8 (1st Cir. 1998); New England Mutual Life Insurance Co. v. Liberty Mutual Insurance Co., 40 Mass. App. Ct. 722, 723 (1996); Sterilite,

17 Mass. App. Ct. at 318. Put otherwise, an insurer's obligation to defend against a liability claim is determined by the allegations in the complaint and facts known or readily ascertainable by the insurer on investigation can also give rise to a duty to defend. Boston Symphony Orchestra, 406 Mass. at 10-11; Desrosiers v. Royal Insurance Co. 339 Mass. 677, 681-82 (1964).

The Court determines Great American's duty to defend by matching the underlying complaint with the policy provisions. Sterilite, 17 Mass. App. Ct. at 318. As stated by the Appeals Court:

> If the allegations of the complaint are "reasonably susceptible" of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense....Otherwise stated, the process is one of envisaging what kinds of losses may be proved as lying within the range of allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.

Sterilite, 17 Mass. App. Ct. at 318. Thus, Great American must provide a defense if the allegations raise the possibility of a covered claim.

Great American bears the burden of establishing the applicability of any exclusions. Mt. Airy Insurance Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997); Great Southwest Fire Insurance Co. v. Hercules Building & Wrecking Co., 35 Mass. App. Ct. 298, 302-03(1993). Under Massachusetts law, exclusions are strictly construed against the insurer. Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 282 (1997); Sterilite, 17 Mass. App. Ct. 316; Mt. Airy, 127 F.3d at 19.

Finally, this Court must also consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Hakim, 424 Mass. At 282, quoting, Trustees of Tufts University v. Commercial Union Insurance Co., 415 Mass. 844, 849 (1993). Where, as here, Peterborough is expressly covered for a malicious prosecution claim, this Court

must take into consideration whether Peterborough would reasonably expect to have coverage for the malicious prosecution claim brought by Carter.

III.     <u>Great American Breached Its Duty To Defend Peterborough In The Carter Matter.</u>

The <u>Carter</u> complaint unequivocally states a claim of malicious prosecution against Peterborough. Carter alleged that Peterborough maliciously prosecuted her by allegedly urging the continuation of the criminal prosecution when it allegedly became clear that probable cause did not exist.[1]  <u>The policy expressly provides coverage for malicious prosecution</u>. "Personal Injury" is defined in the Policy as "injury, other than 'bodily injury', arising out of one or more of the following offenses:...***b. malicious prosecution***." (emphasis added)  Thus, the policy contains an affirmative grant of coverage for malicious prosecution claims arising out of the insured's business. Hence, by applying the test of matching the complaint to the policy it is indisputable that the Complaint stated claims within the policy coverage, and Great American was obligated to provide a defense in this case. Its refusal to do so constitutes a clear breach of its obligation to defend under the policy.

To avoid the obvious result that it was required to provide coverage, Great American denied coverage based on the "EMPLOYMENT-RELATED PRACTICES EXCLUSION" to the policy. This exclusion has no application based on the allegations of the Complaint and the

---

[1] It is alleged in the Complaint, that:

> 23. On May 21, 1999, the Probable Cause hearing before the Clerk-Magistrate in Ayer District Court was resumed. Clark was there as the representative for Peterborough Oil. Counsel for Carter informed the Clerk-Magistrate and Police Officer from the Groton Police Department of the existence of this surveillance tape and the fact that it showed someone other than Carter playing scratch lottery tickets without paying for them. ***Officer Bolonis asked Clark what she wanted to do. Clark advised Officer Bolonis and the Clerk-Magistrate that she still wanted Carter to be prosecuted for larceny over $250.*** (emphasis added)

It is also alleged in the Complaint that Carter never again actively worked for Peterborough after it was discovered that over $6,000 was missing on <u>January 21, 1999</u>, and that she was formally terminated on <u>February 16, 1999</u>. (Ex. A to Bachrach Aff. ¶¶11, 15.)

information reasonably known to Great American. The Employment-Related Practices Exclusion only abrogates coverage for certain expressly identified employment-related practices, such as the refusal to employ, the termination of a person's employment, demotion, reassignment, or discipline.[2] By the allegations of the Complaint, the malicious prosecution claims asserted in this action did not arise out of any employment related act or practice. Thus, the plain language of the exclusion has no application here. There is simply no causal connection between the alleged wrongful act and the identified exclusions. Rather, the claims were premised on acts occurring in the context of a criminal proceeding in the Ayer District Court, actions which are in no way described in the exclusion.

No Massachusetts cases have addressed this exclusion. Despite the fact that the alleged wrongful conduct does not fall within the plain language of the identified exclusions, Great American points to the arising out of language and contends that such language should be read broadly to bring the allegedly wrongful actions within the penumbra of the exclusion. However, other courts have held the exclusion inapplicable in cases similar to this case. See HS Services v. Nationwide Mutual Insurance Co., 109 F.3d 642 (1997); Waffle House, Inc. v. The Travelers Indemnity Co. of Illinois, 114 S.W. 3d 601, 608-09 (2003); Great American Insurance Co. v.

---

[4] The Employment-Related Exclusion provides in part:
    This insurance does not apply to:
    1.    "Personal injury" to:
        a.    a person arising out of any:
            (1)    refusal to employ that person;
            (2)    termination of that person's employment; or
            (3)    employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, decipline [sic], defamation, harassment, humiliation, discrimination directed at that person; ...

Hartford Insurance, 621 N.E. 2d 796 (Ohio App. 1993). These Courts reason, just as the courts in this Commonwealth, that exclusions must be strictly construed and that such an expansive reading of "arising out of" would virtually read the grant of coverage out of the policy.

HS Services is instructive here. In HS Services, the Plaintiff in the underlying case alleged that his former employer defamed him some three months after he was terminated from his employment. The employer made an allegedly false statement that the underlying Plaintiff was terminated for acts involving dishonesty. The Court held that the exclusion did not apply: "We hold that to 'arise out of' a termination of employment, the defamatory remark at issue must have been a part of or directly and proximately result from the termination....We also hold that for an act or omission to be "employment related," the relationship must be direct and proximate. 109 F.3d at 646. In doing so, it reasoned, "[Although its content is directed to [the underlying Plaintiff's] employment, the statements were not made in the context of [the underlying Plaintiff's] employment....While it may be literally true that the remarks "related" to [the underlying Plaintiff's] employment, that relationship was too indirect and attenuated to qualify under the exclusion." 109 F.3d at 646.

The Waffle House, Inc. case is also instructive. In that case, the Court stated: "The text the Supreme Court recently stated that the phrase 'arise out of' should be interpreted as requiring a 'but-for' causal relationship.  114 S.W. 3d at 608, citing Mid Century Insurance Co. v. Lindsey, 997 S.W. 2d 153, 156 (Tex. 1999). Thus, in that case, the Court held that an action does not "arise out of" an employment related practice unless there is a causal connection or relation between, in that case, the defamatory statements and the underlying Plaintiff's employment. In Waffle House, the Court held that the defamatory statements arose out of Waffle House's attempt to prevent its employees from leaving the company and not out of the

underlying Plaintiff's termination of an employment. As the Court stated, "In other words, no causal relationship exists between the defamation and [the underlying Plaintiff's] employment." 114 S.W. 3d at 609.

Application of these cases substantiate that the underlying Complaint and facts reasonably known to Great American established at least a possibility of coverage under the policy. Based on the allegations of the Complaint, Carter's claims come within the plain language of the policy which provide coverage. The plain language of the identified exclusion by employment related practices simply has no application to the malicious prosecution alleged by Carter. As such, Great American was obligated to provide a defense. Since the claims as alleged in the Complaint reasonably adumbrate a covered claim, Great American breached its obligation to provide Peterborough with a defense in this case. That breach continues since the case is on appeal and Great American continues to deny its duty to provide defense. Hence, this Court should enter judgment against Great American ruling that it must reimburse Peterborough for costs incurred to date, the costs of appeal, and the attorney's fees and costs of bringing this action. Liberty Mutual Insurance Co. v. Continental Casualty Co., 771 F.2d 579, 582 (1st Cir. 1985); Rubenstein v. Royal Insurance Co. of America., 44 Mass. App. Ct. 842, 852 (1998).[3]

IV.    Great American Breached Its Duty To Indemnify Peterborough.

At Trial, although it was undisputed that neither Peterborough or Clark initiated the criminal proceedings, the Court permitted Carter to pursue malicious prosecution claims under a continuation theory. The only evidence of any action taken by any agent of Peterborough to procure the continuation of the criminal prosecution was Diane Clark's purported request at the May 21, 1999 Probable Cause Hearing that the hearing go forward after Carter's counsel's

---

[3] This issue was affirmed in Rubenstein v. Royal Insurance Co. of America, 429 Mass. 355, 356 (1999).

represented to the Clerk-Magistrate that there was a video surveillance tape which purportedly contained exculpatory footage. This evidence is now binding on Great American for purposes of this coverage dispute because it breached its duty to defend. Thus, for purposes of coverage, the "personal injury" to Carter did not arise out of a failure to employ, a termination of employment, or other employment related practice, policy act or omission. Rather, the "personal injury" indisputably arose out of a statement made in the course of a criminal proceeding, months after the employment relationship had ended. As such, the exclusion relied upon by Great American, which must be strictly construed under Massachusetts law, does not apply by its terms. See HS Services, 109 F.3d 642; Waffle House, Inc, 114 S.W. 3d at 608-09; Great American Insurance Co, 621 N.E. 2d 796 (Ohio App. 1993).

V.   Great American's Denial Of Coverage Violated Massachusetts General Laws 93A and 176D.

It is a violation of Massachusetts General Laws Chapters 93A, § 11, and 176D, § (3)(d) if an insurance company denies coverage where coverage is clear. Great American's obligation to defend and indemnify Peterborough were clear under the policy terms. Great American ignored its clear and absolute obligations. Indeed, based on the information available to Great American, it can be concluded only that such violations were willful and knowing violations of Chapters 93A and 176D. Thus, this Court should find Great American liable under those statutes and award Peterborough double or treble costs and its reasonable attorney's fees.

## **CONCLUSION**

For the reasons set forth above, Peterborough requests this Court to grant its Motion for Summary Judgment.

                                      PETERBOROUGH OIL COMPANY, INC.
                                      and DIANE CLARK
                                      By their attorneys,

_____
Barry A. Bachrach (BBO #025490)
James P. Hoban (BBO #633929)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

Date:   February 25, 2005

### CERTIFICATE OF SERVICE

I, Barry A. Bachrach, hereby certify that I have served a copy of the foregoing this 25 day of February, 2005 by mailing a copy of same, postage prepaid to:

    David D. Dowd, Esquire
    Curley & Curley, P.C.
    27 School Street, Suite 600
    Boston, MA 02108

                                                    _____
                                                    Barry A. Bachrach