UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-40252-FDS

PETERBOROUGH OIL COMPANY, INC. and    )
DIANE CLARK,    )
Plaintiffs,    )
    )
v.    )
    )
GREAT AMERICAN INSURANCE CO.    )
Defendant.    )
    )

## AFFIDAVIT OF BARRY A. BACHRACH, ESQ.

I, Barry A. Bachrach, on oath depose and say that I have personal knowledge of the facts set forth herein.

1.    I am counsel for plaintiff Peterborough Oil Company, Inc. and Diane Clark in above captioned action.

2.    Attached hereto as Exhibit A is a true and complete copy of the Complaint filed by Cheryl Carter against Peterborough Oil Company, Inc. and Diane Clark, Middlesex County Superior Court, Civil Action No. 02-1794L.

3.    Attached hereto as Exhibit B is a true and complete copy of a letter from Great American Insurance Group dated May 6, 2004.

4.    Attached hereto as Exhibit C is a true and complete copy of the letter from Peterborough Oil Company, Inc. to Great American Insurance Group dated March 30, 2004.

5.      Attached hereto as Exhibit D is a true and complete copy of the policy naming Peterborough Oil Co., Inc. as the insured.

6.      Attached hereto as Exhibit E is a true and complete copy of pages 1 and 9 of Plaintiff's Opposition to Defendant Peterborough Oil Company's Motion for Judgment Notwithstanding the Verdict.

7.      Attached hereto as Exhibit F is a true and complete copy of the jury vrdict against Peterborough Oil Company, Inc.

8.      Attached hereto as Exhibit G is a true and complete copy of the letter from Peterborough Oil Company, Inc. to Great American Insurance Group dated September 28, 2004.

9.      Attached hereto as Exhibit H is a true and complete copy of the letter from Great American Insurance Company dated October 29, 2004.

Signed under the pains and penalties of perjury this 25th day of February, 2005.


_____

Barry A. Bachrach

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail/hand on 2-25-05

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION NO. 02-1794 L

***************************************************
CHERYL CARTER                              *
     Plaintiff                               *
                                            *
    v.                                      *
                                            *     COMPLAINT
                                            *
PETERBOROUGH OIL COMPANY, INC., and        *
DIANE CLARK,                               *
     Defendants                              *
***************************************************

1. Plaintiff Cheryl Carter is an individual residing in Groton, Massachusetts.

2. Defendant Peterborough Oil Company, Inc. ("Peterborough Oil") is a corporation headquartered in Leominster, Massachusetts. It is in the business of owning and operating Mobil Oil gas stations throughout Massachusetts, including one in Groton, Massachusetts, under the name of Mr. Mike's.

3. Defendant Diane Clark is an individual residing in Ashby, Massachusetts, and at all relevant times was employed by Peterborough Oil in a management capacity.

4. On January 19, 1998, Peterborough Oil hired Carter as a cashier for its Mr. Mike's gas station in Groton, Massachusetts.

5. On or about April 29, 1998, Peterborough Oil evaluated Carter's job performance as being above average/outstanding, gave her a raise and promoted her to be the full-time Assistant Manager of the Mr. Mike's gas station in Groton, Massachusetts.

6. On or about August 5, 1998, Peterborough Oil evaluated Carter's job performance again and

as a result on or about August 27, 1998, gave her another raise.

7.     On or about October 22, 1998, Peterborough Oil promoted Carter to be the Manager of the Mr. Mike's gas station in Groton, Massachusetts.

8.     On January 21, 1999, Carter advised Peterborough Oil through a person named Lucy Gambino that there were cash shortages at the Mr. Mike's gas station in Groton, Massachusetts.

9.     Shortly after Carter reported this cash shortage, Clark and Gambino that same morning appeared at the Mr. Mike's gas station in Groton, Massachusetts. Clark then contacted the Groton Police Department and reported a larceny of $6,020.00 over a period of time by an employee. Clark reported to the Groton Police Department that she thought Carter was the employee guilty of the larceny. The Groton Police approached Carter to further investigate the matter. Carter was advised of her Miranda rights, which she waived. Carter told the Groton Police that she attributed the missing amounts to cash drawer shortages, SpeedPass problems and differences in gas prices.

10.     That same morning of January 21, 1999, Clark suspended Carter without pay from her duties as Manager of the Mr. Mike's gas station.

11.     Carter never actively worked for Peterborough Oil after January 21, 1999.

12.     At the Mr. Mike's gas station in Groton, Massachusetts, Peterborough Oil had surveillance cameras in several locations, including one camera focused on the cash register and the area where the cashier/service attendant normally worked. The images captured by these surveillance cameras were recorded on VCR tapes, each tape capable of recording images for 24 hours. The surveillance systems was designed such that the date and time was

2

digitally superimposed on the recorded images. Also, if any cashier opened the cash register for any purpose, such as for receiving payments for a Lottery ticket, that information was also digitally superimposed on the recorded images. At the Mr. Mike's gas station in Groton, Massachusetts, Peterborough Oil had seven VCR tapes, one for each day of the week. Peterborough Oil reused these tapes weekly, thereby taping over the images of the prior week. The Manager normally was responsible for daily switching these VCR tapes.

13.    Prior to actually leaving the premises of Mr. Mike's on January 21, 1999, Carter removed and took with her the surveillance tape covering the prior day, i.e., January 20, 1999.

14.    When Peterborough Oil suspended Carter without pay, it did not provide to her her final weeks pay checks.

15.    On February 16, 1999, Peterborough Oil terminated Carter's employment.

16.    On or about February 22, 1999, Carter filed a complaint with the Office of the Massachusetts Attorney General, complaining of the fact that Peterborough Oil was withholding her final weeks pay checks.

17.    Shortly thereafter Peterborough Oil in the person of Diane Clark formally filed criminal charges against Cater accusing her of larceny over $250.

18.    On April 14, 1999, a Probable Cause hearing was held in Ayer District Court before a Clerk-Magistrate on Peterborough Oil's criminal charge against Carter. The hearing concluded that day without any finding and was continued until another date so as to allow Peterborough Oil and counsel for Carter to review the relevant records for Mr. Mike's in Groton, Massachusetts, in an effort to determine the cause of cash shortages.

19.    On May 17, 1999, counsel for Carter met with representatives of Peterborough Oil in

Leominster, Massachusetts, to review the relevant records for Mr. Mike's in Groton, Massachusetts, in an effort to determine the cause of cash shortages. As a result of that review, counsel for Carter and representatives of Peterborough Oil mutually concluded that the cash shortages were due to someone playing scratch Lottery tickets without paying for them.

20. On the evening of May 17, 1999, Carter and her husband reviewed on their home VCR the VCR tape covering January 20, 1999. That tape showed that another cashier at Mr. Mike's at Groton, Massachusetts, was repeatedly playing scratch Lottery tickets without paying for them.

21. After Carter had been suspended/terminated by Peterborough Oil, she filed for unemployment compensation with the Massachusetts Division of Employment and Training. Peterborough Oil had opposed Carter's receipt of unemployment compensation benefits. As a result the Massachusetts Division of Employment and Training held a hearing on May 20, 1999, in Leominster, Massachusetts, regarding Carter's eligibility/ineligibility for unemployment compensation benefits.

22. Immediately prior to said hearing on May 20, 1999, counsel for Carter personally advised Clark and Peterborough Oil's counsel that he was in possession of a surveillance tape that showed that someone other than Carter was playing scratch Lottery tickets without paying for them. Counsel for Carter also advised Clark and Peterborough Oil's counsel that if they ignored this evidence and continued to prosecute Carter for larceny, they could be liable for malicious prosecution. Counsel for Carter offered to have the surveillance tape played for Clark and Peterborough Oil's counsel, but they refused to view the tape. Clark did indicate

4

that she would like a copy of the surveillance tape.

23.   On May 21, 1999, the Probable Cause hearing before the Clerk-Magistrate in Ayer District

Court was resumed.  Clark was there as the representative for Peterborough Oil.  Counsel

for Carter informed the Clerk-Magistrate and Police Officer Bolonis from the Groton Police

Department of the existence of this surveillance tape and the fact that it showed someone

other than Carter playing scratch Lottery tickets without paying for them.  Officer Bolonis

asked Clark what she wanted to do.  Clark advised Officer Bolonis and the Clerk-Magistrate

that she still wanted Carter to be prosecuted for larceny over $250.

24.   On or about June 14, 1999, Peterborough Oil through Clark was given a copy of the January

20, 1999, surveillance tape.

25.   On June 15, 1999, the Massachusetts Division of Employment and Training held is second

and last day of hearing on Carter's claim for unemployment compensation benefits.  At said

hearing it was Peterborough Oil's contention that Carter had in essence stolen approximately

$6,000 from Peterborough Oil and was therefore ineligible for unemployment compensation

benefits.

26.   On June 24, 1999, at the request of Peterborough Oil and Clark a criminal complaint was

issued against Carter for larceny over $250.

27.   On or about July 7, 1999, the Massachusetts Division of Employment and Training issued

its written decision regarding Carter's application for benefits.  After hearing all the

evidence, Peterborough Oil's allegation that Carter had stolen from it was summarily

dismissed: "While the employer may feel that the claimant [Carter] embezzled or otherwise

took the money in question in some fashion, the evidence does not support that position."

28. Peterborough Oil and Clark in timely manner received a copy of the decision of the Massachusetts Division of Employment and Training. Despite receiving a copy of this decision, Peterborough Oil and Clark continued to push the prosecution of Carter for larceny over $250.

29. On August 11, 1999, Carter was arraigned in Ayer District Court on the charge of larceny over $250. Carter pled not guilty.

30. A criminal trial was held in Ayer District Court on March 6 - 8, 2000, on the charge against Carter of larceny over $250. At this trial counsel for Carter played the relevant portions of the January 20, 1999, surveillance tape to the jury.

31. Upon information and belief, prior to said criminal trial Peterborough Oil and Clark had not viewed the January 20, 1999, surveillance tape.

32. Upon information and belief, at no time did Peterborough Oil and/or Clark view the other six surveillance tapes for the week prior to January 21, 1999.

33. Upon information and belief, at no time did Peterborough Oil and/or Clark have an independent audit done regarding the apparent cash shortages.

34. Clark testified at Carter's criminal trial on behalf of the Commonwealth against Carter.

35. On March 8, 2000, Carter was found "not guilty" of the charge larceny over $250.

36. Peterborough Oil and Clark initiated the above criminal proceedings against Carter without probable cause and for an improper purpose.

37. Peterborough Oil and Clark took an active part in continuing or procuring the continuation of the above criminal proceedings against Carter without probable cause and for an improper purpose.

6

38. By the foregoing Peterborough Oil and Clark intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of their conduct.

39. The above conduct of Peterborough Oil and Clark was extreme and outrageous.

40. The above conduct of Peterborough Oil and Clark caused emotional distress to Carter, damage to her reputation and financial losses

41. The emotional distress sustained by Carter was severe and of a nature that no reasonable person could be expected to endure it.

### Count I

42. Peterborough Oil is liable to Carter for malicious prosecution.

### Count II

43. Clark is liable to Carter for malicious prosecution.

### Count III

44. Peterborough Oil is liable to Carter for intentional infliction of emotional distress.

### Count IV

45. Clark is liable to Carter for intentional infliction of emotional distress.

r. 01/02

**WHEREFORE** plaintiff demands:

1. Judgment against the defendants;

2. Compensatory damages;

3. Punitive damages;

4. Attorney's fees;

5. Interest and costs; and

6. Any other remedy this Court deems meet and just.

**PLAINTIFF DEMANDS A JURY TRIAL**

Cheryl Carter

By her attorney

*Scott A. Lathrop*

Scott A. Lathrop, Esq.
Scott A. Lathrop & Associates
122 Old Ayer Road
Groton, MA 01450
(978) 448-8234
BBO No. 287820

Dated: April 26, 2002

8

Alternative Markets Division - Claims
PO Box 5432
Cincinnati, OH  45201-5432
800.824.3052 ph
888.223.1317 fax



**GREAT**AMERICAN
INSURANCE GROUP

## CERTIFIED MAIL
## RETURN RECEIPT REQUESTED

May 6, 2004

Attorney James Hoban
Bowditch & Dewey, LLP
311 Main Street
P. O. Box 15156
Worcester, MA  01615-0156

Re:   Cheryl A. Carter vs. Peterborough Oil Company, Inc.
      Claim Number:     702-507878
      Policy Number:    PAC 2470523 (Effective 9/30/98-99)
      Date of Loss:     1/21/99

Dear Attorney Hoban:

This will follow your correspondence of March 30, 2004 and our subsequent telephone conversation relative to the challenge by Peterborough Oil Company of the coverage position taken by Great American Insurance Company in connection with the above referenced matter.

Great American Insurance Company of New York affords Peterborough Oil with Commercial General Liability Coverage pursuant to the terms of policy number PAC 2470523.  This coverage is written on Form CG 00 01 (1/96) and has a per occurrence limit of $1,000,000.

It is our understanding that Peterborough Oil Company was attempting to facilitate a settlement in connection with Civil Action #02-1794-L currently pending in the Middlesex County Superior Court in connection with the above referenced matter.  Your March 30, 2004 correspondence and our subsequent telephone conversation challenged the position taken by Great American Insurance Company in our May 20, 2002 correspondence that there was no duty to defend or

Cheryl A. Carter vs. Peterborough Oil Company, Inc.
Page 2

indemnify either Peterborough Oil Company, Inc. or Diane Clark in this pending litigation based upon the language in the Employment Related Practices Exclusion endorsed in CG 21 47 attached to the above referenced policy. For your convenience, I am including this policy language below for your review:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.   **Insuring Agreement.**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

        We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle and claim or "suit" that may result. But:

        **(1)**    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

        **(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period.

Cheryl A. Carter vs. Peterborough Oil Company, Inc.
Page 3

    **c.**    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.**    **Insuring Agreement.**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

        **(1)**    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

        **(2)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    **b.**    This insurance applies to:

        **(1)**    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

        **(2)**    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

    but only if the offense was committed in the "coverage territory" during the policy period.

## SECTION V - DEFINITIONS

**1.**    "Advertising injury" means injury arising out of one or more of the following offenses:

Cheryl A. Carter vs. Peterborough Oil Company, Inc.
Page 4

      **a.**     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      **b.**     Oral or written publication of material that violates a person's right of privacy;

      **c.**     Misappropriation of advertising ideas or style of doing business; or

      **d.**     Infringement of copyright, title or slogan.

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**12.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13.**     "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

      **a.**     False arrest, detention or imprisonment;

      **b.**     Malicious prosecution;

      **c.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

      **d.**     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

      **e.**     Oral or written publication of material that violates a person's right of privacy.

**15.**     "Property damage" means:

      **a.**     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      **b.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Cheryl A. Carter vs. Peterborough Oil Company, Inc.
Page 5

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.    The following exclusion is added to Paragraph., **EXCLUSIONS of COVERAGE A. - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION I - COVERAGES);**

This insurance does not apply to:

    **1.**    "Bodily injury" to:

        **a.**    a person arising out of any:

            **(1)**    refusal to employ that person;

            **(2)**    termination of that person's employment; or

            **(3)**    employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

        **b.**    the spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (1), (2) or (3) above as directed.

This exclusion applies:

        **a.**    whether the Insured may be liable as an employer in any other capacity; and

        **b.**    to any obligation to share damages with or repay someone else who must pay damages because of the injury.

Cheryl A. Carter vs. Peterborough Oil Company, Inc.
Page 6

As we had discussed, it continues to be the position of Great American Insurance Company that the above captioned exclusionary endorsement applies in this matter.  I would disagree with your position that the alleged malicious prosecution of Cheryl Carter would not fall within the scope of this endorsement.  In past cases, the language of this endorsement has been reviewed and it has been determined that the exclusionary language is broad enough so that any employment-related "act or omission" would fall within the scope of the exclusion.  As we discussed, it continues to be our position that all of the actions occurring prior to the criminal charges against Mrs. Carter, as well as her subsequent arrest and prosecution on those charges, arose from the employment relationship between Peterborough Oil and Cheryl Carter.  Consequently, this litigation clearly falls within the scope of the exclusionary endorsement.

Therefore, for these and other good and valid reasons, Great American Insurance Company of New York continues to maintain its position that there is no coverage for Peterborough Oil Company, Inc. or Diane Clark in the above captioned matter and that we will not be participating in the defense of the pending litigation nor settlement discussions in this matter.

Thank you for your attention to this matter.  Should you have any evidence which would refute our interpretation of the policy, please do not hesitate to contact me.

Very truly yours,

*William J. Curtin/el*

William J. Curtin, CPCU
Sr. General Adjuster

WJC/el

PO Box 5432
Cincinnati, OH  45201-5432

Tel:    800-273-7328
Fax:    888-223-1317
EMail:  BCurtin@gaic.com

cc:    ECF



**Bowditch**
**& Dewey**
A T T O R N E Y S

311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
Telephone: (508) 791-3511
Facsimile: (508) 756-7636

*www.bowditch.com*

*Bowditch & Dewey*, LLP

Direct telephone:(508) 926-3448
Direct facsimile: (508) 929-3026
Email: jhoban@bowditch.com

March 30, 2004

*VIA FACSIMILE – 1-781-767-0662*
*AND REGULAR MAIL*

William J. Curtin, CPCU
Senior General Adjuster
Great American Insurance Group
P.O. Box 411
Holbrook, MA 02343

RE:    *Cheryl A. Carter v. Peterborough Oil Company, Inc., et al*
       *Civil Action No. 02-1794-L*
       *Insured:       Peterborough Oil Company, Inc.*
       *Claim No.:     702-507878*
       *Policy No.:    PAC 2470523*
       *Policy Period: 9/30/98 – 9/30/99*
       *Date of Loss:  1/21/99*

Dear Mr. Curtin:

    Please be advised that this office has been retained by your insured to defend the above-referenced action and with respect to coverage under the above-referenced insurance policy.

    As you know, in this action the plaintiff, Cheryl Carter ("Carter"), asserts causes of action for malicious prosecution and intentional infliction of emotional distress against Peterborough Oil Company, Inc. and Diane Clark arising out of the Middlesex County District Attorney's Office unsuccessful prosecution of Carter for Larceny over $250 in violation of G.L. c. 266, § 30.

    Please note that the trial in this case is presently scheduled to commence on Tuesday, April 20, 2004 at 9:00 a.m. in the Middlesex Superior Court, Lowell Division. Enclosed for your reference are the parties' Joint Pre-Trial Memorandum and Notice to Appear for trial.

    Please also be advised that the plaintiff's counsel, Scott A. Lathrop, has made a settlement demand in the amount of $90,000 in connection with the above-referenced matter. It is the intention of Peterborough Oil Company, Inc. to offer Carter $10,000 in full settlement of

{J:\CLIENTS\lit\302602\0001\00424313.DOC;1}

Metrowest Office: 161 Worcester Road, P.O. Box 9320 • Framingham, MA 01701-9320 • Telephone: (508) 879-5700 • Facsimile: (508) 872-1492

William J. Curtin, CPCU
Senior General Adjuster
March 30, 2004
Page 2

her claims.  It is also Peterborough Oil Company, Inc.'s intention to pursue Great American
Insurance Group ("Great American") for reimbursement of this amount, as well as all defense
costs, including, but not limited to attorneys' fees incurred to date if Great American refuses to
voluntarily honor its defense and indemnify obligations under the policy.

As such, Peterborough Oil Company, Inc. requests that you provide coverage for this
claim as required under the policy.  Please contact me to discuss this matter further at your
earliest convenience.

Very truly yours,

James P. Hoban

JPH:jfh
Enclosures
cc:    Mr. Jack Ford (w/enclosures)
       Thomas P. Mullins, Esquire (w/enclosures)

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                          SUPERIOR COURT
                                        CIVIL ACTION NO. 02-1794 L


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CHERYL CARTER                           \*
Plaintiff                               \*
                                        \*
v.                                      \*
                                        \*
PETERBOROUGH OIL COMPANY, INC., and     \*
DIANE CLARK,                            \*
Defendants                              \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## JOINT PRE-TRIAL MEMORANDUM

### I.     AGREED FACTS

None.

### II.    STATEMENT OF EXPECTED EVIDENCE

#### A.     PLAINTIFF'S STATEMENT

Peterborough Oil and Clark initiated and took an active part in continuing or procuring the continuation of the above criminal proceedings against Carter without probable cause and for an improper purpose.

#### B.     DEFENDANTS' STATEMENT

On January 21, 1999, Peterborough Oil Company discovered that four days cash deposits had not been made with respect to the Mr. Mike's Mobil gasoline station that it owns and operates in Groton. At that time, Cheryl Carter was the manager for that location whose duties included making bank deposits of the store's receipts. When confronted at the Groton location by her immediate supervisor, Lucy Gambino, and the Director of Retail, Diane Clark, Carter acknowledged that she had failed to make $6,020 in deposits for the days January 16th, January 17th, January 18th, and January 19th, and alleged that there had been computer problems, that there had been cashier shift shortages, and issues with speed-pass payments which had resulted in

shortages which she initially covered with her own funds and then began covering by taking cash from the future store deposits. On January 21, 1999, Carter was suspended from her position at the station, and the Groton police were called. The Groton Police Department conducted its own investigation. After a hearing, a Clerk Magistrate found probable cause for a criminal complaint to issue. Thereafter, Carter was prosecuted for larceny over $250 by the Middlesex District Attorney's office. After calling the Groton Police Department, neither Clark nor Peterborough had the ability or authority to conduct the criminal investigation nor to prosecute Carter for any offense on behalf of the Commonwealth of Massachusetts. These matters were clearly under the purview of the appropriate law enforcement authorities, i.e., the local police and the district attorney's office. Peterborough and Clark merely assisted these law enforcement officials in connection with the ongoing criminal investigation as they had a constitutional right, and arguably civil obligation, to do.

III.    AGREED DESCRIPTION OF THE CASE

A.    PLAINTIFF'S STATEMENT

This is a case for malicious prosecution and intentional infliction of emotional distress.

B.    DEFENDANTS' STATEMENT

In this action, Plaintiff Cheryl Carter asserts causes of action for malicious prosecution and intentional infliction of emotional distress. Defendants Peterborough Oil Company, Inc. and Diane Clark deny those allegations.

IV.    UNUSUAL LEGAL ISSUES

A.    PLAINTIFF

None.

B.    DEFENDANTS

1.    Plaintiff, whose deposition was properly noticed within the discovery deadline, has failed, neglected, and refused to appear for a deposition despite her counsel's original agreement to produce her and to extend the Tracking Order. Defendants intend to file a motion to compel Plaintiff's deposition.

2.     Plaintiff has declined to produce the original January 20, 1999 surveillance tape, despite the fact that she unlawfully took the tape without permission or authority to do so from the Groton store. Moreover, Defendants require the original tape in order to evaluate whether any deletions, partial erasures, or other tampering has occurred since Plaintiff took the tape without right or authority. Defendants intend to file a motion to compel production of the tape.

3.     Defendants intend to file a motion for leave to file a special motion to dismiss under G.L. c.231, § 59H, as Plaintiff's claims are premised solely on constitutionally protected petitioning activities, namely, assisting law enforcement officials with an ongoing criminal investigation.

## V.     NAME AND ADDRESSES OF WITNESSES TO BE CALLED

### A.     PLAINTIFF

1.     Cheryl Carter
P.O. Box 904
Groton, MA 01450

2.     Brent Carter
P.O. Box 904
Groton, MA 01450

3.     Arthur Monsen
45 Hill Road
Groton, MA 01450

4.     Holly Dillenbeck
27 Clifton Street
Fitchburg, MA

5.     Diane Clark

6.     Lucy Gambino

Plaintiff reserves the right to call rebuttal witnesses.

### B.     DEFENDANT

1.     Diane Clark
665 North Main Street
Leominster, Massachusetts

3

2.   Lucille M. Gambino
     23 Dogwood Drive
     Townsend, Massachusetts

3.   Sara K. Granger
     11 Willow Street
     Fitchburg, Massachusetts

4.   Laurence B. Porter IV
     133 Shirley Road
     Groton, Massachusetts

5.   Lieutenant John L. Saball
     Groton Police Department
     99 Pleasant Street
     Groton, Massachusetts

6.   Officer Mark P. Chambers
     Westport Police Department
     (formerly of Groton Police Department)

7.   Officer Pierce
     Groton Police Department

8.   Holly Dillenback
     27 Clifton Street
     Fitchburg, Massachusetts

9.   Cheryl Carter
     Groton, Massachusetts

10.  Officer Jack Bolonis
     Groton Police Department
     99 Pleasant Street
     Groton, Massachusetts

11.  Kate MacDougall
     Middlesex District Attorney's Office

12.  Keeper of Records of Groton Police Department

13.  Keeper of Records of Middlesex District Attorney's Office

14.  Terry Truex

15.  Keeper of Records, Department of Employment and Training

4

16.    Keeper of Records for one or more of the physicians or other health care providers as appearing in Plaintiff's medical records.

Defendants reserve the right to call rebuttal witnesses.

Defendants reserve the right to call one or more of the witnesses identified by the plaintiff.

As discovery is not yet complete, Defendants expressly reserve the right to seasonably supplement this response.

VI.    **NAME AND ADDRESSES OF EXPERT WITNESSES TO BE CALLED**

A.    **PLAINTIFF**

None.

B.    **DEFENDANT**

No expert witness is anticipated.

VII.    **LENGTH OF TRIAL**

A.    **PLAINTIFF'S ESTIMATE**

Two - three days.

B.    **DEFENDANTS' ESTIMATE**

Five full days.

VIII.    **SETTLEMENT DISCUSSIONS**

None.

CHERYL CARTER

By her attorney,

_Scott A. Lathrop_
Scott A. Lathrop (BBO #287820)
Scott A. Lathrop & Associates
122 Old Ayer Road
Groton, MA 01450
(978) 448-8234


Dated:  November 5, 2003

PETERBOROUGH OIL COMPANY, INC.
and
DIANE CLARK
By their attorney,

_James P. Hoban_
James P. Hoban (BBO #633929)
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-156
(508) 926-3448

5

**Commonwealth of Massachusetts**
**County of Middlesex**
**The Superior Court**

CIVIL DOCKET# **MICV2002-01794**

RE:    **Carter v Peterborough Oil Company, Inc. et al**


TO: James P Hoban, Esquire
Bowditch & Dewey
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156

<u>**NOTICE TO APPEAR FOR TRIAL**</u>


A trial has been scheduled for the above referenced case as follows:

DATE:        **04/20/2004**
TIME:         **09:00 AM**
LOCATION:    **Cv CrtRm (Lowell)**


All <u>trial counsel are required to attend</u>.


Dated at  Lowell, Massachusetts this 6th day of February, 2004.


BY:

Michael Brennan
Assistant Clerk


Telephone: 978-453-0201


Check website as to status of case: **http://ma-trialcourts.org/tcic**

cvctrinot_2.wpd 571206 triju erricoc

ORIGINAL COPY

EXHIBIT D (1-20)



GREAT AMERICAN INSURANCE COMPANIES ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

SB 86 01
(Ed. 11 97)

# SELECT BUSINESS POLICY CONDITIONS

This Coverage Part is subject to the following conditions:

## GENERAL CONDITIONS

### A. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud by you at any time relating to this insurance. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact at concerning:

1. this Coverage Part;

2. the Covered Property;

3. your interest in the Covered Property; or

4. a claim under this Coverage Part.

### B. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. there has been full compliance with all of the terms of this Coverage Part; and

2. the action is brought within 2 years after the date on which the direct physical loss or damage occurred.

### D. Liberalization

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to

or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

### E. No Benefit To Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

### F. Policy Period, Coverage Territory

Under this Coverage Part:

1. We cover loss or damage commencing:

   a. during the policy period shown in the Declarations; and

   b. within the Coverage Territory.

2. The Coverage Territory is:

   a. the United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

### G. Mortgageholders

1. The term "mortgageholder" includes trustee.

2. We will pay for covered loss of or damage to building or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

3. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**4.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

   **a.** pays any premium due under this Coverage Part if you have failed to do so;

   **b.** submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

   **c.** has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**5.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

   **a.** the mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   **b.** the mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**6.** If we cancel this policy, we will give written notice to the mortgageholder at least:

   **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment or premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**7.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of physical loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and the amount of physical loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **1.** pay its chosen appraiser; and

   **2.** bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties In The Event Of Loss Or Damage

   **1.** You must see that the following are done in the event of loss or damage to Covered Property:

      **a.** Notify the police if a law may have been broken.

      **b.** Give us prompt notice of the loss or damage. Include a description of the property involved.

      **c.** As soon as possible, give us a description of how, when, and where the loss or damage occurred.

d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss, and keep a record of your expenses necessary to protect the Covered Property from such loss, for consideration in the settlement of the claim. However we will not pay for any subsequent loss or damage resulting from a Cause of Loss that is not a covered Cause of Loss. This will not increase the Limit of Insurance. Also, if feasible, set damaged property aside and in the best possible order, for examination.

e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

f. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

g. Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

h. Cooperate with us in the investigation or settlement of the claim.

2. We may examine any Insured under oath while not in the presence of any other Insured and at such times as may be reasonably required, about any matter relating to this insurance or claim, including an Insured's books and records. In the event of an examination, an Insured's answers must be signed.

## D. Insurance Under Two Or More Coverages

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## E. Loss Payment

1. In the event of direct physical loss or damage covered by this Coverage Part, at our option and subject to any applicable Deductible provision, or Loss Condition, we will either:

   a. pay the value of lost or damaged property, as specified in **K. Valuation** below;

   b. pay the cost of repairing or replacing the lost or damaged property, subject to **2.** below;

   c. take all or any part of the property at an agreed or appraised value; or

   d. repair, rebuild or replace the property with other property of like kind and quality subject to **2.** below.

2. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

3. The amount of Business Income loss will be determined based on:

   a. the Net Income of the business before the direct physical loss or damage occurred;

   b. the likely Net Income of the business if no physical loss or damage had occurred but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

   c. the operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

   d. other relevant sources of information, including:

      (1) your financial records and accounting procedures;

(2) bills, invoices and other vouchers; and

(3) deeds, liens, or contracts.

4. The amount of Extra Expense will be determined based on:

a. All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(1) the salvage value that remains of any property bought for temporary use during the "period of restoration," once "operations" are resumed; and

(2) any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

b. Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

5. We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

6. We will not pay you more than your insurable interest in the Covered Property.

7. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their insurable interest in the Covered Property.

8. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

9. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and;

a. we have reached agreement with you on the amount of loss; or

b. an appraisal award has been made.

**F. Other Insurance**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance or more than the actual amount of loss or damage.

**G. Recovered Property**

1. If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

2. If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may, at your own expense:

a. stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

b. remove the the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with the law.

## H. Resumption Of Operations

**1.** We will reduce the amount of your:

**a.** Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**2.** If you do not resume "operations," or do not resume "operations" as quickly as possible, we will pay losses based on the length of time it would have taken to resume "operations" as quickly as possible.

## I. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them . But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at the time of loss, that party is one of the following:

**a.** someone insured by this insurance;

**b.** a business firm:

**(1)** owned or controlled by you; or

**(2)** that owns or controls you; or

**c.** your tenant.

This will not restrict your insurance.

## J. Vacancy

**1. Description of Terms**

**a.** As used in the Vacancy Condition, the term building and the term vacant have the following meaning:

**(1)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means that unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(2)** When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its square footage:

**(a)** is not rented; or

**(b)** is not used to conduct customary operations.

**b.** Buildings under construction or renovation are not considered vacant.

**2. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**a.** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(1)** vandalism;

**(2)** sprinkler leakage, unless you have protected the system against freezing;

**(3)** building glass breakage;

**(4)** water damage;

**(5)** theft; or

**(6)** attempted theft.

**b.** With respect to Covered Causes of Loss other than those listed in **2.(a)(1)** through **2.(a)(6)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## K. Valuation

**1.** If actual cash value is indicated in the Declarations as the method of valuation we will determine the value of Covered Property in the event of loss or damaged as follows:

   **a.** At actual cash value as of the time of loss or damage except as provided in **b.** through **h.** below.

   **b.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

   **c.** Finished "stock" you have manufactured at the selling price less discounts and expenses you otherwise would have had.

   **d.** Glass at the cost of replacement with safety glazing material if required by law.

   **e.** Tenant's Improvements and Betterments at:

      **(1)** Actual cash value of the loss or damage property if you make repairs promptly.

      **(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

         **(a)** multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

         **(b)** divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

      **(3)** Nothing if others pay for repairs or replacement.

   **f.** Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

      **(1)** blank materials for reproducing the records; and

      **(2)** labor to transcribe or copy the records when there is a duplicate.

   **g.** Exhibitions and displays at your cost.

   **h.** Patterns, molds, models, and dies at replacement cost if actually replaced, otherwise at actual cash value.

**2.** If replacement cost is indicated in the Declarations as the method of valuation we will determine the value of Covered Property in the event of loss or damage as follows:

   **a.** At replacement cost (without deduction for depreciation) as of the time of loss or damage except as provided in **b.** through **j.** below:

   **b.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

   **c.** Finished "stock" you have manufactured, at the selling price less discounts and expenses you otherwise would have had.

   **d.** Glass at the cost of replacement with safety glazing material if required by law.

   **e.** Tenant's Improvements and Betterments at:

      **(1)** Replacement cost of the loss or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

  (a) multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

  (b) divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease;

  (c) if your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

f. Valuable Papers and Records, including those which exist on electronic or mag netic media (other than prepackaged software programs), at the cost of:

  (1) blank materials for reproducing the records; and

  (2) labor to transcribe or copy the records when there is a duplicate.

g. Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac at actual cash value.

h. We will not pay on a replacement cost basis for any loss or damage:

  (1) until the lost or damaged property is actually repaired or replaced; and

(2) unless the repairs or replacement are made:

  (a) as soon as reasonably possible after the loss or damage; or

  (b) if claim was initially made on an actual cash basis, as soon as reasonably possible after you notify us, within 12 months after the loss or damage, of your intent to make claim on a replacement cost basis.

i. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3) subject to k. below:

  (1) the Limit of Insurance applicable to the lost or damaged property;

  (2) the cost to replace, on the same premises, the lost or damaged property with other property:

    (a) of comparable material and quality; and

    (b) used for the same purpose; or

  (3) the amount you actually spend that is necessary to repair or replace the lost or damaged property.

j. The cost of repair or replacement does not include any increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

GREAT AMERICAN INSURANCE COMPANIES ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

SB 86 02
(Ed. 11 97)

# SELECT BUSINESS POLICY
## BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and what is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION J - DEFINITIONS.**

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property shown in the Declarations caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

   Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1,** and limited in **A.2, Property Not Covered,** if a Limit of Insurance is shown in the Declarations for that type of property.

   a. **Building,** meaning the building or structure described in the Declarations, including:

      (1) completed additions;

      (2) fixtures, including outdoor fixtures and signs;

      (3) permanently installed:

         (a) machinery;

         (b) equipment; and

         (c) foundations of machinery, tanks and their component parts, including all connections thereto which are below the undersurface of the lower basement floor, or where there is no basement, below the surface of the ground.

      (4) personal property owned by you that is used to maintain or service the building or structure or its premises, including but not limited to:

         (a) fire extinguishing equipment;

         (b) outdoor furniture;

         (c) floor coverings; and

         (d) appliances used for refrigerating, ventilating, cooking, dish washing or laundering;

      (5) if not covered by other insurance, additions under construction, alterations and repairs to the building or structure;

   b. **Your Business Personal Property** as shown in the Declarations, including:

      (1) personal property owned by you and used in your business;

      (2) labor, materials or services furnished or arranged by you on personal property of others;

(3) your use interest as tenant in Improvements and Betterments made a part of the building or structure you occupy but do not own;

(4) leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others; and

(5) signs, including signs attached to buildings, provided there is no coverage for the sign under the Building Covered Property.

**c. Personal Property of Others** that is in your care, custody or control as shown on the declarations.

However, our payment for loss of, or damage to Personal Property of Others will only be for the account of the owner of the property.

## 2. Property Not Covered

Covered Property does not include:

**a.** accounts, bills, currency, deeds, evidences of debt, money, notes or securities;

**b.** animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** automobiles held for sale;

**d.** bridges;

**e.** contraband, or property in the course of illegal transportation or trade;

**f.** foundations of buildings, structures, or boilers if their foundations are below:

(1) the lowest basement floor; or

(2) the surface of the ground, if there is no basement;

**g.** land (including land on which the property is located), water (including groundwater), growing crops or lawns;

**h.** personal property while waterborne (other than while on regular ferries or railroad car floats);

**i.** underground pipes, flues or drains except as provided under A.1.a.(3)(c);

**j.** vehicles or self-propelled machines (including aircraft or watercraft) that

(1) are licensed for use on public roads; or

(2) are operated principally away from the described premises.

This paragraph does not apply to:

(1) vehicles or self-propelled machines or autos you manufacture, process or warehouse;

(2) vehicles or self-propelled machines, other than autos, you hold for sale; or

(3) rowboats or canoes out of water at the described premises;

**k.** the following property while outside of buildings:

(1) grain, hay, straw or other crops;

(2) trees, shrubs or plants, piers, wharves, docks or retaining walls, all except as provided in the Coverage Extensions.

**l.** the cost to research, replace or restore the information on valuable papers and records, including those which exist on electronic or magnetic media.

## B. COVERED CAUSES OF LOSS

Covered Causes of Loss means **RISKS OF DIRECT PHYSICAL LOSS** unless the loss is:

1. Excluded in Section **C. Exclusions**; or

2. Limited in Section **D. Limitations**;

that follow.

C *S2*10/20/98*PAC2470523-08　　　　　　　　ORIGINAL COPY

## C. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance or Law**

   The enforcement of any ordinance or law:

   (1) regulating construction; use or repair of any property; or

   (2) requiring the tearing down of any property including the cost of removing its' debris.

   This exclusion, Ordinance or Law, applies whether the loss results from:

   (1) an ordinance or law that is enforced even if the property has not been damaged; or

   (2) the increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a direct physical loss or damage to that property.

   **b. Earth Movement**

   (1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire, theft, or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (2) Volcanic eruption, explosion or effusion. But, if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for that resulting loss or damage.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) airborne volcanic blast or airborne shockwaves;

   (b) ash, dust or particulate matter; or

   (c) lava flow.

   All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   This exclusion does not apply to Covered Personal Property in due course of transit.

   **c. Governmental Action**

   Seizure or destruction of property by order of governmental authority. But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

   **d. Utility Services**

   The failure of power or other utility service supplied to the described premises however caused, if the failure occurs away from the described premises.

   But if the failure of power or other utility services results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

   **e. Nuclear Hazard**

   Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation or radioactive contamination results in fire we will pay for that loss or damage caused by the fire.

**f. War and Military Action**

(1) War, including undeclared or civil war;

(2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

(2) Mudslide or mudflow.

But if Water, as described in **g.(1)** and **g.(2)** above results in fire, explosion, theft or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion, theft or sprinkler leakage.

This exclusion does not apply to Covered Personal Property in due course of transit.

2. We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.** (1) Wear and tear;

(2) rust, corrosion, fungus, decay, deterioration, spoilage, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) smog;

(4) settling, cracking, shrinking or expansion;

(5) nesting or infestation or discharge or release of waste products or secretions by insect, birds, rodents or other animals.

(6) mechanical breakdown, including rupture or bursting caused by centrifugal force; or

(7) the following causes of loss to personal property;

(a) dampness or dryness of atmosphere;

(b) cold or heat;

(c) marring or scratching.

But if an excluded cause of loss that is listed in **2.d (1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines, or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

    **(1)** you do your best to maintain heat in the building or structure; or

    **(2)** you drain the equipment and shut off the supply if the heat is not maintained.

**g.** Dishonest or criminal act by you, any of your partners, employees (including leased employees) directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

    **(1)** acting alone or in collusion with others; or

    **(2)** whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

**h.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**i.** Rain, snow, ice or sleet to personal property in the open.

**j.** Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**k.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release

or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

**3.** We will not pay for loss or damage caused by or resulting from any of the following **3a.** through **3c.** But if an excluded Cause of Loss that is listed in **3a.** through **3c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

    **(1)** planning, zoning, development, surveying, siting;

    **(2)** design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** materials used in repair, construction, renovation or remodeling; or

    **(4)** maintenance;

of part or all of any property on or off the described premises.

## D. LIMITATIONS

**1.** We will pay for direct physical loss or damage to Covered Personal Property which is in due course of transit at your risk if the Covered Personal Property is:

    **a.** in the custody of a carrier or bailee for hire; or

    **b.** on vehicles you own or operate; but

only up to the Transit Limit of Insurance shown in the Declarations and subject to the Transit deductible shown in the Declarations.

**2.** We will not pay for loss or damage to any of the following types of property if the loss or damage occurs at an unnamed location or while in transit:

  **a.** Musical Instruments

  **b.** Contractors' Equipment, including Cranes

This limitation does not apply to musical instruments or contractors equipment you manufacture, process or hold for sale.

**3.** We will not pay for loss or damage to:

  **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

  **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

  **c.** Property that is missing, where the only evidence of the loss or damage is the shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

  **d.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**4.** We will not pay more than $10,000 for loss or damage to the interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

  **a.** the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

  **b.** the loss or damage is caused by or results from thawing of snow, sleet or ice on the building structure.

**5.** We will only pay for loss of or damage to animals if the loss or damage is caused by any of the "specified causes of loss" or building glass breakage, and then only if they are killed or their destruction is made necessary.

**6.** The special limit shown for each category, **a.** through **c.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

  **a.** $2,500 for furs, fur garments and garments trimmed with fur.

  **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

  **c.** $250 for stamps, tickets (including lottery tickets held for sale) and letters of credit.

**7.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder, or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

  **a.** results in discharge of any substance from any automatic fire protection system; or

  **b.** is directly caused by freezing.

## E. ADDITIONAL COVERAGES

### 1. Collapse

The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in **1.a.** through **1.e.** below.

**a.** We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this Coverage Form, if the collapse is caused by one or more of the following:

   **(1)** the "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Form;

   **(2)** hidden decay;

   **(3)** hidden insect or vermin damage;

   **(4)** weight of people or personal property;

   **(5)** weight of rain that collects on a roof;

   **(6)** use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **1.a.(1)** through **1.a.(6)**, we will pay for the loss or damage even if the use of defective material or methods, in construction, remodeling or renovation, contributed to the collapse.

**b.** If the direct physical loss or damage does not involve collapse of a building we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

   **(1)** the personal property which collapses is inside a building; and

   **(2)** the collapse was caused by a cause of loss listed in **1.a.(1)** through **1.a.(6)** above.

**c.** With respect to the following property:

   **(1)** outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

   **(2)** awnings, gutters and downspouts;

   **(3)** yard fixtures;

   **(4)** outdoor swimming pools;

   **(5)** fences;

   **(6)** piers, wharves, and docks;

   **(7)** beach or diving platforms or appurtenances;

   **(8)** retaining walls; and

   **(9)** walks, roadways and other paved surfaces;

if the collapse is caused by a Cause of Loss listed in **1.a.(1)** through **1.a.(6)**, we will pay for loss or damage to that property only if:

   **(1)** such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

   **(2)** the property is Covered Property under this Coverage Form.

**d.** Collapse does not include settling, cracking, shrinkage, bulging or expansion.

**e.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Form.

No Deductible applies to this Additional Coverage.

### 2. Debris Removal

**a.** We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of

Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(1) the date of direct physical loss or damage; or

(2) the end of the policy period.

b. The most we will pay under this Additional Coverage is 25% of:

(1) the amount we pay for the direct physical loss of or damage to Covered Property; plus

(2) the deductible in this Coverage Form applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in the Limits of Insurance section.

c. This Additional Coverage does not apply to the cost to:

(1) extract "pollutants" from land or water; or

(2) remove, restore or replace polluted land or water.

### 3. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to the limit specified in the Declarations for this Additional Coverage for your liability for fire department service charges:

a. assumed by contract or agreement prior to loss; or

b. required by local ordinance.

No Deductible applies to this Additional Coverage.

### 4. Fire Protection Device Recharge

We will pay, up to the limit listed in the Declarations for this Additional Coverage, to recharge or refill your fire protective devices that are permanently installed in buildings at the described premises.

This Additional Coverage only applies when such devices have been discharged while being used to combat a covered fire.

### 5. Loss Data Preparation

We will pay, up to the limit listed in the Declarations for this Additional Coverage, for reasonable costs you incur in preparing loss data required by policy conditions after a loss covered by this Coverage Part. This includes the cost of taking inventory, making appraisals and preparing other data to determine the extent of your loss. This does not include public adjustors fees.

### 6. Pollutant Clean Up and Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the release, discharge or dispersal of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period.

The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

a. the date of direct physical loss or damage; or

b. the end of the policy period.

The most we will pay for each location under this Additional Coverage is stated in the Declarations for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this Policy.

No Deductible applies to this Additional Coverage.

## F. COVERAGE EXTENSIONS

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises.

1. **Newly Acquired or Constructed Property**

   a. You may extend the insurance that applies to Building to apply to:

      (1) your new buildings while being built on the described premises;

      (2) buildings you acquire at locations, other than the described premises, intended for:

         (a) similar use as the building described in the Declaration; or

         (b) use as a warehouse.

      The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations.

   b. You may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

   The most we will pay for loss or damage under this Extension is the Limit of Insurance for this Coverage Extension, shown in the Declarations.

   c. Insurance under this Extension for each newly acquired or constructed property will end when any of the following occurs:

      (1) this Coverage Part expires;

      (2) 90 days expire after you acquire or begin to construct the property; or

      (3) you report values to us.

   We will charge you additional premium for values reported from the date construction begins or you acquire the property.

   d. If the coverage provided by this extension has expired due to Item (c) above, the Limit of Insurance shown in the Declarations for "At Any Other Location" will apply.

2. **Outdoor Property**

   You may extend the insurance provided by this Coverage Form to apply to your trees, shrubs and plants, piers, wharves, docks or retaining walls (not attached to buildings), including debris removal expense, caused by or resulting from any of the following causes of loss:

   a. fire;

   b. lightning;

   c. explosion;

   d. riot or Civil Commotion; or

   e. aircraft.

3. **Personal Effects**

   You may extend the insurance that applies to Your Business Personal Property to apply to personal effects owned by you, your officers, your partners or your employees.

   The most we will pay for loss or damage under this Extension is stated in the Declarations for this Extension per each described premises. Our payment for loss or damage to personal property of others will only be for the account of the owner of the property.

   No Deductible applies to this Coverage Extension.

4. **Water Damage, Other Liquids, Powder or Molten Material Damage**

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or

structure to repair damage to the system or appliance from which the water or other substance escapes.

## G. LIMITS OF INSURANCE

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limits applicable to the Coverage Extensions and all of the Additional Coverages are all in addition to the Limits of Insurance except for Collapse and Debris Removal.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. collapse;

2. debris removal; but if:

   a. the sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

   b. the debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage;

   we will pay up to the limit shown for Debris Removal on the Declarations for each location in any one occurrence under the Debris Removal Additional Coverage.

## H. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

The Deductible clause does not apply to Business Income.

## I. OPTIONAL COVERAGES

### 1. Inflation Guard

   a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

   (1) the Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times;

   (2) the percentage of annual increase shown in the Declarations expressed as a decimal (example 8% is .08), times;

   (3) the number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

   **Example:**

   If:    The applicable Limit
          of Insurance is          $100,000

          and the annual percentage
          increase is                    8%

          The number of days
          since the beginning
          of the policy year
          (or last policy
          change) is                    146

          The amount of increase is;
          $100,000 X .08
          X 146  ÷ 365 =          $3,200

### 2. Ordinance or Law

   a. Each of the Coverages – Coverage A, Coverage B and Coverage C – applies only if that Coverage(s) is chosen by entry in the Declarations and then only with respect to the Building property identified for that Coverage(s) in the Declarations.

   b. We will not pay under this Optional Coverage for the costs associated with the enforcement of any ordinance or law which requires any Insured or others to test for, monitor, clean up, remove, contain, treat detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

17

0284524

**c. Coverage A – Coverage for Loss to the Undamaged Portion of the Building**

If there is a direct physical loss or damage from a Covered Cause of Loss to a covered Building property, we will pay under Coverage A for the loss in value of the undamaged portion of the building which is a consequence of enforcement of any ordinance or law that:

(1) requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

(2) regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

(3) is in force at the time of the Covered Cause of Loss.

**d. Coverage B – Demolition Cost Coverage**

If there is a direct physical loss or damage from a Covered Cause of Loss to covered Building property, we will pay the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law.

If attached, the **COINSURANCE** Additional Condition Endorsement does not apply to Demolition Cost Coverage.

**e. Coverage C – Increased Cost of Construction Coverage**

(1) If there is a direct physical loss or damage from a Covered Cause of Loss to the covered Building property, we will pay for the increased cost to:

(a) repair or reconstruct damaged portions of that Building property; and/or

(b) reconstruct or remodel undamaged portions of that Building property, whether or not demolition is required;

when the increased cost is a consequence of enforcement of building, zoning or land use ordinance or law.

However:

(a) This coverage applies only if the restored or remodeled property is intended for similar occupancy to the occupancy prior to the loss or damage unless such occupancy is not permitted by zoning or land use ordinance or law.

(b) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

If attached, the **COINSURANCE** Additional Condition Endorsement, does not apply to Increased Cost of Construction Coverage.

**f. Loss Payment**

(1) Coverage A

(a) If the replacement cost valuation applies and the property is repaired or replaced on the same or another premises we will not pay more than the lesser of:

(i) the amount you actually spend to repair, rebuild or reconstruct the building, but not more than the amount it would cost to restore the building on the same premises and to the same height, floor area,

style and comparable quality of the original property insured; or

(ii) the Limit of Insurance shown in the Declarations as applicable to the covered building property.

(b) If the replacement cost valuation applies and the property is not repaired or replace, or if the replacement cost valuation does not apply we will not pay more than the lesser of:

(i) the actual cash value of the building at the time of loss; or

(ii) the Limit of Insurance shown in the Declarations as applicable to the covered building property.

**(2) Coverage B**

We will not pay more than the lesser of the following

(a) the amount you actually spend to demolish and clear the site of the described premise; or

(b) the applicable Limit of Insurance shown for Coverage **B** in the Declarations

**(3) Coverage C**

(a) We will not pay under Coverage C:

(i) until the property is actually repaired or replaced at the same or another premises; and

(ii) unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend the period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premise, the most we will pay under Coverage **C** is the lesser of;

(i) the increased cost of construction at the same premises; or

(ii) the applicable Limit of Insurance shown for Coverage **C** in the Declarations

(c) If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of;

(i) the increased cost of construction at the new premises; or

(ii) the applicable Limit of Insurance shown for Coverage **C** in the Declarations.

g. Under this Optional Coverage we will not pay for loss due to any ordinance or law that:

(1) you were required to comply with before the loss, even if the building was undamaged; and

(2) you failed to comply with.

**3. Utility Services**

a. We will pay for direct physical loss or damage to Covered Property described in the Declarations by the interruption of any of the following services to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises:

(1) Water Supply Services, meaning the following types of property supplying water to the described premises:

    (a) pumping stations; and

    (b) water mains.

(2) Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

    (a) communication transmission lines, including optic fiber transmission lines;

    (b) coaxial cables; and

    (c) microwave radio relays except satellites.

(3) Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

    (a) utility generating plants;

    (b) switching stations;

    (c) substations;

    (d) transformers; and

    (e) transmission lines.

**b.** The Utility Services Limit of Insurance as shown on the Declarations is part of, not in addition to, the Limit of Insurance stated in the Declarations, as applicable to the Covered Property.

## J. DEFINITIONS

1. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2. **"Stock"** means merchandise held in storage or for sale, raw materials and in process or finished goods, including supplies used in their packing or shipping.

3. **"Specified Causes of Loss"** means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

  **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

    (1) the cost of filling sinkholes; or

    (2) sinking or collapse of land into man-made underground cavities.

  **b.** Falling objects does not include loss or damage to:

    (1) personal property in the open; or

    (2) the interior of a building or structure, or property inside a building or structure unless the roof or an outside wall of the building or structure is first damaged by a falling object.

  **c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**GREAT AMERICAN INSURANCE COMPANIES** ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

SB 86 05
(Ed. 11 97)

# SELECT BUSINESS POLICY
## BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights and duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION H - DEFINITIONS**

## A. COVERAGE

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property, including personal property in the open (or in a vehicle) within 1000 feet, of the premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

If you are a tenant, your premises is the portion of the building which you rent, lease or occupy, including all routes within the building to gain access to the described premises and your personal property in the open (or in a vehicle) within 1000 feet your premises.

### 1. Business Income

**Business Income** means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** continuing normal operating expenses incurred, including payroll.

## B. COVERED CAUSES OF LOSS

Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is:

**1.** excluded in Section **C. Exclusions,** of the **Select Business Policy Building and Personal Property Coverage Form;**

**2.** limited in Section **D. Limitations** of the **Select Business Policy Building and Personal Property Coverage Form;** or

**3.** excluded in Section **C. Special Exclusions,** below.

## C. SPECIAL EXCLUSIONS

We will not pay for:

**1.** Any loss caused directly or indirectly by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of the covered building.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

**2.** Any loss caused by or resulting from:

**a.** damage or destruction of finished "stock"; or

**b.** the time required to reproduce finished "stock".

This exclusion does not apply to Extra Expense.

3. Any increase of loss caused by or result-ing from:

   a. delay in rebuilding, repairing or replac-ing the property or resuming "oper-ations", due to interference at the lo-cation of the rebuilding, repair or re-placement by strikers or other per-sons; or

   b. suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations" we will cover such loss that affects your Business Income during the "period of restoration".

4. Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

5. Any other consequential loss.

6. Any loss caused by or resulting from damage or destruction of property in transit.

## D. ADDITIONAL COVERAGES

### 1. Civil Authority

We will pay for the actual loss of Busi-ness Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the de-scribed premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. The coverage will apply for a period of up to three consecutive weeks from the date of that action.

### 2. Extended Business Income

We will pay for the actual loss of Busi-ness Income you incur during the period that:

   a. begins on the date property (except finished "stock") is actually repaired, rebuilt or replaced and "operations are resumed; and

   b. ends on the earlier of:

      (1) the date you could restore you "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

      (2) 60 consecutive days after the date determined in b.(1) above.

   However, Extended Business Income does not apply to loss of Business Income incurred as a result of un-favorable business conditions caused by the impact of the Covered Cause of Loss in the area where the de-scribed premise are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

### 3. Extra Expense

Extra Expense means necessary expenses you incur during the "period of restora-tion" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

   a. We will pay any Extra Expense to avoid or minimize the suspension of business and to continue "operations:"

      (1) at the described premises; or

      (2) at the replacement premises or at temporary locations, including:

         (a) relocation expenses; and

         (b) costs to equip and operate the replacement or tempo-rary locations.

   b. We will pay any Extra Expense to minimize the suspension of business if you cannot continue "operations."

   c. We will pay any Extra Expense to:

      (1) repair or replace any property; or

(2) research, replace or restore the lost information or damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

## E. COVERAGE EXTENSION

### 1. Newly Acquired Locations

a. You may extend your Business Income Coverage to apply to property at any location you acquire other than fairs or exhibits.

b. The most we will pay, at each location, for loss under this Extension is the limit shown in the Declarations for this Coverage Extension.

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) this policy expires;

(2) 90 days expire after you acquire or begin to construct the property; or

(3) you report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

### 2. Property At Any Other Location

a. You may extend your Business Income Coverage to apply to property at any location other than described premises or newly acquired locations.

b. The most we pay, at each location, for loss under this extension is the limit shown on the Declarations for this Coverage Extension.

## F. LIMITS OF INSURANCE

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limits applicable to the Coverage Extensions are in addition to the Limit of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. Extra Expense;

2. Civil Authority; or

3. Extended Business Income

## G. OPTIONAL COVERAGES

### 1. Dependent Property Business Income

a. When indicated in the Declarations, we will pay for the actual loss of business income you sustain due to necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to "dependent property" caused by or resulting from any Covered Cause of Loss.

b. We will pay no more than the Limit of Insurance for Business Income or the limit in the Declarations for this Optional coverage, whichever is less.

c. The following is added to Select Business Policy Conditions, Loss Condition **G. Resumption of Operations:**

2. We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

a. source of materials; or

b. outlet for your products.

d. The following is added to the **DEFINITIONS** section:

1. "Dependent Property" means property operated by others whom you depend on to:

a. deliver materials or services to you, or to others for your account. Services does not mean water, communication or power supply services;

b. accept your products or services;

c. manufacture products for delivery to your customers under contract of sale; or

d. attract customers to your business.

2. "Period of Restoration" with respect to "dependent property" is the period of time that:

a. begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. ends on the date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

a. regulates the construction, use or repair, or requires the tearing down of any property; or

b. requires any insured or others to test for monitor, clean up, remove, contain, treat detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

2. **Ordinance or Law - Increased Period of Restoration**

a. When indicated in the Declarations that this coverage applies, if a Covered Cause of Loss occurs to property at the premises described in the Declaration, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of suspension of "operations" caused by or resulting from the enforcement of any ordinance or law that:

(1) regulates the construction or repair of any property;

(2) requires that tearing down of parts of any property not damaged by a Covered cause of Loss; and

(3) is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires any Insured or other to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of "pollutants".

b. The **PERIOD OF RESTORATION** definition is replaced by the following:

3. **"Period of Restoration"** means the period of time that:

a. begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

24

"Period of Restoration" includes any increased period required to repair or reconstruct the property to comply with the minimum standards of any ordinance or law, in force at the time of loss, that regulates the construction or repair or requires the tearing down of any property.

The expiration date of this policy will not cut short the "period of restoration".

## 3. Unfinished Stock in Transit

When indicated in the Declarations page, we will pay for the loss of business income you sustain due to direct physical loss or damage by a Covered Cause of Loss to unfinished "stock" while in transit.

The most we will pay is the Limit of Insurance for Unfinished Stock in Transit shown on the Declarations.

## 4. Utility Services

**a.** When indicated in the Declarations that this Coverage applies, we will pay for loss of Business Income or Extra Expense, caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described below, if the property is located outside of a covered building described in the Declarations:

**(1)** Water Supply Services, meaning the following types of property supplying water to the described premises:

    **(a)** pumping stations; and

    **(b)** water mains.

**(2)** Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

    **(a)** communication transmission lines, including optic fiber transmission lines;

    **(b)** coaxial cables; and

    **(c)** microwave radio relays except satellites.

**(3)** Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

    **(a)** utility generating plants;

    **(b)** switching stations;

    **(c)** substations;

    **(d)** transformers; and

    **(e)** transmission lines.

**b.** The Utility Services Limit of Insurance as shown in the Declarations is part of, not in addition to, the Limit of Insurance stated in the Declarations, as applicable to the Business Income.

## H. DEFINITIONS

**1.** **"Operations"** means your business activities occurring at the described premises.

**2.** **"Period of Restoration"** means the period of time that:

**a.** begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** ends on earlier of:

**(1)** the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** the date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that;

a. regulates the construction, use or re-
pair, or requires the tearing down of
any property; or

b. requires any Insured or others to test
for monitor, clean up, remove, contain,
treat detoxify or neutralize, or in any
way respond to, or assess the effects
of "pollutants".

The expiration date of this policy will not
cut short the "period of restoration".

3. "Pollutants" means any solid, liquid, gas-
eous, or thermal irritant or contaminant
including smoke, vapor, soot, fumes, ac-
ids, alkalis, chemicals and waste. Waste
includes material to be recycled, recondi-
tioned or reclaimed.

4. "Stock" means merchandise held in stor-
age or for sale, raw material and in pro-
cess or finished goods, including supplies
used in their packing or shipping

C -52-10/20/98-PAC2470523-08                    ORIGINAL COPY

0284524

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CP 01 02
(Ed. 10 90)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## NEW HAMPSHIRE CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE*

| Premises No. | Building No. | Total Limit of Insurance Permitted on the Building |
|---|---|---|
| | | |

A.  When this endorsement is attached to the **STANDARD PROPERTY POLICY** CP 00 99 the term Coverage Part in this endorsement is replaced by the term Policy.

The following provisions apply except when paragraph D. of this endorsement applies:

1.  Paragraphs 2. and 3. of the **Cancellation** Common Policy Conditions are replaced by the following:

2.  a.  We may cancel this policy by mailing or delivering to you notice of cancellation, stating the reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for:

(a) nonpayment of premium; or

(b) substantial increase in hazard;

(2) 60 days before the effective date of cancellation if we cancel for any other reason.

b.  If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

(1) nonpayment of premium;

(2) fraud or material misrepresentation affecting the policy or in the presentation of a claim hereunder, or violation of any of the terms or conditions of the policy; or

Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

Copyright, ISO Commercial Risk Services, Inc., 1985, 1989    57

    **(3)** substantial increase in hazard provided that cancellation for this reason shall be effective only after prior approval of the Commissioner.

  **3.** We will mail or deliver our notice to your last mailing address known to us. If notice is mailed, it will be by:

    **a.** Certified mail or certificate of mailing if cancellation is for nonpayment of premium.

    **b.** Certified mail if cancellation is for any other reason.

**2.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

  **a.** If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reasons for nonrenewal, to your last mailing address known to us at least 60 days prior to the expiration of the policy, or its anniversary date if it is a policy written for a term of more than one year.

  **b.** However, we need not mail or deliver this notice if:

    **(1)** we manifest our willingness to renew;

    **(2)** we refuse to renew due to nonpayment of premium;

    **(3)** you do not pay any advance premium required by us for renewal; or

    **(4)** the property covered in this policy is insured under any other insurance policy.

  **c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**C.** The following are added:

**1. Other Insurance On Buildings**

  **a.** You are permitted to have other insurance that covers buildings at the premises described in the Declarations. The total Limit of Insurance on any building including the Limit of Insurance for this Coverage Part, is limited to the amount shown in the Schedule.

  **b.** If you have other insurance on any building exceeding the amount shown in the Schedule, coverage under this Coverage Part will be automatically suspended for that building. Suspension will occur regardless of whether you can collect on that other insurance or not.

**2. Policy Value**

New Hampshire law states as follows:

Copyright, ISO Commercial Risk Services, Inc., 1985, 1989

a.  If a building insured for a specified amount, whether under a separate policy or under a policy also covering other buildings, is totally destroyed by fire or lightning without criminal fault on the part of the Insured or his assignee, the sum for which such buildings is insured shall be taken to be the value of the Insured's interest therein unless over insurance thereon was fraudulently obtained.

b.  If an insured building is only partially destroyed by fire or lightning, the Insured shall be entitled to the actual loss sustained, not exceeding the sum insured.

c.  Nothing contained in paragraphs (a) and (b) of this section shall be construed as prohibiting the use of coinsurance, or agreed amount.

d.  When a building is insured not for a specified amount but under a blanket form with one amount covering two or more buildings or one or more buildings and personal property, the provisions of paragraph (a) of this section shall not apply.

D.  If this policy covers buildings or structures located in New Hampshire that:

(1) are used only for residential purposes;

(2) are owner-occupied; and

(3) contain less than 5 dwelling units;

the following provisions apply:

1.  Paragraphs 2. and 3. of the **Cancellation** Common Policy Conditions are replaced by the following and supersede any provisions to the contrary:

    2.  We may cancel this policy by mailing or delivering to you written notice of cancellation at least:

        a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        b.  45 days before the effective date of cancellation if we cancel for any other reason.

    3.  We will mail or deliver our notice to your last mailing address known to us.

2.  The following is added to the **Cancellation** Common Policy Condition:

    7.  If this policy:

        a.  has been in effect for 90 days or more; or

        b.  is a renewal of a policy we issued:

Copyright, ISO Commercial Risk Services, Inc., 1985, 1989

29

**0284524**

We may cancel this policy only for one or more of the following reasons:

(1) nonpayment of premium;

(2) your conviction of a crime having as one of its necessary elements an act increasing the risk of loss;

(3) discovery of fraud or material misrepresentation by you in making a claim under this policy;

(4) discovery of grossly negligent acts or omissions by you substantially increasing risk of loss; or

(5) physical changes in the Covered Property that make property uninsurable.

Notice of cancellation will state the reasons for cancellation.

Unless cancellation is for nonpayment of premium, we may cancel this policy only by mailing or delivering to you written notice of cancellation at least 45 days before the effective date of cancellation.

3. The following is added and supersedes any provision to the contrary:

**Nonrenewal**

We may elect not to renew this policy by mailing or delivering written notice of nonrenewal to your last mailing address known to us at least:

a. 10 days before the expiration date of the policy if we refuse to renew for nonpayment of premium; or

b. 45 days before the expiration date of the policy if we refuse to renew for any other reason.

If notice is mailed, proof of mailing will be sufficient proof of notice.

Paragraphs C. and D. above do not apply to the Glass Coverage Form.

Copyright, ISO Commercial Risk Services, Inc., 1985, 1989

30

ORIGINAL COPY

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CP 12 18
(Ed. 06 95)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDER'S RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

### SCHEDULE

| Prem. No. | Bldg. No. | Description of Property | Provisions Applicable | | |
| --- | --- | --- | --- | --- | --- |
| | | | Loss Payable | Lender's Loss Payable | Contract of Sale |
| | | PER SCHEDULE | X | | |

Loss Payee (Name and Address)

SEE FORM IL 8802

A.  When this endorsement is attached to the **STANDARD PROPERTY POLICY CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

The following is added to the **LOSS PAYMENT** Loss Condition, as indicated in the Declarations or by an "X" in the Schedule:

**LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

Copyright, ISO Commercial Risk Services, Inc., 1994

31

CP 12 18 (Ed. 06/95) PRO

1.    adjust losses with you; and

2.    pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

## C.    LENDER'S LOSS PAYABLE

1.    The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   a.    warehouse receipts;

   b.    a contract for deed;

   c.    bills of lading;

   d.    financing statements; or

   e.    mortgages, deeds of trust, or security agreements.

2.    For Covered Property in which both you and a Loss Payee have an insurable interest:

   a.    We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

   b.    The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   c.    If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      (1)    pays any premium due under this Coverage Part at our request if you have failed to do so;

      (2)    submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so: and

      (3)    has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

      All of the terms of this Coverage Part will then apply directly to the Loss Payee.

   d.    If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part.

      (1)    the Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

      (2)    the Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

      At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

Copyright, ISO Commercial Risk Services, Inc., 1994

33

ORIGINAL COPY

3.  If we cancel this policy, we will give written notice to the Loss Payee at least:

    a.  10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

    b.  30 days before the effective date of cancellation if we cancel for any other reason.

4.  If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

D.  **CONTRACT OF SALE**

1.  The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2.  For Covered Property in which both you and the Loss Payee have an insurable interest we will:

    a.  adjust losses with you; and

    b.  pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3.  The following is added to the **OTHER INSURANCE** Condition:

    For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

Copyright, ISO Commercial Risk Services, Inc., 1994

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

## SELECT BUSINESS POLICY GENERAL ENDORSEMENT

ADDITIONAL SBP COVERAGES

ORDINANCE OR LAW COVERAGES

COVERAGES A & B - BUILDING LIMITS PER
               SCHEDULE ON FILE WITH
               THE COMPANY

COVERAGE C - $100,000

34

0284524

**GREAT AMERICAN INSURANCE COMPANIES ®**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

SB 87 25
(Ed. 04 98)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF CERTAIN COMPUTER RELATED LOSSES

This endorsement modifies insurance provided under the following:

SELECT BUSINESS POLICY

**A.** We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

1. The failure, malfunction, or inadequacy of:

   a. any of the following, whether belonging to any Insured or to others:

      (1) computer hardware, including microprocessors;

      (2) computer application software;

      (3) computer operating systems and related software;

      (4) computer networks;

      (5) microprocessors (computer chips) not part of any computer system; or

      (6) any other computerized or electronic equipment or components; or

   b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner any of the items listed in Paragraph **A.1.a.** of this endorsement;

   due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer hardware and/or software to recognize the year 2000.

2. Any advice, consultation, design, evaluation inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded cause of loss as described in Paragraph **A.** of this endorsement results in a "specified cause of loss" we will pay only for the loss or damage caused by such "specified cause of loss."

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features even if caused by a "specified cause of loss."

Includes copyrighted material of Insurance Services Offices, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1997

SB 87 25 (Ed. 04/98) XS

0284524

**GREAT AMERICAN INSURANCE COMPANIES** ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

SB 86 97
(Ed. 09 98)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SELECT BUSINESS POLICY
## SPECIAL COVERAGES FOR FUEL OIL DEALERS

This endorsement modifies insurance provided under the following:

SELECT BUSINESS POLICY
BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**I.** The following is amended to **SECTION E. ADDITIONAL COVERAGES:**

**6. Pollutant Clean Up and Removal**

This Additional Coverage is amended to read:

**6. Pollutant Clean Up and Removal - "Specified Causes of Loss"**

**II.** The following is added to **SECTION E. ADDITIONAL COVERAGES:**

**7.a. Pollutant Clean Up and Removal - "Loading and Unloading"**

We will pay your expense to extract "pollutants" from land or water at the described premises if the release, discharge or dispersal of the "pollutants" is caused by or results from "loading or unloading" that occurs during the policy period.

The expenses will be paid only if they are reported to us in writing within 120 hours of the earlier of:

**1.** the date of direct physical loss or damage; or

**2.** the end of the policy period.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay for this Additional Coverage is an aggregate limit, as stated in the Declarations, for all expenses during the policy period regardless of the number of occurrences.

We will not pay for loss or damage until the amount of loss or damage exceeds the Deductible amount shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible amount up to the Limit of Insurance shown in the Declarations as applicable to this Additional Coverage.

**7.b. Pollutant Clean Up and Removal - Mechanical Failure of a Vehicle**

We will pay your expense to extract "pollutants" from land or water at the described Premises if the release, discharge or dispersal of the "pollutants" is caused by or results from mechanical failure of a vehicle that occurs during the policy period.

This coverage applies only if the "pollutants" escape, seep, migrate, or are discharged, dispersed or released from a vehicle part designed by a manufacturer to hold, store, receive or dispose of such "pollutants."

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing

which is performed in the course of extracting the "pollutants" from the land or water.

The expenses will be paid only if they are reported to us within 120 hours of the earlier of:

1. the date of direct physical loss or damage; or

2. the end of the policy period.

The most we will pay for this Additional Coverage is the combined aggregate limit, as stated in the Declarations, for all expenses during the policy period regardless of the number of occurrences.

We will not pay for loss or damage until the amount of loss or damage exceeds the Deductible amount shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible amount up to the Limit of Insurance shown in the Declarations as applicable to this Additional Coverage.

8. **Terminal Access Card Coverage (TAC Card)**

We cover the direct loss of your petroleum products you own or for which you are legally liable resulting from the unauthorized use of a terminal access card which has been lost by or stolen from a registered key or card holder.

A terminal access card means an imprinted card, key or other unlocking device for use by authorized persons to activate an otherwise locked petroleum product pump at the designated premises.

For the purpose of applying the deductible and the Limit of Insurance each unauthorized, or series of similar or related uses of a terminal access card will be considered to be one occurrence. We will not pay for loss caused by, resulting from, contributed to, or made worse by dishonest or criminal acts by any of the following persons whether acting alone or in collusion with others and whether occurring during working hours or not:

(a) you;

(b) any of your partners or employees;

(c) any of your officers, directors, or trustees;

(d) any of your authorized representatives; or

(e) anyone to whom you entrust the terminal access code.

The most we will pay under this additional coverage is the Limit of Insurance shown in the Declarations.

9. **Wrongful Delivery of Petroleum Products**

We will pay, up to the limit listed in the Declarations for this Additional Coverage, for the direct loss of your Petroleum Products resulting from the delivery of your product into the wrong container or from the delivery of one product for another provided the product is thereby rendered unusable.

The most we will pay under this Additional Coverage is the Limit of Insurance shown in the Declarations.

10. **Surface Water**

We will pay, up to the limit listed in the Declarations for this Additional Coverage, for the direct loss of your Petroleum Products resulting from damage to your product from surface waters, and is thereby rendered unusable. Covered Cause of Loss means the following:

(a) the unusual and rapid accumulation of water above the ground surface; and/or

(b) mudslide or mudflow resulting from the unusual and rapid accumulation of water above the ground surface.

However, there is no coverage if the water comes from inundation of normally dry land area from inland or tidal waters in streams, rivers, lakes or other bodies of water.

The most we will pay under this Additional Coverage is the Limit of Insurance shown in the Declarations.

**11. Inventory at Job Site or at Employee Home**

We will pay for loss or damage to Your Business Personal Property caused by a Covered Cause of Loss located at a job site or at an Employee's home for transport to the job site.

This Additional Coverage ceases:

a. upon acceptance of the property by the owner or purchaser;

b. when the Insureds interest ceases;

c. upon expiration or termination of this policy; or

d. 60 days following substantial completion.

The most we will pay under this Additional Coverage is the Limit of Insurance shown in the Declarations under the At Any Other Location Limit of Insurance.

**III.** The following is added to **SECTION J. DEFINITIONS:**

4. **"Loading or unloading"** means the handling of property at a Designated Location while it is being moved into, onto or from a vehicle.

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

SB 86 17
(Ed. 01 88)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SELECT BUSINESS POLICY – MASSACHUSETTS CHANGES

**A.** If loss or damage is caused by fire or lightning, the **VACANCY** Loss Condition is replaced by the following:

**Vacancy or Unoccupancy**

If the building where loss or damage occurs, whether intended for occupancy by owner or tenant, has been vacant or unoccupied for more than:

1. 60 consecutive days for residential premises of 3 units or less; or

2. 30 consecutive days for all other premises;

immediately before that loss or damage, we will not pay for the loss or damage.

A building is vacant when it does not contain enough business personal property to conduct customary operations.

**B.** The **MORTGAGE HOLDERS** General Condition is replaced by the following:

We will pay for covered loss of or damage to real estate to each mortgage holder shown in the Declarations, or in an attached schedule, in the order of precedence, as interests may appear.

**C.** Paragraph 2.i. of the **VALUATION** Loss Condition is replaced by the following:

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced:

   (a) On the described premises; or

   (b) At some other location in the Commonwealth of Massachusetts; and

(2) Unless the repairs or replacement are made within a reasonable time, but no more than 2 years after the loss or damage.

**D.** The following provisions are added:

1. In spite of any provision of any general or special law:

   a. We will not pay for loss or damage to real property caused by any Covered Cause of Loss if the amount of loss is $5,000 or more unless you first submit to us a certificate of municipal liens from the collector of taxes of the city or town where the property is located.

   b. We will pay to the city or town any amount outstanding on the certificate of municipal liens arising from the provisions of Massachusetts General Law Chapters 40, 59, 60, 80, 83 and 164, Sections 58B through 58F.

   The payment will not exceed the amount of loss payable under this Coverage Part.

   We will send you and the mortgage holder proof of our payment to the city or town.

   c. The claim of the city or town will have priority over the claim of any mortgage holder, assignee, you or any other interested party, except where otherwise provided by the laws of the United States.

   d. We will not be liable to any city, town, mortgage holder, assignee, you or any other interested party for:

      (1) Amounts paid to a city or town; or

Copyright, ISO Commercial Risk Services, Inc., 1985, 1987

(2) Amounts not paid to a city or town based upon a certificate showing that no municipal liens exist.

e. Paragraphs 1.a., 1.b., 1.c., and 1.d. above will not apply to any owner-occupied one- to four-family dwelling if the owner of the dwelling lived there when the claim for loss or damage arose.

2. a. We will not pay any claim for:

(1) Loss, damage or destruction of $1,000 or more to a building or structure; or

(2) Loss, damage or destruction, of any amount, that causes a building or structure to become:

(a) Dangerous to life or limb; or

(b) Unused, uninhabited or abandoned and open to the weather;

as provided under Massachusetts General Law, Section 6 of Chapter 143;

without giving at least 10 days' written notice before such payment to:

(a) The Building Commissioner or the appointed Inspector of Buildings; and

(b) The Board of Health or the Board of Selectmen of the city or town where the property is located.

b. If at any time before our payment, the city or town notifies us by certified mail of its intent to begin proceedings designed to perfect a lien under Massachusetts General Law:

(1) Chapter 143, Section 3A or 9; or

(2) Chapter 111, Section 127B;

we will not pay while the proceedings are pending. The proceedings must be started within 30 days after we receive the notice.

Any lien perfected under the Massachusetts General Laws referred to in b.(1) and b.(2) above will extend to the city or town and may be enforced by it against the proceeds of this policy.

c. We will not be liable to any city, town, mortgage holder, assignee, you or any other interested party for:

(1) Amounts paid to a city or town; or

(2) Amounts not paid to a city or town;

under provisions 2.a. and 2.b. above.

E. The following is added:

## STANDARD FIRE POLICY PROVISIONS

Your policy contains LEGAL ACTION AGAINST US, APPRAISAL and CANCELLATION provisions. Massachusetts law requires that the Suit, Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy supersede any similar provisions contained in your policy. Therefore, all LEGAL ACTION AGAINST US, APPRAISAL and CANCELLATION provisions contained in your policy are void. The Suit, Appraisal and Cancellation provisions of the Massachusetts Standard Fire Policy shall apply instead.

In consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations, this company, for the term of years specified in the Declarations from inception date (At 12:01 A.M. Standard Time) to expiration date (At 12:01 A.M. Standard Time) at location of property involved, to an amount not exceeding the amount(s) specified in the Declarations, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss, but in no event for more than the interest of the Insured, against all LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the

Copyright, ISO Commercial Risk Services, Inc., 1985, 1987


Declarations while located or contained as described in this policy or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

**Concealment fraud.**
This entire policy shall be void if whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

**Uninsurable and excepted property.**
This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named hereon in writing, bullion or manuscripts.

**Perils not included.**
This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by (a) enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy; (i) neglect of the Insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in the neighboring premises; (j) nor shall this company be liable for loss by theft.

**Other Insurance.**
Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto.

**Conditions suspending or restricting insurance.**
Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the Insured; or (b) while a described premises,

whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days, for residential premises of three units or less and thirty (30) consecutive days for all other premises, or (c) as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only.

**Other perils of subjects.**
Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

**Added provisions.**
The extent of the application of insurance under this policy and of the contribution to be made by this company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change.

**Waiver provisions.**
No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein.

**Cancellation of policy.**
This policy shall be cancelled at any time at the request of the Insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this company by giving to the Insured a five days written notice of cancellation, and to the mortgagee to whom this policy is payable twenty days' written notice of cancellation except where the stated reason for cancellation is nonpayment of premium where, in such instances, this policy may be cancelled at any time by this company by

Copyright, ISO Commercial Risk Services, Inc., 1985, 1987

giving to the Insured a ten days written notice of cancellation, and the mortgagee a twenty days written notice of cancellation, with or without tender of the excess paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand and shall state or be accompanied by a statement of the specific reason or reasons for such cancellation. After this policy has been in effect for sixty days, or after sixty days from any anniversary date, no notice of cancellation shall be effective unless it is based on the occurrence, after the effective date of this policy, of one or more of the following: (1) nonpayment of premium; (2) conviction of a crime arising out of acts increasing the hazard insured against; (3) discovery of fraud or material misrepresentation by the Insured in obtaining the policy; (4) discovery of willful or reckless acts or omissions by the Insured increasing the hazard insured against; (5) physical changes in the property insured which result in the property becoming uninsurable; or (6) a determination by the commissioner that continuation of the policy would violate or place the insurer in violation of the law. Where the stated reason is nonpayment of premium, the Insured may continue the coverage and avoid the effect of the cancellation by payment at any time prior to the effective date of cancellation.

**Mortgagee interests and obligations.** Notwithstanding any other provisions of this policy, if this policy shall be made payable to a mortgagee of the covered real estate, no act or default of any person other than such mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this policy, shall render this policy void as to such mortgagee nor affect such mortgagee's right to recover in case of loss on such real estate; provided, that the mortgagee shall on demand pay according to the established scale of rate for any increase of risk not paid for by the Insured; and whenever this company shall be liable to a mortgagee for any sum for loss under this policy for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself, or with others, to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the company interested, upon such payment, the said mortgage together with the note and debt thereby secured.

**Pro rata liability.** This company shall not be liable for a greater portion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved.

**Requirements in case loss occurs.** The Insured shall give immediate written notice to this company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed and damaged property, showing in detail the quantity, description, actual cash value and amount of loss claimed; and the Insured shall forthwith render to this company a signed, sworn statement in proof of loss which sets forth to the best knowledge and belief of the Insured the following: the time and cause of the loss, the interest of the Insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupancy, location, possession or exposures of said property, since the issuing of this policy, by whom and for what purpose any building herein described, and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and detailed estimates for repair of the damage. The Insured, as often as may be reasonably required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

**When loss payable.** In case of any loss or damage, the company within thirty days after the Insured shall have submitted a statement, as provided in the preceding clause, shall either pay the amount for which it shall be liable, which amount if not agreed upon shall be ascertained by award of referees as hereinafter provided, or replace the property with other of the same kind and goodness, or it may, within fifteen days after such statement is submitted, notify the Insured of its

Copyright, ISO Commercial Risk Services, Inc., 1985, 1987

0284524

intention to rebuild or repair the premises, or any portion thereof separately covered by this policy, and shall thereupon enter upon said premises and proceed to rebuild or repair the same with reasonable expedition. It is moreover understood that there can be no abandonment of the property described to the company, and that the company shall not in any case be liable for more than the sum insured, with interest thereon from the time when the loss shall become payable, as provided above. The company shall be liable for the payment of interest to the Insured at a rate of one percent over the prime interest rate on the agreed figure commencing thirty days after the date an executed proof of loss for such figure is received by the company, said interest to continue so long as the claim remains unpaid.

**Appraisal.**          In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the Insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen, and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss; but no person

shall be chosen or act as a referee, against the objection of either party, who has acted in a like capacity within four months.

**Suit.**          No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties. If suit or action upon this policy is enjoined or abated, suit or action may be commenced at any time within one year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.

**Subrogation.**          This company may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company.

Copyright, ISO Commercial Risk Services, Inc., 1985, 1987

43

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CP 01 21
(Ed. 06 95)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## STANDARD FIRE POLICY PROVISIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

The provisions of the Standard Fire Policy are stated below. State law still requires that they be attached to all policies. If any conditions of this form are construed to be more liberal than any other policy conditions relating to the perils of fire, lightning or removal, the conditions of this form will apply.

**IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO, AND OF THE PREMIUM SPECIFIED** in the Declarations or in endorsements made a part hereof, this Company, for the term of years specified in the Declarations from inception date shown in the Declarations At Noon (Standard Time) to expiration date shown in the Declarations At Noon (Standard Time) at location of property involved, to an amount not exceeding the Limit of Liability specified in the Declarations, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the Insured, against all **DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED,** to the property described in the Declarations while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

| | | | |
|---|---|---|---|
| 1<br>2 | **Concealment, fraud.** | This entire policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto. | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7<br>8<br>9<br>10 | **Uninsurable and excepted property.** | This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named herein in writing, bullion or manuscripts. | |
| 11<br>12<br>13 | **Perils not included.** | This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: (a) | |
| 14 | | enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; (b) invasion; (c) insurrection; (d) rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy; (i) neglect of the Insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in neighboring premises; (j) nor shall this Company be liable for loss by theft. | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25<br>26<br>27 | **Other insurance.** | Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto. | |
| 28<br>29<br>30 | | Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring | |
| 31 | | (a) while the hazard is increased by any means within the control or knowledge of the Insured; or | |
| 32 | | |
| 33 | | (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; or | |
| 34 | | |
| 35 | | |
| 36 | | (c) as a result of explosion or riot, unless fire ensue and in that event for loss by fire only. | |
| 37 | | |
| 38<br>39<br>40<br>41 | **Other perils or subjects.** | Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto. | |
| 42<br>43 | **Added provisions.** | The extent of the application of insurance under this policy and of the contribution to be made by this Company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change. | |
| 44 | | |
| 45 | | |
| 46 | | |
| 47 | | |
| 48 | | |
| 49<br>50<br>51 | **Waiver provisions.** | No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein. | |
| 52 | | |
| 53 | | |
| 54 | | |
| 55 | | |
| 56<br>57<br>58 | **Cancellation of policy.** | This policy shall be cancelled at any time at the request of the Insured, in which case this Company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This pol- | |
| 59 | | |
| 60 | | |

Copyright, ISO Commercial Risk Services, Inc., 1994
(Page 1 of 2)

CP 01 21 (Ed. 06 95)

44

61 icy may be cancelled at any time by this Company by giving
62 to the Insured a five days' written notice of cancellation with
63 or without tender of the excess of paid premium above the pro
64 rata premium for the expired time, which excess, if not ten-
65 dered, shall be refunded on demand. Notice of cancellation shall
66 state that excess premium (if not tendered) will be re-
67 funded on demand

68 **Mortgagee**      If loss hereunder is made payable, in whole
69 **Interests and**   or in part, to a designated mortgagee not
70 **obligations.**    named herein as the Insured, such interest in
71                     this policy may be cancelled by giving to such
72                     mortgagee a ten days' written notice of can-
73 cellation.

74 If the Insured fails to render proof of loss such mortgagee, upon
75 notice, shall render proof of loss in the form herein specified
76 within sixty (60) days thereafter and shall be subject to the pro-
77 visions hereof relating to appraisal and time of payment and of
78 bringing suit. If this Company shall claim that no liability ex-
79 isted as to the mortgagor or owner, it shall, to the extend of pay-
80 ment of loss to the mortgagee, be subrogated to all the mort-
81 gagee's rights of recovery, but without impairing mortgagee's
82 right to sue; or it may pay off the mortgage debt and require
83 an assignment thereof and of the mortgage. Other provisions
84 relating to the interests and obligations of such mortgagee may
85 be added hereto by agreement in writing.

86 **Pro rata**       This Company shall not be liable for a greater
87 **liability.**     proportion of any loss then the amount
88 hereby insured shall bear to the whole insurance covering the
89 property against the peril involved, whether collectible or not.

90 **Requirements**    The Insured shall give immediate written
91 **in case loss**    notice to this Company of any loss, protect
92 **occurs.**         the property from further damage, forthwith
93 separate the damaged and undamaged personal property, put
94 it in the best possible order, furnish a complete inventory of
95 the destroyed, damaged and undamaged property, showing in
96 detail quantities, costs, actual cash value and amount of loss
97 claimed; and within sixty days after the loss, unless such time
98 is extended in writing by this Company, the Insured shall render
99 to this Company a proof of loss, signed and sworn to by the
100 Insured, stating the knowledge and belief of the Insured as to
101 the following: the time and origin of the loss, the interest of the
102 Insured and of all others in the property, the actual cash value of
103 each item thereof and the amount of loss thereto, all encum-
104 brances thereon, all other contracts of insurance, whether valid
105 or not, covering any of said property, any changes in the title,
106 use, occupation, location, possession or exposures of said prop-
107 erty since the issuing of this policy, by whom and for what
108 purpose any building herein described and the several parts
109 thereof were occupied at the time of loss and whether or not it
110 then stood on leased ground, and shall furnish a copy of all the
111 descriptions and schedules in all policies and, if required verified
112 plans and specifications of any building, fixtures or machinery

113 destroyed or damaged. The Insured, as often as may be reason-
114 ably, required shall exhibit to any person designated by the
115 Company all that remains of any property herein described,
116 submit to examinations under oath by any person named by
117 Company, and subscribe the same; and, as often as may
118 reasonably required, shall produce for examination all books of
119 accounts, bills, invoices and other vouchers, or certified copies
120 thereof if originals be lost, at such reasonable time and place as
121 may be designated by this Company or its representative, and
122 shall permit extracts and copies thereof to be made.

123 **Appraisal.**     In case the Insured and this Company shall
124                    fail to agree as to the actual cash value of
125 the amount of loss, then, on the written demand of either, each
126 shall select a competent and disinterested appraiser and notify
127 the other of the appraiser selected within twenty days of such
128 demand. The appraisers shall first select a competent and dis-
129 interested umpire; and failing for fifteen days to agree upon
130 such umpire, then, on request of the Insured or this Company,
131 such umpire shall be selected by a judge of a court of record in
132 the state in which the property covered is located. The ap-
133 praisers shall then appraise the loss, stating separately actual
134 cash value and loss to each item; and, failing to agree, shall
135 submit their difference, only, to the umpire. An award in writ-
136 ing, so itemized, of any two when filed with this Company shall
137 determine the amount of actual cash value and loss. Each
138 appraiser shall be paid by the party selecting him and the ex-
139 penses of appraisal and umpire shall be paid by the parties
140 equally.

141 **Company's**      It shall be optional with this Company to
142 **options.**       take all, or any part, of the property at the
143                    agreed or appraised value, and also to re-
144 pair, rebuild or replace the property destroyed or damaged with
145 other of like kind and quality within a reasonable time, on giv-
146 ing notice of its intention so to do within thirty days after the
147 receipt of the proof of loss herein required.

148 **Abandonment.**   There can be no abandonment to this Com-
149                    pany of any property.

150 **When loss**      The amount of loss for which this Company
151 **payable.**       may be liable shall be payable sixty days
152                    after proof of loss, as herein provided is
153 received by this Company and ascertainment of the loss is m????
154 either by agreement between the Insured and this Company
155 pressed in writing or by the filing with this Company of
156 award as herein provided.

157 **Suit.**          No suit or action on this policy for the recov-
158                    ery of any claim shall be sustainable in any
159 court of law or equity unless all the requirements of this policy
160 shall have been complied with, and unless commenced within
161 twelve months next after inception of the loss.

162 **Subrogation.**   This Company may require from the Insured
163                    an assignment of all right of recovery against
164 any party for loss to the extent that payment therefore is made
165 by this Company.

Copyright, ISO Commercial Risk Services, Inc., 1994

45

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

Policy No. PAC  2-47-05-23  -08

## BUSINESSPRO GENERAL LIABILITY COVERAGE PART DECLARATIONS PAGE

| | |
|---|---|
| **NAMED INSURED:** PETERBOROUGH OIL CO., INC. | **POLICY PERIOD:** 09/30/98 to 09/30/99 |

### LIMITS OF INSURANCE:

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ 2,000,000. | |
| Products - Completed Operations Aggregate Limit | $ 1,000,000. | |
| Personal and Advertising Injury Limit | $ 1,000,000. | |
| Each Occurrence Limit | $ 1,000,000. | |
| Fire Damage Limit | $  100,000. | Any One Fire |
| Medical Expense Limit | $    5,000. | Any One Person |

**RETROACTIVE DATE (CG 00 02 ONLY):** Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here:          (enter date or "none" if does not apply)

### DESCRIPTION OF BUSINESS:

Form of Business:  (   ) Individual  (   ) Joint Venture  (   ) Partnership
(   ) Organization (Other than Partnership or Joint Venture)

Business Description:  FUEL OIL DEALER

Location of All Premises You Own, Rent or Occupy:  PER SCHEDULE ON FILE WITH THE COMPANY

### PREMIUM:

| Classification | Code No. | * Premium Basis | Rates Pr/Co | Rates All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| SEE FORM CG 7401 | | | | | 3,865. | 31,614. |

(a) Admissions; (b) Area; (c) Each; (d) Gross Sales; (e) Payroll; (f) Total Cost; (g) Units; (h) Other

Total Advance Premium $ 35,479.

Premium shown is payable: $            at inception;
$ PER IL 7001

**FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule CG 88 01 (11/85).

46

0284524

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 74 07 (Ed. 11 85)

Policy No. PAC  2-47-05-23 - 08

## BUSINESSPRO LIQUOR LIABILITY COVERAGE PART
### DECLARATIONS PAGE

| NAMED INSURED:  PETERBOROUGH OIL CO., INC. | POLICY PERIOD:<br>09/30/98 to 09/30/99 |
|---|---|

**LIMITS OF INSURANCE:**

Aggregate Limit                                     $ 1,000,000.
Each Common Cause Limit                 $ 1,000,000.

**RETROACTIVE DATE** (CG 00 34 03/90 only):

Section I of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown below

Retroactive Date
                (Enter Date or "None" if no Retroactive Date applies)

**DESCRIPTION OF BUSINESS**

Form of Business     (  ) Individual     (  ) Joint Venture     (  ) Partnership
                     ( X ) Organization (Other than Partnership or Joint Venture)

Business Description:  FUEL OIL DEALER

Location of All Premises You Own, Rent or Occupy:  PER SCHEDULE ON FILE
                                                   WITH THE COMPANY

**PREMIUM:**

| Classification | Code No. | Premium Basis | Rate | Advance Premium |
|---|---|---|---|---|
| LIQUOR - PACKAGE STORE | 59211 | | | |
| MA | | D) 175,000 | 14.270 | 2,497. |
| NH | | 525,000 | 3.090 | 1,622. |
| ME | | 85,000 | 4.675 | 542. MP |

                Total Advance Premium  4,661.

Premium shown is payable:  $             at inception;
     $ PER IL 7001

**FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made part of this policy at time of issue and listed on the attached Forms and Endorsements Schedule CG 88 01 (11/85).

BUSINESSPRO (Reg.U.S.Pat.Off.)
CG 74 07 (Ed. 11/85) PRO                (Page 1 of 1)

47

C *S2*10/20/98*PAC2470523-08

0284524

ORIGINAL COPY

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 75 18 (Ed. 03 90)

**Policy No. PAC   2-47-05-23 - 08**

## BUSINESSPRO EMPLOYEE BENEFITS LIABILITY COVERAGE PART
### DECLARATIONS PAGE

| NAMED INSURED: PETERBOROUGH OIL CO., INC. | POLICY PERIOD:<br>09/30/98 to 09/30/99 |
|---|---|

**LIMITS OF INSURANCE:**

| | |
|---|---|
| Aggregate Limit | $ 1,000,000. |
| Each Claim Limit | $ 1,000,000. |
| Deductible | $     1,000. |

**DESCRIPTION OF BUSINESS:**

Form of Business:   (   ) Individual   (   ) Joint Venture   (   ) Partnership
(  X  ) Organization (Other than Partnership or Joint Venture)

**Total Advance Premium** $ 220.

Premium shown is payable:   $            at inception;
$ PER IL 7001

**FORMS AND ENDORSEMENTS** applicable to this Coverage Part and a made part of this policy at the time of issue are listed on the attached Forms and Endorsements Schedule CG 88 01 (11/85).

48

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 74 01 (Ed. 11 85)

# BUSINESSPRO
## SUPPLEMENTAL SCHEDULE

| Classification | Code No. | * Premium Basis | Rates | | Advance Premium | |
|---|---|---|---|---|---|---|
| | | | Pr/Co | All Other | Pr/Co | All Other |
| ** MA ** | | | | | | |
| GAS STATIONS-FULL SERVICE | 13453 | H)2,629,912 | .054 | 1.122 | 142. | 2,951. |
| GAS STATIONS-SELF SERVICE | 13454 | H)6,705,590 | .041 | 1.075 | 275. | 7,209. |
| GROCERY STORES | 13673 | D)2,966,460 | .104 | 1.331 | 309. | 3,948. |
| GAS-OIL SUPPLY STATION | 44009 | D) 36,720 | INCL | 11.682 | INCL. | 429. |
| GAS DISTRIBUTOR | 53907 | H) 15,512,396 | .124 | .236 | 1,924. | 3,661. |
| 'T BLDG | 60010 | G) 6 | INCL | 51.638 | INCL. | 310. |
| BLDGS OR PREMISES | 61217 | B) 2,600 | INCL | 33.319 | INCL. | 87. |
| DWELLINGS - ONE FAMILY | 63010 | C) 1 | INCL | 72.346 | INCL. | 72. |
| WAREHOUSES-PRIVATE | 68706 | B) 3,500 | INCL | 25.952 | INCL. | 91. |
| ** ME ** | | | | | | |
| GAS STATION-SELF SERVICE | 13454 | H)1,980,675 | .046 | .717 | 91. | 1,420. |
| GROCERY STORE | 13673 | D) 902,842 | INCL | .916 | INCL. | 827. |
| GAS DISTRIBUTORS | 53907 | H) 809,833 | .125 | .166 | 101. | 134. |
| | | | | Total | $ CON'T | |

(a) Admissions
(b) Area
(c) Each
(d) Gross Sales
(e) Payroll
(f) Total Cost
(g) Units
(h) Other

49



ORIGINAL COPY

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

0284524

CG 74 01 (Ed. 11 85)

# BUSINESSPRO
## SUPPLEMENTAL SCHEDULE

| Classification | Code No. | * Premium Basis | Rates Pr/Co | Rates All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| ** NH ** | | | | | | |
| CAR WASHES - SELF SERVICE | 10368 | D) 27,077 | INCL | 10.909 | INCL. | 295. |
| GAS STATIONS-SELF SERVICE | 13454 | H)5,082,546 | .030 | .780 | 152. | 3,964. |
| GROCERY STORES | 13673 | D)4,893,365 | .083 | .677 | 406. | 3,313. |
| GAS-OIL SUPPLY STATION | 44009 | D) 39,960 | INCL | 9.916 | INCL. | 396. |
| GAS DISTRIBUTOR | 53907 | H)9,903,048 | .047 | .247 | 465. | 2,446. |
| DWELLINGS - ONE FAMILY | | C) 1 | INCL | 24.412 | INCL. | 24. |
| DWELLINGS - TWO FAMILY | | C) 1 | INCL | 37.498 | INCL. | 37. |
| | | | | | Total | $ 35,479. |

(a) Admissions
(b) Area
(c) Each
(d) Gross Sales
(e) Payroll
(f) Total Cost
(g) Units
(h) Other

BUSINESSPRO (Reg U.S. Pat. Off.)

50

GREAT AMERICAN INSURANCE COMPANIES
0284524
Document 14-7    Filed 02/25/2005    Page 11 of 20
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202
CG 88 01 (Ed. 11 85)

## BUSINESSPRO FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | ST | Date Added* or Date Deleted | Form Description |
|---|---|---|---|---|
| 1. | CG0001 | 01/96 | MA | COMMERCIAL GENERAL LIA COV FORM |
| 2. | CG7796 | 11/97 | MA | PETROLEUM MARKETERS POLLUTION ENDT |
| 3. | CG2147 | 10/93 | MA | EMPLOYMENT RELATED PRACTICES EXCLU |
| 4. | CG2266 | 11/85 | MA | MISDELIVERY OF LIQUID PRODUCTS COV |
| 5. | CG7797 | 05/93 | MA | AUTOMATIC FILL FAIL TO SUPPLY ENDT |
| 6. | CG7518 | 03/90 | MA | EMPL BENEFITS LIA COV PART DEC |
| 7. | CG7519 | 04/90 | MA | EMP BENEFITS LIA COV EXCL FID/LIA |
| 8. | CG2026 | 11/85 | MA | ADDL INS-DESIGNATED PERSON/ORGANIZ |
| 9. | CG2011 | 01/96 | MA | ADDL INSD-MGR OR LESSOR OF PREMISES |
| 0. | CG7407 | 11/85 | MA | LIQUOR LIA COVERAGE PART DEC |
| 1. | CG0033 | 01/96 | MA | LIQUOR LIABILITY COVERAGE FORM |
| 2. | CG2151 | 09/89 | MA | AMEND-LIQUOR LIA EXCL/XCPT SCHD ACT |
| 3. | CG7401 | 11/85 | MA | SUPPLEMENTAL SCHEDULE |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 0. | | | | |
| . | | | | |
| . | | | | |

f not at inception

**GREAT AMERICAN INSURANCE COMPANIES** ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 00 01
(Ed. 01 96)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "Insured" means any person or organization qualifying as such under **WHO IS AN INSURED (SECTION II).**

Other words and phrases that appear in quotation marks have special meaning. Refer to **DEFINITIONS (SECTION V).**

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) the amount we will pay for damages is limited as described in **Limits Of Insurance (Section III);** and

   (2) our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments - Coverages A and B.**

b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   (2) the "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**2. Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the Insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

   "Bodily injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of li-

Copyright, Insurance Services Office, Inc., 1994
(Page 1 of 16)

ability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) that the Insured would have in the absence of the contract or agreement; or

(2) assumed in a contract or agreement that is an "insured contract"; provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an Insured are deemed to be damages because of "bodily injury" or "property damage," provided:

(a) liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any Insured may be held liable by reason of:

(1) causing or contributing to the intoxication of any person;

(2) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation and Similar Laws**

Any obligation of the Insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the Insured arising out of and in the course of:

(a) employment by the Insured; or

(b) performing duties related to the conduct of the Insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) whether the Insured may be liable as an employer or in any other capacity; and

(2) to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the Insured under an "insured contract."

**f. Pollution**

(1) "Bodily injury" and "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured;

(b) at or from any premises, site or location which is or was at any time used by or for any Insured

0284524

or others for the handling, storage, disposal, processing or treatment of waste;

(c) which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom you may be legally responsible; or

(d) at or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such Insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such Insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost, or expense arising out of any:

(a) request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any Insured. Use includes operation and "loading or unloading."

This exclusion does not apply to:

(1) a watercraft while ashore on premises you own or rent;

(2) a watercraft you do not own that is:

(a) less than 26 feet long; and

(b) not being used to carry persons or property for a charge;

Copyright, Insurance Services Office, Inc., 1994
(Page 3 of 16)

**(3)** parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the Insured;

**(4)** liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment" (Section V.8).

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** the transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any Insured; or

**(2)** the use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

**(1)** property you own, rent, or occupy;

**(2)** premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** property loaned to you;

**(4)** personal property in the care, custody or control of the Insured;

**(5)** that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products–completed operations hazard."

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products–completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

0284524

ORIGINAL COPY

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "your product";

**(2)** "your work"; or

**(3)** "impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in **Limits of Insurance** (Section III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** the amount we will pay for damages is limited as described in **Limits of Insurance (Section III)**; and

**(2)** our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments - Coverages A and B.**

**b.** This insurance applies to:

**(1)** "personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity;

**(2)** arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

**(3)** arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the Insured;

**(4)** for which the Insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for

Copyright, Insurance Services Office, Inc., 1994
(Page 5 of 16)

damages that the Insured would have in the absence of the contract or agreement; or

(5) arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

(1) breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) the failure of goods, products or services to conform with advertised quality or performance;

(3) the wrong description of the price of goods, products or services; or

(4) an offense committed by an Insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

(1) request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) on premises you own or rent;

(2) on ways next to premises you own or rent; or

(3) because of your operations;

provided that:

(1) the accident takes place in the "coverage territory" and during the policy period;

(2) the expenses are incurred and reported to us within one year of the date of the accident; and

(3) the injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable Limit of Insurance. We will pay reasonable expenses for:

(1) first aid administered at the time of an accident;

(2) necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any Insured.

b. To a person hired to do work for or on behalf of any Insured or a tenant of any Insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any Insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products—completed operations hazard."

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an Insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the Insured in the "suit."

6. Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the limits of insurance.

If we defend an Insured against a "suit" and an indemnitee of the Insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

a. the "suit" against the indemnitee seeks damages for which the Insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. this insurance applies to such liability assumed by the Insured;

c. the obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the Insured in the same "insured contract";

d. the allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the Insured and the interests of the indemnitee;

e. the indemnitee and the Insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the Insured and the indemnitee; and

f. the indemnitee:

(1) agrees in writing to:

(a) cooperate with us in the investigation, settlement or defense of the "suit";

(b) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) notify any other insurer whose coverage is available to the indemnitee; and

(d) cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

Copyright, Insurance Services Office, Inc., 1994

(2) provides us with written authorization to:

    (a) obtain records and other information related to the "suit"; and

    (b) conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Coverage A -- Bodily Injury and Property Damage Liability (Section I -- Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an Insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** we have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**b.** the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are Insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an Insured. Your members, your partners, and their spouses are also Insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an Insured. Your members are also Insureds, but only with respect to the conduct of

your business. Your managers are Insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an Insured. Your "executive officers" and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an Insured:

**a.** Your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an Insured for:

  **(1)** "Bodily injury" or "personal injury":

    **(a)** to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

    **(b)** to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

    **(c)** for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

    **(d)** arising out of his or her providing or failing to provide professional health care services.

  **(2)** "property damage" to property:

Copyright, Insurance Services Office, Inc., 1994

(a) owned, occupied or used by,

(b) rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees," any partner or member (if you are a partnership or joint venture) or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) with respect to liability arising out of the maintenance or use of that property; and

(2) until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an Insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an Insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an Insured with respect to:

a. "bodily injury" to a co-"employee" of the person driving the equipment; or

b. "property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an Insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an Insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. insureds;

b. claims made or "suits" brought; or

c. persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

a. medical expenses under Coverage C;

b. damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. damages under Coverage B.

Copyright, Insurance Services Office, Inc., 1994

3. The Products–Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products–completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. damages under Coverage A; and

   b. medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) how, when and where the "occurrence" or offense took place;

   (2) the names and addresses of any injured persons and witnesses; and

   (3) the nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any Insured, you must:

   (1) immediately record the specifics of the claim or "suit" and the date received, and

   (2) notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved Insured must:

   (1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) authorize us to obtain records and other information;

   (3) cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

d. No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Copyright, Insurance Services Office, Inc., 1994

0284524

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. to join us as a party or otherwise bring us into a "suit" asking for damages from an Insured; or

b. to sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the Insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) that is Fire insurance for premises rented to you; or

or temporarily occupied by you with permission of the owner.

(3) if the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend the Insured against any "suit" if any other insurer has a duty to defend the Insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

Copyright, Insurance Services Office, Inc., 1994

### 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 6. Representations

By accepting this policy, you agree:

a. the statements in the Declarations are accurate and complete;

b. those statements are based upon representations you made to us; and

c. we have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. as if each Named Insured were the only Named Insured; and

b. separately to each Insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the Insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. **"Advertising injury"** means injury arising out of one or more of the following offenses:

   a. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. oral or written publication of material that violates a person's right of privacy;

   c. misappropriation of advertising ideas or style of doing business; or

   d. infringement of copyright, title or slogan.

2. **"Auto"** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **"Coverage territory"** means:

   a. the United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. international waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. all parts of the world if:

Copyright, Insurance Services Office, Inc., 1994

0284524

(1) the injury or damage arises out of:

    (a) goods or products made or sold by you in the territory described in **a.** above; or

    (b) the activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

(2) the Insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. **"Employee"** includes a "leased worker." "Employee" does not include a "temporary worker."

6. **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, by–laws or any other similar governing document.

7. **"Impaired property"** means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    **a.** it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **a.** the repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.** your fulfilling the terms of the contract or agreement.

8. **"Insured contract"** means:

    **a.** a contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or tem-

porarily occupied by you with permission of the owner is not an "insured contract";

**b.** a sidetrack agreement;

**c.** any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** an elevator maintenance agreement;

**f.** that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road–beds, tunnel, underpass or crossing;

(2) that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a) preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

Copyright, Insurance Services Office, Inc., 1994

(3) under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

9. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

10. **"Loading or unloading"** means the handling of property:

   a. after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. while it is in or on an aircraft, watercraft or "auto"; or

   c. while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

11. **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

   a. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. vehicles maintained for use solely on or next to premises you own or rent;

   c. vehicles that travel on crawler treads;

   d. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) power cranes, shovels, loaders, diggers or drills; or

   (2) road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) cherry pickers and similar devices used to raise or lower workers;

   f. vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) equipment designed primarily for:

         (a) snow removal;

         (b) road maintenance, but not construction or resurfacing; or

         (c) street cleaning;

      (2) cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. **"Personal injury"** means injury, other than "bodily injury," arising out of one or more of the following offenses:

Copyright, Insurance Services Office, Inc., 1994

**a.** false arrest, detention or imprisonment;

**b.** malicious prosecution;

**c.** the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

**e.** oral or written publication of material that violates a person's right of privacy.

**14.** "Products-completed operations hazard":

**a.** includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except

  (1) products that are still in your physical possession; or

  (2) work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    (a) When all of the work called for in your contract has been completed.

    (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

  (1) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any Insured;

  (2) the existence of tools, uninstalled equipment or abandoned or unused materials; or

  (3) products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**15.** "Property damage" means:

**a.** physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** an arbitration proceeding in which such damages are claimed and to which the Insured must submit or does submit with our consent; or

**b.** any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

**17.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**18.** "Your product" means:

**a.** any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(1)** you;

**(2)** others trading under your name; or

**(3)** a person or organization whose business or assets you have acquired; and

**b.** containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product," and

**b.** the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**19. "Your work"** means:

**a.** work or operations performed by you or on your behalf; and

**b.** materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** the providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 (Ed. 01/96) XS

67

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

0284524

Document 14-8    Filed 02/25/2005    Page 8 of 20

CG 22 66
(Ed. 11 85)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MISDELIVERY OF LIQUID PRODUCTS COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

Exclusion g. of COVERAGE A (Section I) does not apply to "bodily injury" or "property damage" arising out of:

1. The delivery of any liquid product into a wrong receptacle or to a wrong address; or

2. The erroneous delivery of one liquid product for another by an "auto";

if the "bodily injury" or "property damage" occurs after such operations have been completed or abandoned at the site of such delivery.

Operations which may require further service, maintenance, correction, repair or replacement because of performance at the wrong address or because of any error, defect or deficiency, but which are otherwise completed, will be deemed completed.

CG 22 66 (Ed. 11/85) XS

68

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 75 19
(Ed. 04 90)

# EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
## EXCLUDING FIDUCIARY LIABILITY

Various provisions of this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the company providing this insurance.

The word "Insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION VI - DEFINITIONS.**

## SECTION I - EMPLOYEE BENEFITS COVERAGES

### 1. Insuring Agreement

a. We will pay those sums that the Insured becomes legally obligated to pay as damages sustained by an employee, former employee, prospective employee or the beneficiaries or legal representatives thereof and caused by any "negligent act, error or omission" of the Insured, or any other person for whose acts you are legally liable in the "administration" of your "Employee Benefit Program." No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTAL PAYMENTS.**

This insurance applies to any "negligent act, error or omission" which occurs in the "coverage territory" and during the policy period.

We will have the right and duty to defend any suit seeking those damages. But:

(1) the amount we pay for damages is limited as described in Section III – Limits of Insurance.

(2) we may at our discretion, investigate any "negligent act, error or omission" and settle any claim or "suit" that may result; and

(3) our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Coverage Part.

### 2. Exclusions

This insurance does not apply to:

a. damages arising out of any dishonest, fraudulent, criminal or malicious act or omission, committed by any Insured;

b. "bodily injury" or "property damage" or "personal injury";

c. damages arising out of failure of performance of contract by any Insured;

d. damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program";

e. any claim or "suit" based upon:

(1) failure of any investment to perform as represented by any Insured, or

(2) advice given to any person to participate or not to participate in any plan included in the "employee benefit program";

(3) the investment or non-investment of funds.

69

f. damages arising out of your failure to comply with the mandatory provisions of any law concerning workers' compensation, unemployment insurance, social security or disability benefits;

g. damages for which the Insured is liable because of liability imposed on a fiduciary by the Employee Retirement Security Act of 1974, as now or hereafter amended; or

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

3. All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

4. All costs taxed against the Insured in the "suit."

5. Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we made an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an Insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are an Insured. Your executive officers and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

   d. Your employees provided they are authorized to act in the administration of your "Employee Benefit Program."

   e. Any organization you newly acquire or form other than a partnership or joint venture and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

      (1) Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

   No person or organization is an Insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. claims made or "suits" brought; or

   c. persons or organizations making claims or bringing "suits."

2. The limits of liability shown in the Declarations applicable to Each Claim is the most we will pay for all damages arising out of any covered claim.

70

The Limit of Liability shown in the Declarations as Aggregate is subject to the above provision respecting Each Claim, the most we will pay for all losses.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - DEDUCTIBLE

1. Our obligation to pay damages on your behalf applies only to the amount of damages in excess of the deductible amount stated in the Declarations. The Limits of Insurance applicable to each claim for such coverage will be reduced by the amount of such deductible amount.

2. The terms of this insurance, including those with respect to:

    (a) our right and duty to defend any "suits" seeking those damages; and

    (b) your duties in the event of a negligent act, claim or "suit"

    apply irrespective of the application of the deductible amount.

3. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## SECTION V - EMPLOYEE BENEFITS LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the Insured will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of A Claim or "Suit"

a. the Insured must see to it that we are notified as soon as practicable of any "negligent act, error or omission" which may result in a claim. To the extent possible, notice should include:

   (1) how, when and where the "negligent act, error or omission" took place;

   (2) the names and addresses of any insured persons and witnesses; and

   (3) the nature of any injury or damage arising out of the "negligent act, error or omission."

b. If a claim is received by an Insured, you must:

   (1) immediately record the specifics of the claim and the date received; and

   (2) notify us as soon as practicable.

c. You and any other involved Insured must:

   (1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit;"

   (2) authorize us to obtain records and other information;

   (3) cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

   (4) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

d. No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

### 3. Legal Action Against Us.

No person or organization has a right under this Coverage Part:

a. to join us as a party or bring us into a "suit" asking for damages from an Insured; or

**b.** to sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to re-cover on an agreed settlement or on a final judgment against an Insured obtained after an actual trial, but we will not be liable for dam-ages that are not due under the terms of this Coverage Part or that are in excess of the Limits of Insurance. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal agent.

### 4. Other Insurance

If other valid and collectible insurance is avail-able to the Insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**(a) Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other in-surance by the method described in b. be-low.

**(b) Method of Sharing**

If all of the other insurance permits con-tribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of In-surance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this meth-od, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

### 5. Premium Audit

**a.** We will compute all premiums for this endorsement in accordance with our rules and rates.

**b.** Premium shown in this endorsement as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 6. Representations

By accepting this policy, you agree:

**a.** the statements in the Declarations are ac-curate and complete;

**b.** those statements are based upon repre-sentations you made to us; and

**c.** we have issued this policy in reliance upon your representations.

### 7. Separation of Insureds

Except with respect to the Limits of Insur-ance, and any rights or duties specifically as-signed to the first Named Insured, this insur-ance applies:

**a.** as if each Named Insured were the only Named Insured; and

**b.** separately to each Insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the Insured has rights to recover all or part of any payment we have made under this en-dorsement, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION VI - DEFINITIONS

1. **"Administration"** means:

   a. giving counsel to employees with respect to the "Employee Benefit Programs";

   b. interpreting the "Employee Benefit Programs";

   c. handling of employee records in connection with the "Employee Benefit Programs";

   d. effecting enrollment, termination or cancellation of employees under the "Employee Benefit Programs"; provided all such acts are authorized by you.

2. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

3. **"Coverage territory"** means:

   a. the United Sates of America (including its territories and possessions), Puerto Rico and Canada.

4. **"Employee"** means your officers, partners and employees whether actively employed, disabled or retired.

5. **"Employee Benefit Program"** means the following plans:

   a. group life insurance, group accident or health insurance, "profit sharing plans," pension plans and "stock subscription plans," provided that no one other than an employee may subscribe to such insurance or plans;

   b. unemployment insurance, social security benefits, workers' compensation and disability benefits;

   c. any other similar plan designated in the Declarations or added thereto by endorsement.

6. **"Negligent act, error or omission"** means the failure to execute a required action, or a mistaken action committed by the administration of the Insured's employee benefit program to said program.

7. **"Personal Injury"** means injury other than "bodily injury," arising out of one or more of the following offenses;

   a. false arrest, detention or imprisonment;

   b. malicious prosecution;

   c. wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

   d. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e. oral or written publication of material that violates a person's right of privacy.

8. **"Profit sharing plans"** means only such plans that are equally available to all full time employees.

9. **"Property damage"** means:

   a. physical injury to tangible property, including all resulting loss of use of that property; or

   b. Loss of use of tangible property that is not physically injured.

10. **"Stock subscription plans"** mean only such plans that are equally available to all full time employees.

11. **"Suit"** means a civil proceeding in which damage because of an act, error or omission to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

GREAT AMERICAN INSURANCE COMPANIES ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 00 33
(Ed. 01 96)

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "Insured" means any person or organization qualifying as such under **WHO IS AN INSURED** (Section II).

Other words and phrases that appear in quotation marks have special meaning. Refer to **DEFINITIONS** (Section V).

## SECTION I - LIQUOR LIABILITY COVERAGE

**1. Insuring Agreement.**

a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the Insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

(1) the amount we will pay for damages is limited as described in **Limits of Insurance** (Section III); and

(2) our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments.**

b. This insurance applies to "injury" which occurs during the policy period in the "coverage territory."

**2. Exclusions.**

**a. Expected or Intended Injury**

"Injury" expected or intended from the standpoint of the Insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Workers Compensation and Similar laws**

Any obligation of the Insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**c. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the Insured arising out of and in the course of:

(a) employment by the Insured; or

(b) performing duties related to the conduct of the Insured's business; or

(2) the spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) whether the Insured may be liable as an employer or in any other capacity; and

**(2)** to any obligation to share damages with or repay someone else who must pay damages because of the "injury."

**d. Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is suspended or after such license expires, is cancelled or revoked.

**e. Your Product**

"Injury" arising out of "your product." This exclusion does not apply to "injury" for which the Insured or the Insured's indemnitees may be held liable by reason of:

**(1)** causing or contributing to the intoxication of any person;

**(2)** the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**f. Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the Limits of Insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the Insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an Insured we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

**4.** All costs taxed against the Insured in the "suit."

**5.** Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**7.** Expenses incurred by the Insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the Limits of Insurance.

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are Insureds.

**b.** A partnership or joint venture, you are an Insured. Your members, your partners, and their spouses are also Insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an Insured. Your members are also Insureds, but only with respect to the conduct of your business. Your managers are Insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an Insured. Your "executive officers" and directors are Insureds, but only

with respect to their duties as your of-
ficers or directors. Your stockholders are
also Insureds, but only with respect to
their liability as stockholders.

2. Each of the following is also an Insured:

  **a.** Your "employees," other than either your
"executive officers," (if you are an or-
ganization other than a partnership, joint
venture or limited liability company) or
your managers (if you are a limited liability
company), but only for acts within the
scope of their employment by you or
while performing duties related to the
conduct of your business. However, none
of these "employees" is an Insured for:

    **(1)** "Injury":

      **(a)** to you, to your partners or mem-
bers (if you are a partnership or
joint venture), to your members
(if you are a limited liability com-
pany), or to a co-"employee"
while that co-"employee" is either
in the course of his or her em-
ployment or while performing
duties related to the conduct of
your business;

      **(b)** to the spouse, child, parent,
brother or sister of that co-"em-
ployee" as a consequence of
Paragraph **(1)(a)** above; or

      **(c)** for which there is any obligation
to share damages with or repay
someone else who must pay
damages because of the injury
described in Paragraphs **(1)(a)** or
**(b)** above.

    **(2)** "Property Damage" to property:

      **(a)** owned or occupied by, or

      **(b)** rented or loaned

    to that "employee," any of your other
"employees," by any of your partners
or members (if you are a partnership
or joint venture), or by any of your
members (if you are a limited liability
company).

  **b.** Any person or organization having proper
temporary custody of your property if
you die; but only:

    **(1)** with respect to liability arising out of
the maintenance or use of that prop-
erty; and

    **(2)** until your legal representative has been
appointed.

  **c.** Your legal representative if you die, but
only with respect to duties as such. That
representative will have all your rights and
duties under this Coverage Part.

3. Any organization you newly acquire or form,
other than a partnership, joint venture or
limited liability company, and over which you
maintain ownership or majority interest, will
qualify as a Named Insured if there is no other
similar insurance available to that organization.
However:

  **a.** coverage under this provision is afforded
only until the 90th day after you acquire
or form the organization or the end of the
policy period, whichever is earlier; and

  **b.** coverage does not apply to "injury" that
occurred before you acquired or formed
the organization.

No person or organization is an Insured with
respect to the conduct of any current or past
partnership, joint venture or limited liability
company that is not shown as a Named In-
sured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declara-
tions and the rules below fix the most we will
pay regardless of the number of:

  **a.** Insureds;

  **b.** claims made or "suits" brought; or

  **c.** persons or organizations making claims or
bringing "suits."

2. The Aggregate Limit is the most we will pay
for all "injury" as the result of the selling,
serving or furnishing of alcoholic beverages.

3. Subject to the Aggregate Limit, the Each Common Cause limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - LIQUOR LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event of Injury, Claim or Suit.**

   a. You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

      (1) how, when and where the "injury" took place;

      (2) the names and addresses of any injured persons and witnesses; and

      (3) the nature and location of any "injury" arising out of an occurrence.

   b. If a claim is made or "suit" is brought against any Insured, you must:

      (1) immediately record the specifics of the claim or "suit" and the date received, and

      (2) notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved Insured must:

      (1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) authorize us to obtain records and other information;

      (3) cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of "injury" to which this insurance may also apply.

   d. No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

   No person or organization has a right under this Coverage Part:

   a. to join us as a party or otherwise bring us into a "suit" asking for damages from an Insured; or

   b. to sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

   If other valid and collectible insurance is available to the Insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

Copyright, Insurance Services Office, Inc., 1994

**a. Primary Insurance**

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

**5. Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premiums, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

a. the statements in the Declarations are accurate and complete;

b. those statements are based upon representations you made to us; and

c. we have issued this policy in reliance upon your representations.

**7. Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. as if each Named Insured were the only Named Insured; and

b. separately to each Insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the Insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

2. **"Coverage territory"** means:

a. the United States of America (including its territories and possessions), Puerto Rico and Canada;

b. international waters or airspace, provided the "injury" does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

c. all parts of the world if:

(1) the "injury" arises out of:

(a) goods or products made or sold by you in the territory described in **a.** above; or

(b) the activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

(2) the Insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

3. **"Employee"** includes a "leased worker." "Employee" does not include a "temporary worker."

4. **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

5. **"Injury"** means all damages, including damages because of "bodily injury" and "property damage," and including damages for care, loss of services or loss of support.

6. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

7. **"Property damage"** means:

a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

8. **"Suit"** means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

a. an arbitration proceeding in which such damages are claimed and to which the Insured must submit or does submit with our consent; or

b. any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

9. **"Temporary worker"** means a person who is furnished to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

10. **"Your product"** means:

a. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) you;

(2) others trading under your name; or

(3) a person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your products" includes:

a. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

Copyright, Insurance Services Office, Inc., 1994

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 20 11
(Ed. 01 96)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

1.  Designation of Premises (Part Leased to You):

2.  Name of Person or Organization (Additional Insured):

    SEE FORM IL 8802

3.  Additional Premium:

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an Insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1.  Any "occurrence" which takes place after you cease to be a tenant in that premises.

2.  Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1994

CG 20 11 (Ed. 01/96) PRO

(Page 1 of 1)

80

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

0284524

**CG 20 26**
**(Ed. 11 85)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED--DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Name of Person or Organization:    SEE FORM IL 8802

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

8 1

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 21 51
(Ed. 09 89)

**THIS ENDORSEMENT CHANGES THE POLICY.    PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION - EXCEPTION FOR SCHEDULED ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Description of Activity(ies): SOCIAL OR SIMILAR GATHERINGS OR FUNCTIONS USUAL
TO THE BUSINESS OF A FUEL OIL DEALER

(If no entry appears above, information required to complete this endorsement
will be shown in the Declarations as applicable to this endorsement.)

clusion c. of **COVERAGE A** (Section I) is replaced by the following:

c. **"Bodily injury"** or **"property damage"** for which any insured may be held
liable by reason of:

(1) causing or contributing to the intoxication of any person;

(2) the furnishing of alcoholic beverages to a person under the legal
drinking age or under the influence of alcohol; or

(3) any statute, ordinance or regulation relating to the sale, gift,
distribution or use of alcoholic beverages.

This exclusion applies only if you:

(1) manufacture, sell or distribute alcoholic beverages;

(2) serve or furnish alcoholic beverages for a charge whether or not
such activity:

(a) requires a license;

(b) is for the purpose of financial gain or livelihood; or

(3) serve or furnish alcoholic beverages without a charge, if a license
is required for such activity.

However, this exclusion does not apply to "bodily injury" or "property
damage" arising out of the selling, serving or furnishing of alcoholic
beverages at the specific activity(ies) described above.

Copyright, Insurance Services Office, Inc., 1989

0284524

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 21 47
(Ed. 10 93)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., **Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (Section I – Coverages):

This insurance does not apply to:

1. "Bodily injury" to:

   a. a person arising out of any:

      (1) refusal to employ that person;

      (2) termination of that person's employment; or

      (3) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   b. the spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (1), (2) or (3) above is directed.

This exclusion applies:

   a. whether the Insured may be liable as an employer or in any other capacity; and

   b. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., **Exclusions** of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** (Section I – Coverages):

This insurance does not apply to:

1. "Personal injury" to:

   a. a person arising out of any:

      (1) refusal to employ that person;

      (2) termination of that person's employment; or

      (3) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, decipline, defamation, harassment, humiliation, discrimination directed at that person; or

   b. the spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in Paragraphs (1), (2) or (3) above is directed.

This exclusion applies:

   a. whether the Insured may be liable as an employer or in any other capacity; and

   b. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1992

CG 21 47 (Ed. 10/93) XS

83

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 77 96
(Ed. 11 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PETROLEUM MARKETERS POLLUTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. **SECTION I - COVERAGES, COVERAGE A - Bodily Injury and Property Damage Liability, 2. Exclusions** is hereby amended by replacement of Exclusion **f.** with the following:

   f. (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

   (2) Any loss, cost or expense arising out of any:

   (a) request, direction, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remedy or abate, or in any way respond to, or assess the effects of pollutants; or

   (b) claim or suit by or on behalf of a governmental authority and arising out of, seeking or involving the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

2. **SECTION I - COVERAGES, COVERAGE B - Personal and Advertising Injury Liability, 2. Exclusions** is hereby amended by the addition of Exclusion **c.** as follows:

   c. (1) "Personal injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

   (2) Any loss, cost or expense arising out of any:

   (a) request, direction, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, remedy or abate, or in any way respond to, or assess the effects of pollutants; or

   (b) claim or suit by or on behalf of a governmental authority and arising out of, seeking or involving the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

3. Exclusion **f.** under **Coverage A**, as replaced in **1.** above, and Exclusion **c.** under **Coverage B.** as added in **2.** above, do not apply to "bodily injury," "property damage" or "personal injury" arising out of heat, smoke or fumes from a hostile fire:

   (1) at or from any premises, site or location which is owned or occupied by or rented or loaned to any Insured;

   (2) at or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the pollutants are brought on or to the premises, site or location in connection with such operations by such Insured, contractor or subcontractor.

84

4. Exclusion **f.** under **Coverage A,** as replaced in **1.** above, does not apply to "bodily injury," "property damage" or "personal injury" arising out of "products−completed operations hazard" only for the following business activities:

   **(1)** the sale, distribution, installation, maintenance, service, repair or removal of heating, ventilation, and/or air conditioning systems;

   **(2)** the misdelivery by the Insured of liquid fuel products if this policy provides products−completed operations coverage for misdelivery of liquid fuel products.

5. Exclusion **f.** under **Coverage A,** as replaced in **1.** above, and Exclusion **c.** under **Coverage B,** as added in **2.** above, do not apply to "bodily injury," "property damage" or "personal injury" arising out of the discharge, dispersal or release of liquid fuel products, soot or smoke at a customers premises, while an insured is performing operations at this customers premises.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

**Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

**Customer** means an entity who the Insured provides services to in the regular course of business and who is not an Insured under this policy.

**Fuel** as used in this endorsement does not include any waste or used petroleum products sold, stored, and/or transported without being re−refined, providing such re−refined waste or used petroleum products does not contain light ends or metallic, caustic, acidic, sulfur or waste products or any contaminants picked up during prior use.

85

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

0284524

CR 78 00 (Ed. 01 86)

Policy No. PAC  2-47-05-23  -08

## BUSINESSPRO CRIME COVERAGE PART
### DECLARATIONS PAGE

| NAMED INSURED:  PETERBOROUGH OIL CO., INC. | POLICY PERIOD:<br>09/30/98 to 09/30/99 |
|---|---|

The Crime Coverage Part consists of this Declarations Form, the Crime General Provisions Form and the Coverage Forms indicated as applicable.

## COVERAGE, LIMITS OF INSURANCE AND DEDUCTIBLE:

| Coverage Form(s) Forming Part of This Coverage Part | Limit of Insurance | Deductible Amount | Premium |
|---|---|---|---|
| FORM B - FORGERY | 50,000. | 5,000. | 72. |
| FORM C - THEFT, DISAPPEARANCE AND DESTRUCTION | | | |
| INSIDE | 76,000.* | 500. | 828. |
| OUTSIDE | 76,000.* | 500. | 33. |

* THIS LIMIT APPLIES ONLY AT
  665 N. MAIN ST., LEOMINSTER, MA -
  ALL OTHER LOCATIONS - $20,000.

ADDITIONAL INSURED  -
  PETERBOROUGH OIL CO.
  PROFIT SHARING PLAN

| | Total | $933. |
|---|---|---|

## PREMIUM

Premium for This Coverage Part:  $933.

Premium shown is payable:  $         at inception:
  $PER IL 7001

FORMS AND ENDORSEMENTS applicable to all Coverage Forms and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule CR 88 01 (01/86).

## CANCELLATION OF PRIOR INSURANCE:

acceptance of this Coverage Part, you give us notice cancelling prior Policy Bond Nos.
                                                                        , the
cellation to be effective at the time this Coverage Part becomes effective.

BUSINESSPRO (Reg. U.S. Pat. Off.)
78 00 (Ed. 01/86) PRO          (Page 1 of 1)

86

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

Document 14-9     Filed 02/25/2005     Page 1 of 20   (Ed. 01 86)

## BUSINESSPRO FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | | Date Added* or ST Date Deleted | Form Description |
|---|---|---|---|---|
| 1. | CR0003 | 01/86 | MA | FORGERY OR ALTERATION COVERAGE FORM |
| 2. | CR0004 | 10/90 | MA | THEFT, DISAPPEARANCE/DESTRUCTION COV FORM |
| 3. | CR1027 | 04/97 | MA | WELFARE & PENSION PLAN ERISA COMPLI |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |

* not at inception

BUSINESSPRO (Reg. U.S. Pat. Off.)

87

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CR 00 01
(Ed. 10 90)
COVERAGE FORM A – BLANKET

# EMPLOYEE DISHONESTY COVERAGE FORM

## A. COVERAGE

We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss.

**1. Covered Property:** "Money," "securities," and "property other than money and securities."

**2. Covered Cause of Loss:** "Employee dishonesty."

**3. Coverage Extension:**

**Employees Temporarily Outside Coverage Territory:** We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory General Condition for a period not more than 90 days.

## B. LIMIT OF INSURANCE

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

## C. DEDUCTIBLE

**1.** We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**2.** You must:

**a.** Give us notice as soon as possible of any loss of the type insured under this Coverage Form even though it falls entirely within the Deductible Amount.

**b.** Upon our request, give us a statement describing the loss.

## D. ADDITIONAL EXCLUSIONS, CONDITION AND DEFINITIONS: In addition to the provisions in the Crime General Provisions Form, this Coverage Form is subject to the following:

**1. Additional Exclusions:** We will not pay for loss as specified below:

**a. Employee Cancelled Under Prior Insurance:** loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

**b. Inventory Shortages:** loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** an inventory computation; or

**(2)** a profit and loss computation.

**2. Additional Condition**

**Cancellation As To Any Employee:** This insurance is cancelled as to any "employee":

**a.** Immediately upon discovery by:

**(1)** you; or

**(2)** any of your partners, officers or directors not in collusion with the "employee";

of any dishonest act committed by that "employee" whether before or after becoming employed by you.

**b.** On the date specified in a notice mailed to you. That date will be at least 30 days after the date of mailing.

The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

**3. Additional Definitions**

**a. "Employee Dishonesty"** in paragraph A.2. means only dishonest acts committed by an "employee," whether identified or not, acting alone or in

CR 00 01 (Ed. 10/90) XS                    (Page 1 of 2)

88

collusion with other persons, except you or a partner, with the manifest intent to:

**(1)** cause you to sustain loss; and also

**(2)** obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:

**(a)** the "employee"; or

**(b)** any person or organization intended by the "employee" to receive that benefit.

**b.** **"Occurrence"** means all loss caused by, or involving, one or more "employees," whether the result of a single act or series of acts.

89

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

Case 04-04-0353-FDS    Document 14-9    Filed 02/25/2005    Page 10 of 20

CR 00 03
(Ed. 01 86)
Coverage Form B

# FORGERY OR ALTERATION COVERAGE FORM

## A. COVERAGE

We will pay for loss involving Covered Instruments resulting directly from the Covered Causes of Loss.

1. **COVERED INSTRUMENTS:** Checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

   a. Made or drawn by or drawn upon you;

   b. Made or drawn by one acting as your agent; or that are purported to have been so made or drawn.

2. **COVERED CAUSES OF LOSS:** Forgery or alteration of, on or in any Covered Instrument.

3. **COVERAGE EXTENSION**

   **Legal Expenses:** If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount we will pay under this extension is in addition to the Limit of Insurance applicable to this insurance.

## B. LIMIT OF INSURANCE

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

## C. DEDUCTIBLE

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. This provision does not apply to legal expenses paid under the Coverage Extension.

## D. ADDITIONAL EXCLUSION, CONDITIONS AND DEFINITION

In addition to the provisions in the Crime General Provisions Form, this Coverage Form is also subject to the following:

1. **Additional Exclusion:**

   **Acts of Employees, Directors, or Trustees:** We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees," directors, or trustees:

   a. Whether acting alone or in collusion with other persons;

      or

   b. Whether while performing services for you or otherwise.

2. **Additional Conditions:**

   a. **Facsimile Signatures:** We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

   b. **General Amendment:** As respects this Coverage Form, the words Covered Property in the Crime General Provisions Form means Covered Instruments.

   c. **Proof of Loss:** You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

   d. **Territory:** We will cover loss you sustain anywhere in the world.

      The Territory General Condition does not apply to this Coverage Form.

3. **Additional Definition:**

   **"Occurrence"** means all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

90

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CR 00 04
(Ed. 10 90)
Coverage Form C

# THEFT, DISAPPEARANCE AND DESTRUCTION COVERAGE FORM

**A. COVERAGE** - We will pay for loss of Covered Property resulting directly from the Covered Causes of Loss.

1. **Section 1. - Inside The Premises**

   a. **Covered Property:** "Money" and "securities" inside the "premises" or a "banking premises."

   b. **Covered Causes of Loss**

      (1) "Theft"

      (2) Disappearance

      (3) Destruction

   c. **Coverage Extentions**

      (1) **Containers of Covered Property:** We will pay for loss of, and loss from damage to, a locked safe, vault, cash register, cash box or cash drawer located in the "premises" resulting directly from an actual or attempted:

         (a) "theft" of; or

         (b) unlawful entry into

      those containers.

      (2) **Premises Damage:** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of Covered Property if you are the owner of the "premises" or are liable for damage to it.

2. **Section 2. - Outside the Premises**

   a. **Covered Property:** "Money" and "securities" outside the "premises" in the care and custody of a "messenger."

   b. **Covered Causes of Loss**

      (1) "Theft"

      (2) Disappearance

      (3) Destruction

   c. **Coverage Extension**

      **Conveyance of Property By Armored Motor Vehicle Company:** We will pay for loss of Covered Property resulting directly from the Covered Causes of Loss while outside the "premises" in the care and custody of an armored motor vehicle company.

      But, we will pay only for the amount of loss that you cannot recover:

      (1) under your contract with the armored motor vehicle company; and

      (2) from any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**B. LIMIT OF INSURANCE**

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the **Declarations.**

**C. DEDUCTIBLE**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the **Declarations.** We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. In the event more than one Deductible Amount could apply to the loss, only the highest Deductible Amount may be applied.

**D. ADDITIONAL EXCLUSIONS, CONDITIONS AND DEFINITIONS:** In addition to the provisions in the Crime General Provisions, this Coverage Form is subject to the following:

1. **Additional Exclusions:** We will not pay for loss as specified below:

Copyright Insurance Services Office, Inc., 1984, 1989

GREAT AMERICAN INSURANCE COMPANIES®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CR 10 27
(Ed. 04 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WELFARE AND PENSION PLAN ERISA COMPLIANCE
## (LOSS SUSTAINED FORM)

Provision **1.** of this endorsement applies to the Crime General Provisions (Loss Sustained Form) and all Crime Coverage Forms forming part of the Policy. The other provisions of this endorsement apply only to the **EMPLOYEE DISHONESTY COVERAGE FORM A – BLANKET.**

### PROVISIONS

In compliance with certain provisions of the Employee Retirement Income Security Act (ERISA):

1. "Employee" also includes any natural person who is:

   a. a trustee, an officer, employee, administrator or a manager, except an administrator or a manager who is an independent contractor, of any Employee Welfare or Pension Benefit Plan (hereafter called Plan) insured under this insurance; and

   b. your director or trustee while that person is handling funds or other property of any Plan insured under this insurance.

2. If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for the **Employee Dishonesty Coverage Form** that is sufficient to provide an amount of insurance for each Plan that is at least equal to that required if each Plan were separately insured.

3. If the Insured first named in the Declarations is an entity other than a Plan, any payment we make to that Insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.

4. If two or more Plans are insured under this insurance, any payment we make for loss:

   a. sustained by two or more Plans; or

   b. of commingled funds or other property of two or more Plans;

   that arises out of one "occurrence", is to be shared by each Plan sustaining loss in the proportion that the amount of insurance required for each such Plan under ERISA provisions bears to the total of those amounts.

5. The **DEDUCTIBLE** provision of the **Employee Dishonesty Coverage Form** does not apply to loss sustained by any Plan subject to ERISA which is insured under this insurance.

•

Copyright, The Surety Association of America, 1996

97

GREAT AMERICAN INSURANCE COMPANIES®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CR 10 00
(Ed. 04 97)

# CRIME GENERAL PROVISIONS
# (LOSS SUSTAINED FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Words and phrases in quotation marks are defined in the policy.

Unless stated otherwise in any Crime Coverage Form, Declarations or endorsement, the following General Exclusions, General Conditions and General Definitions apply to all Crime Coverage Forms forming part of this policy.

## A. GENERAL EXCLUSIONS

We will not pay for loss as specified below:

1. **Acts Committed by You or Your Partners:** Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

2. **Governmental Action:** Loss resulting from seizure or destruction of property by order of governmental authority.

3. **Indirect Loss:** Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

   a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

   b. Payment of damages of any type for which you are legally liable. But we will pay compensatory damages arising directly from a loss covered under this insurance.

   c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

4. **Legal Expenses:** Expenses related to any legal action.

5. **Nuclear:** Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

6. **War and Similar Actions:** Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

## B. GENERAL CONDITIONS

1. **Concealment, Misrepresentation or Fraud:** This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

   a. this insurance;

   b. the Covered Property;

   c. your interest in the Covered Property; or

   d. a claim under this insurance.

Copyright, The Surety Association of America, 1996
Copyright, Insurance Services Office, Inc., 1996
(Page 1 of 5)

CR 10 00 (Ed. 04 97) XS

93

**2. Consolidation - Merger:** If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity:

   **a.** any additional persons become "employees"; or

   **b.** you acquire the use and control of any additional "premises";

any insurance afforded for "employees" or "premises" also applies to those additional "employees" and "premises," for a period of 60 days after the effective date of such consolidation, merger, or purchase or acquisition of assets or liabilities.

You must give us written notice within this 60 day period and obtain our written consent to extend this insurance to such additional "employees" or "premises." Upon obtaining our written consent, you must pay us an additional premium.

If you fail to notify us in writing within this 60 day period, then this insurance shall automatically terminate as to such additional "employees" or "premises."

**3. Coverage Extensions:**   Unless stated otherwise in the Coverage Form, our liability under any Coverage Extension is part of, not in addition to, the Limit of Insurance applying to the Coverage or Coverage Section.

**4. Duties in the Event of Loss:** After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property you must:

   **a.** Notify us as soon as possible.

   **b.** Submit to examination under oath at our request and give us a signed statement of your answers.

   **c.** Give us a detailed, sworn proof of loss within 120 days.

   **d.** Cooperate with us in the investigation and settlement of any claim.

**5. Extended Period to Discover Loss:** We will pay only for covered loss discovered no later than 1 year from the end of the Policy Period.

**6. Joint Insured**

   **a.** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

   **b.** If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

   **c.** An "employee" of any Insured is considered to be an "employee" of every Insured.

   **d.** If this insurance or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

   **e.** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**7. Legal Action Against Us:**   You may not bring any legal action against us involving loss:

   **a.** unless you have complied with all the terms of this insurance; and

   **b.** until 90 days after you have filed proof of loss with us; and

   **c.** unless brought within 2 years from the date you discover the loss.

**8. Liberalization:** If we adopt any revision that would broaden the coverage under this insurance without additional premium

Copyright, The Surety Association of America, 1996
Copyright, Insurance Services Office, Inc., 1996

94

within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this insurance.

**9. Loss Covered Under More Than One Coverage of This Insurance:** If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

    **a.** the actual amount of loss; or

    **b.** the sum of the Limits of Insurance applicable to those coverages.

**10. Loss Sustained During Prior Insurance**

    **a.** If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

        **(1)** this insurance became effective at the time of cancellation or termination of the prior insurance; and

        **(2)** this loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

    **b.** The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

        **(1)** this insurance as of its effective date; or

        **(2)** the prior insurance had it remained in effect.

**11. Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate:** If any loss is covered:

    **a.** partly by this insurance; and

    **b.** partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**12. Other Insurance:** This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any Deductible Amount, not recoverable or recovered under the other insurance or indemnity. However, this insurance will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the Declarations.

**13. Ownership of Property; Interests Covered:** The property covered under this insurance is limited to property:

    **a.** that you own or hold; or

    **b.** for which you are legally liable.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

**14. Policy Period:**

    **a.** The Policy Period is shown in the Declarations.

    **b.** Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

**15. Records:** You must keep records of all Covered Property so we can verify the amount of any loss.

Copyright, The Surety Association of America, 1996
Copyright, Insurance Services Office, Inc., 1996
(Page 3 of 5)

95

**16. Recoveries:**

   **a.** Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

      **(1)** to you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

      **(2)** then to us, until we are reimbursed for the settlement made;

      **(3)** then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

   **b.** Recoveries do not include any recovery:

      **(1)** from insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

      **(2)** of original "securities" after duplicates of them have been issued.

**17. Territory:** This insurance covers only acts committed or events occurring within the United States of America, U.S. Virgin Islands, Puerto Rico, Canal Zone, or Canada.

**18. Transfer of Your Rights of Recovery Against Others to Us:** You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**19. Valuation--Settlement:**

   **a.** Subject to the applicable Limit of Insurance provision we will pay for:

      **(1)** Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

         **(a)** at face value in the "money" issued by that country; or

         **(b)** in the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

      **(2)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

         **(a)** pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

         **(b)** pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities." However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

           **i.** value of the "securities" at the close of business on the day the loss was discovered; or

           **ii.** Limit of Insurance.

      **(3)** Loss of, loss from damage to, "property other than money and securities" or loss from damage to the "premises" for not more than the:

         **(a)** actual cash value of the property on the day the loss was discovered;

         **(b)** cost of repairing the property or "premises"; or

Copyright, The Surety Association of America, 1996
Copyright, Insurance Services Office, Inc., 1996

(c) cost of replacing the property with property of like kind and quality.

We may, at our option, pay the actual cash value of the property or repair or replace it.

If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

b. We may, at our option, pay for loss of, or loss from damage to, property other than "money";

(1) in the "money" of the country in which the loss occurred; or

(2) in the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

c. Any property that we pay for or replace becomes our property.

## C. GENERAL DEFINITIONS

1. "Employee" means:

a. Any natural person:

(1) while in your service (and for 30 days after termination of service); and

(2) whom you compensate directly by salary, wages or commissions; and

(3) whom you have the right to direct and control while performing services for you; or

b. Any natural person who is furnished to you to:

(1) substitute for a permanent "employee" on leave; or

(2) meet seasonal or short-term workload conditions;

while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the "premises."

But "employee" does not mean any:

(1) agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) director or trustee except while performing acts coming within the scope of the usual duties of an employee.

2. "Money" means:

a. currency, coins and bank notes in current use and having a face value; and

b. travelers checks, register checks and money orders held for sale to the public.

3. "Property Other Than Money and Securities" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Crime Coverage Form as Property Not Covered.

4. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

a. tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use and

b. evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money."

Copyright, The Surety Association of America, 1996
Copyright, Insurance Services Office, Inc., 1996
(Page 5 of 5)

97

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 76 58
(Ed. 10 88)

# BUSINESS ELECTRONIC SYSTEMS
# AND TELECOMMUNICATIONS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F - DEFINITIONS.**

## A.  COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1.  **Covered Property,** as used in this Coverage Form, means:

    a.  **Equipment** – meaning your electronic data processing, word processing and telecommunications equipment, including their component parts;

    b.  **Data, Programs and Media**

        (1)  Data is information which has been converted to a form usable in data or word processing equipment. Data includes computer programs;

        (2)  Media is the material on which data is recorded.

    c.  Similar property of others in your care, custody or control.

2.  **Property Not Covered**

    Covered Property does not include:

    a.  Property you loan, rent or lease to others while it is away from your premises;

    b.  Data or Media which cannot be replaced with other of the same kind or quality, unless it is specifically described and scheduled with a separate Limit of Insurance in the Declarations.

    c.  Satellites, microwave towers and dishes, earth stations, telephone switching stations or similar property.

    d.  Accounts, bills, evidences of debt, valuable papers, abstracts, records, deeds, manuscripts or other documents, unless converted to Data, and then only in that form.

    e.  Your stock in trade.

3.  **Covered Causes of Loss**

    Covered Causes of Loss means Risks Of Direct Physical "Loss" to Covered Property except those causes of "loss" listed in the Exclusions.

98

**4. Additional Coverages**

    **a. Extra Expense**

        **(1)** We will pay the actual and necessary Extra Expense you sustain due to direct physical loss of or damage to:

            **(a)** Electronic data processing equipment, word processing equipment, telecommunications equipment, or data and media, which you own, lease, or is under your control and is at your premises or in transit;

            **(b)** The building in which the property described in (a) is located, provided the building is damaged to an extent which prevents access to the property;

            **(c)** The air conditioning system that specifically services your data or word processing operation;

            **(d)** The electrical or telecommunication system that specifically services your data or word processing operation, provided the damage to the system occurs inside, or within 100 feet of, the building housing your data or word processing operation.

        **(2)** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property:

            **(a)** To avoid or minimize the suspension of business and to continue "operations":

                **(i)** At the described premises; or

                **(ii)** At replacement premises or at temporary locations, including:

                    . Relocation expenses; and

                    . Costs to equip and operate the replacement or temporary locations.

            **(b)** To minimize the suspension of business if you cannot continue "operations"; or

            **(c)** **(i)** To repair or replace any property; or

                **(ii)** To research, replace or restore the lost information on damaged valuable papers and records;

            to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage.

        **(3)** The most we will pay for "loss" in any one occurrence under this Additional Coverage is the applicable Limit of Insurance shown in the Declarations.

    **b. Newly Acquired Equipment**

        We will pay for "loss" to Newly Acquired Equipment at each location listed in the Declarations, provided the value of the equipment is reported to us within 60 days from the time you acquired it. If it is not reported within that time, or if the policy period ends within that time, coverage will cease. We will compute the additional premium due from the date you acquire the equipment.

        The most we will pay for "loss" in any one occurrence under this Additional Coverage is 25% of the highest Limit of Insurance for any location shown in the Declarations, for coverage A.1.a. equipment, up to a maximum of $250,000.

**c.  Newly Acquired Locations**

We will pay for "loss" to Covered Property at any new location which you acquire, provided the new location is reported to us within 60 days from the time you acquired it. If it is not reported within that time, or if the policy period ends within that time, coverage will cease. We will compute any change in your premium from the date you occupy the new location.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is the applicable Limit of Insurance shown in the Declarations.

**d.  Temporary Locations**

We will pay for "loss" to Covered Property while at temporary locations but only for the first 60 days that the property is located there, and not beyond the end of the policy period.

**e.  Debris Removal**

We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss.

The most we will pay for "loss" under this Additional Coverage is 25% of the sum of the applicable location limits for Equipment and Data, Programs, Media Coverages up to a maximum of $100,000.

This Additional Coverage doesn't apply to the cost to:

(1)  Extract "pollutants" from land or water; or

(2)  Remove, restore or replace polluted land or water.

**f.  Pollutant Clean Up and Removal**

We will pay your necessary expense to extract "pollutants" from land or water at the premises described in the Declarations, if the release, discharge or dispersal of the "pollutants" results from a Covered Cause of Loss to Covered Property that occurs during the policy period. Your expenses will be paid only if they are reported to us within 180 days of the earlier of:

(1)  The date of the "loss"; or

(2)  The end of the policy period.

The most we will pay under this Additional Coverage is 10% of the sum of the applicable location limits for Equipment and Data, Programs, Media Coverages, up to a maximum of $10,000, for the sum of all such expenses for each separate 12 month policy period.

**g.  Cost of Preparing a Statement of Loss**

We will pay the cost of preparing a statement of loss or any other exhibits required in connection with any claim under this Coverage Form.

The most we will pay for the cost of preparing a statement of loss or other exhibits under this Additional Coverage is $1,000.

0284524

**h. Duplicate Data**

We will pay for your "loss" of duplicate data stored at locations not listed on the Declarations. The most we will pay for "loss" under this Additional Coverage in any one occurrence is 25% of the highest Data, Programs, Media location limit up to a maximum of $50,000.

**i. Protective Equipment**

We will pay your necessary expenses to:

(1) Repair or replace (in excess of any amount covered by other insurance);

(2) Recharge:

Your fire protection equipment that is used exclusively to protect the Covered Property.

We will pay if the damage or discharge is the result of a response to a fire, a false alarm, or another Covered Cause of Loss. But, we won't pay for discharge which occurs during installation, repair or recharge. Nor will we pay for gradual leakage from the system.

The most we will pay under this Additional Coverage in any one occurrence is $25,000.

Except for Additional Coverage d, these Additional Coverages are separate insurance.

## B. EXCLUSIONS

1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

   **a. Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

   **b. Nuclear Hazard**

   (1) Any weapon employing atomic fission of fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

   **c. War and Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**d. Earth Movement**

(1) Any earth movement such as earthquake, landslide, or earth sinking, rising or shifting. But if loss or damage by fire, theft, or explosion results, we will pay for that resulting "loss."

(2) Volcanic erruption, explosion or effusion. But if "loss" by fire or volcanic action results, we will pay for that resulting "loss."

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by :

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical "loss" to the described property.

**e. Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up from a sewer or drain; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if "loss" by fire, explosion, theft or sprinkler leakage results, we will pay for that resulting "loss."

2. We will not pay for a "loss" caused by or resulting from any of the following:

a. Dishonest acts by you, your partners, officers or trustees, or your or their agents;

b. Delay, loss of market or loss of income;

c. The enforcement of any law which regulates the construction, repair or demolition of buildings or other structures;

d. Any change in, or interruption of:

1. power supply; or

102

0284524

**2.   telecommunications service**

if the change originates more than 100 feet away from the premises containing the Covered Property (equipment). But, if a loss or damage by fire, explosion or theft results, we will pay for that resulting "loss."

In addition to the above, we will not pay for any Extra Expense you incur due to:

**e.**   Programming errors or incorrect machine instructions;

**f.**   Interference by strikers or other persons with repairs to damaged property, or with resumption of normal business "operations";

**g.**   Mechanical or machinery breakdown of any property not named in the Extra Expense Additional Coverage;

**h.**   The suspension, lapse or cancellation of any lease, license or contract beyond the "period of restoration";

**i.**   Any other consequential "loss."

**3.**   We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

**a.**   Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the "loss."

**b.**   Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.**   Faulty, inadequate or defective:

(1)   Planning, zoning, development, surveying, siting;

(2)   Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3)   Materials used in repair, construction, renovation or remodeling; or

(4)   Maintenance;

of part or all of any property wherever located.

**d.**   Wear and tear or gradual deterioration.

## C.   LIMITS OF INSURANCE

Except for the Additional Coverages b,c,e,f,g,h and i, the most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations. The Limits of Insurance for Additional Coverages b,c,e,f,g,h and i, are stated in those Additional Coverages.

## D.   DEDUCTIBLE

**1.**   We will pay only the amount of the adjusted "loss" in excess of the applicable Deductible, up to the applicable Limit of Insurance.

**2.**   The **Breakdown** Deductible applies to losses resulting from:

**a.**   Mechanical failure, faulty construction or error in design of the Covered Property;

**b.** Short circuit, blow-out or other electric or magnetic disturbance, other than lightning, within electrical equipment, apparatus or devices;

**c.** Any repairing, servicing or processing operation;

**d.** Damage to Data or Media when data processing equipment or word processing equipment breaks down or malfunctions while Data or Media is being run through the system.

**3.** The All Other "Loss" Deductible applies to all other losses under this Coverage Form.

## E.  ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

**1.  Coverage Territory**

We cover Covered Property in transit and at:

**a.** Locations shown in the Declarations;

**b.** Newly acquired locations and temporary locations as provided in the Additional Coverages for Newly Acquired Locations and Temporary Locations;

all while in:

**c.** The United States of America;

**d.** Canada;

but we do not cover any property in transit to or from Hawaii.

**2.  Valuation**

The Valuation General Condition is replaced by the following:

**a.  Equipment**

We will adjust a "loss" to Equipment on the basis of "replacement cost." The most we will pay is:

**(1)** The amount necessary to repair the equipment; or

**(2)** The amount necessary to replace the equipment with material of the same kind or quality; or

**(3)** The applicable Limit of Insurance;

whichever is less.

**b.  Data**

**(1)** Specified Data will be valued at the agreed value per item shown in the Declarations;

**(2)** Data (including Programs), when insured on a combined limit basis with Media on the Declarations, will be the actual cost of replacing the Data. If it is not replaced or reproduced, we will pay the cost of the blank Media.

**0284524**

   c.  **Media**

      The value of the Media will be the cost to replace the Media with material of the same kind or quality.

**3. Our Options**

If we notify you in writing within thirty (30) days after we receive your signed, sworn statement of loss, we may take all or part of the damaged property at a value that we will agree upon with you. If we choose, we may also repair the damaged property, or replace it with similar property.

**F.  DEFINITIONS**

  **1.**  **"Loss"** means accidental loss or damage.

  **2.**  **"Operations"** means your business activities occurring at the described premises.

  **3.**  **"Period of Restoration"** means the period of time that:

      **a.**  Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

      **b.**  Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

      **"Period of Restoration"** does not include any increased period required due to the enforcement of any law that regulates the construction, use or repair, or requires the tearing down, of any property.

      The expiration date of this policy will not cut short the "period of restoration."

  **4.**  **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

  **5.**  **"Replacement Cost"** means the cost to repair or replace the covered property damaged or lost without deduction for depreciation. But, if you choose not to repair or replace the item, we will pay only the actual cash value of the item, or its repair, with proper deduction for depreciation.

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 00 66
(Ed. 06 95)

# ACCOUNTS RECEIVABLE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION E – DEFINITIONS.

## A. COVERAGE

1. We will pay:

   a. all amounts due from your customers that you are unable to collect;

   b. interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

   c. collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

   d. other reasonable expenses that you incur to reestablish your records of accounts receivable;

   that results from Covered Causes of Loss to your records of accounts receivable.

2. Property Not Covered

   Coverage does not apply to:

   a. records of accounts receivable in storage away from the "premises" shown in the Declarations; or

   b. contraband, or property in the course of illegal transportation or trade.

3. Covered Causes of Loss

   Covered Causes of Loss means **Risks of Direct Physical "Loss"** to your records of accounts receivable except those causes of "loss" listed in the Exclusions.

4. Additional Coverage - Collapse

   We will pay for direct "loss" caused by or resulting from risks of direct physical "loss" involving collapse of all or part of a building or structure caused by one or more of the following:

   a. fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equi pment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; all only as insured against in this Coverage Form;

   b. hidden decay;

   c. hidden insect or vermin damage;

   d. weight of people or personal property;

   e. weight of rain that collects on a roof;

   f. use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   This Additional Coverage does not increase the Limits of Insurance provided in this Coverage Form.

Copyright, Insurance Services Office, Inc., 1994

CM 00 66 (Ed. 06/95) XS
(Page 1 of 4)

**5. Coverage Extension**

**Removal**

If you give us written notice within 10 days of removal of your records of accounts receivable because of imminent danger of "loss," we will pay for "loss" while they are:

**a.** at a safe place away from your "premises"; or

**b.** being taken to and returned from that place.

This Coverage Extension is included within the Limit of Insurance applicable to the "premises" from which the records of accounts receivable are removed.

**B. EXCLUSIONS**

**1.** We will not pay for "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

**a. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

**b. Nuclear Hazard**

**(1)** any weapon employing atomic fission or fusion; or

**(2)** nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

**c. War and Military Action**

**(1)** war, including undeclared or civil war;

**(2)** warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for a "loss" caused by or resulting from any of the following:

**a.** Delay, loss of use, loss of market or any other consequential loss.

**b.** Dishonest or criminal act committed by:

**(1)** you, any of your partners, employees, directors, trustees, or authorized representatives;

**(2)** anyone else with an interest in the property, or their employees or authorized representatives; or

**(3)** anyone else to whom the property is entrusted for any purpose.

This exclusion applies whether or not such:

**(1)** persons are acting alone or in collusion with other persons; or

**(2)** acts occur during the hours of employment.

This exclusion does not apply to:

**(1)** Covered Property that is entrusted to others who are carriers for hire; or

**(2)** acts of destruction by your employees. But theft by employees is not covered.

Copyright, Insurance Services Office, Inc., 1994

c. Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

d. bookkeeping, accounting or billing errors or omissions.

e. Electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

(1) programming errors or faulty machine instructions;

(2) faulty installation or maintenance of data processing equipment or component parts;

(3) an occurrence that took place more than 100 feet from your "premises"; or

(4) interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises."

But we will pay for direct "loss" caused by lightning.

f. Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

g. Unauthorized instructions to transfer property to any person or to any place.

3. We will not pay for "loss" that requires any audit of records or any inventory computation to prove its factual existence.

4. We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the "loss."

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) materials used in repair, construction, renovation or remodeling; or

(4) maintenance;

of part or all of any property wherever located.

d. Collapse except as provided in the Additional Coverage – Collapse section of this Coverage Form.

C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

D. ADDITIONAL CONDITIONS

1. Determination of Receivables

General Condition E. Valuation in the Commercial Inland Marine Conditions is replaced by the following:

a. If you cannot accurately establish the amount of accounts receivable outstanding as of the time of "loss," the following method will be used:

(1) determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the "loss" occurs; and

108

(2) adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the "loss" occurred or for any demonstrated variance from the average for that month.

b. The following will be deducted from the total amount of accounts receivable, however that amount is established:

(1) the amount of the accounts for which there is no "loss";

(2) the amount of the accounts that you are able to reestablish or collect; and

(3) an amount to allow for probable bad debts that you are normally unable to collect; and

(4) all unearned interest and service charges.

2. **Recoveries**

The following is added to Commercial Inland Marine Loss Condition I. **Recoveries:**

You will pay us the amount of all recoveries you receive for a "loss" paid by us. But any recoveries in excess of the amount we have paid belong to you.

3. The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

a. **Coverage Territory**

We cover records of accounts receivable:

(1) within your "premises"; and

(2) away from your "premises" while in transit or within premises of others if those premises are located or the transit is within:

(a) the United States of America;

(b) Puerto Rico; and

(c) Canada.

b. **Coinsurance**

All accounts receivable, except those in transit, must be insured for at least 80% of their total value as of the time of "loss" or you will incur a penalty:

The penalty is that we will pay only the proportion of any "loss" that the Limit of Insurance shown in the Declarations for Coverage Applicable at All Locations bears to 80% of the total value of all accounts receivable at all locations as of the time of "loss." This penalty will not apply to records of accounts receivable in transit, interest charges, excess collection expenses or expenses to reestablish your records of accounts receivable.

c. **Protection of Records**

Whenever you are not open for business, and except while you are actually using the records, you must keep all records of accounts receivable in receptacles that are described in the Declarations.

E. **DEFINITIONS**

1. **"Loss"** means accidental loss or damage.

2. **"Premises"** means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

Copyright, Insurance Services Office, Inc., 1994

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 00 67
(Ed. 06 95)

# VALUABLE PAPERS AND RECORDS COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION F - DEFINITIONS.

## A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1. **Covered Property,** as used in this Coverage Form, means "valuable papers and records" that are your property or property of others in your care, custody or control.

2. **Property Not Covered**

   Covered Property does not include:

   a. property not specifically declared and described in the Declarations if such property cannot be replaced with other property of like kind and quality;

   b. property held as samples or for delivery after sale;

   c. property in storage away from the "premises" shown in the Declarations; or

   d. contraband, or property in the course of illegal transportation or trade.

3. **Covered Causes of Loss**

   Covered Causes of Loss means **Risks of Direct Physical "Loss"** to Covered Property except those causes of "loss" listed in the Exclusions.

4. **Additional Coverage - Collapse**

   We will pay for direct "loss" caused by or resulting from risks of direct physical "loss" involving collapse of all or part of a building or structure caused by one or more of the following:

   a. fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; all only as insured against in this Coverage Form;

   b. hidden decay;

   c. hidden insect or vermin damage;

   d. weight of people or personal property;

   e. weight of rain that collects on a roof;

   f. use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   This Additional Coverage does not increase the Limits of Insurance provided in this Coverage Form.

5. **Coverage Extensions**

   a. **Removal**

      If you give us written notice within 10 days of removal of your "valuable papers and records" because of imminent danger of "loss," we will pay for "loss" while it is:

      (1) at a safe place away from your "premises"; or

      (2) being taken to and returned from that place.

Copyright, Insurance Services Office, Inc., 1994

This Coverage Extension is included within the Limits of Insurance applicable to the "premises" from which the Covered Property is removed.

**b. Away From Your Premises**

We will pay up to $5,000 for "loss" to Covered Property while it is away from your "premises."

But if a higher Limit of Insurance is specified in the Declarations, the higher limit will apply.

The limit for this Coverage Extension is additional insurance.

## B. EXCLUSIONS

1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

   **a. Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

   **b. Nuclear Hazard**

   (1) any weapon employing atomic fission or fusion; or

   (2) nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

   **c. War and Military Action**

   (1) war, including undeclared or civil war;

   (2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for a "loss" caused by or resulting from any of the following:

   **a.** Delay, loss of use, loss of market or any other consequential loss.

   **b.** Dishonest or criminal act committed by:

   (1) you, any of your partners, employees, directors, trustees, or authorized representatives;

   (2) anyone else with an interest in the property, or their employees or authorized representatives; or

   (3) anyone else to whom the property is entrusted for any purpose.

   This exclusion applies whether or not such:

   (1) persons are acting alone or in collusion with other persons; or

   (2) acts occur during the hours of employment.

   This exclusion does not apply to:

   (1) Covered Property that is entrusted to others who are carriers for hire; or

   (2) acts of destruction by your employees. But theft by employees is not covered.

   **c.** Errors or omissions in processing or copying.

Copyright, Insurance Services Office, Inc., 1994

But we will pay for direct "loss" caused by resulting fire or explosion if these causes of "loss" would be covered by this Coverage Form.

d. Electrical or magnetic injury, disturbance or erasure of electronic recordings.

But we will pay for direct "loss" caused by lightning.

e. Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

f. Unauthorized instructions to transfer property to any person or to any place.

3. We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the "loss."

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) materials used in repair, construction, renovation or remodeling; or

(4) maintenance;

of part or all of any property wherever located.

d. Collapse except as provided in the Additional Coverage – Collapse section of this Coverage Form.

e. Wear and tear, any quality in the property that causes it to damage or destroy itself, gradual deterioration; insects, vermin or rodents.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. DEDUCTIBLE

We will not pay for "loss" in any one occurrence until the amount of the adjusted "loss" before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. We will then pay the amount of the adjusted "loss" in excess of the Deductible, up to the applicable Limit of Insurance.

## E. ADDITIONAL CONDITIONS

1. **Valuation - Specifically Declared Items**

The following is added to Commercial Inland Marine General Condition **E. Valuation:**

The value of each item of property that is specifically declared and described in the Declarations is the applicable Limit of Insurance shown in the Declarations for that item.

2. **Recoveries**

The following is added to Commercial Inland Marine Loss Condition **I. Recoveries:**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. If so, your "loss" will be readjusted based on the amount you received for the property recovered, with allowance for recovery expenses incurred.

3. The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

Copyright, Insurance Services Office, Inc., 1994
(Page 3 of 4)

A 00 67 (Ed. 06/95) XS

112

**a. Coverage Territory**

We cover property:

**(1)** within your "premises"; and

**(2)** away from your "premises" while in transit or within premises of others if those premises are located or the transit is within:

   **(a)** the United States of America;

   **(b)** Puerto Rico; and

   **(c)** Canada.

**b. Protection of Records**

Whenever you are not open for business, and except while you are actually using the property, you must keep all "valuable papers and records" in receptacles that are described in the Declarations.

## F. DEFINITIONS

**1.** **"Loss"** means accidental loss or damage.

**2.** **"Valuable papers and records"** means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities," converted data, programs or instructions used in your data processing operations, including the materials on which the data is recorded.

**3.** **"Premises"** means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

**4.** **"Money"** means:

   **a.** currency, coins and bank notes whether or not in current use; and

   **b.** travelers checks, register checks and money orders held for sale to the public.

**5.** **"Securities"** means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

   **a.** tokens, tickets, revenue and other stamps whether or not in current use; and

   **b.** evidences of debt issued in connection with credit or charge cards, which cards are not of your own issue;

but does not include "money."

Copyright, Insurance Services Office, Inc., 1994

113

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation    Document 14-10    Filed 02/25/2005    Page 14 of 20
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 76 61
(Ed. 07 90)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EARTHQUAKE COVERAGE ENDORSEMENT

Your policy is amended as follows:

**A. COVERAGE**

   **1. Covered Causes Of Loss** include:

   **a.** Earthquake.

   **b.** Volcanic Eruption, meaning the eruption, explosion, or effusion of a volcano.

   All Earthquake shocks or Volcanic Eruptions that occur within any 168 hour period will constitute a single Earthquake or Volcanic Eruption. The expiration of this policy will not reduce the 168 hour period.

   **2. Limit of Insurance**
   (is shown only if it is different from the limit(s) for other Covered Causes of Loss). The most we will pay for loss caused by an Earthquake or Volcanic Eruption is the lesser of the limit shown below or the limit in the Declarations.

| Sublimits | Premises Location |
|---|---|
| $ 15,512,400 | |
| $ | |
| $ | |
| $ | |
| $ | On property at any other location not specifically identified above. |
| $ | In any one policy year. |

   **3. Deductible.** $ 25,000                    (If different from deductible
            or                           shown on the Declarations page).
   **Percentage Deductible.**      % of the value of the Covered Property at the location(s) where the loss or damage occurs, but not less than $

   Waiting Period      hours   (If different from waiting period deductible shown elsewhere on the policy).

   **a. Deductible:**

   As respects your claim for "loss" to Covered Property caused by Earthquake or Volcanic Eruption, we will pay the amount of the adjusted "loss" in excess of the applicable deductible up to the applicable Limit of Insurance.

114

b.   **Time Element Coverage Waiting Period:**

If your policy covers time element losses (such as loss of income, rental value or extra expense), we will pay for only the portion of the covered loss which exceeds the applicable waiting period.

## B.   EXCLUSIONS

1.   We will not pay for "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a.   **Ordinance or Law**

   The enforcement of any ordinance or law:

   (1) regulating the construction, use or repair of any property; or

   (2) requiring the tearing down of any property, including the cost of removing its debris.

   b.   **Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   c.   **Nuclear Hazard**

   Nuclear reaction or radiation, or radioactive contamination, however caused.

   d.   **War and Military Action**

   (1) war, including undeclared or civil war;

   (2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

2.   Under this extension of coverage, we will not pay for "loss" caused by or resulting from:

   a.   Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

   b.   Fire, explosion (other than volcanic explosion), tidal wave, tsunami, flood, surface water, water which backs up through sewers or drains, water below the surface of the ground (including that which flows, leaks or seeps on or into Covered Property), mudslide or mudflow, release of water impounded by a

dam, even if attributable to an Earthquake or Volcanic Eruption.

c.  Any Earthquake or Volcanic Eruption that begins before the inception of this insurance.

d.  Earth movement other than Earthquake, such as landslide or earth sinking, rising or shifting. But if loss or damage by another Covered Cause of Loss results, we will pay for that resulting loss.

e.  The cost to remove volcanic ash, dust or particulate matter that does not cause direct physical loss to Covered Property.

f.  **Utility Service Failure**

The failure of power or other utility service supplied to a covered location, however caused, if the failure occurs away from the covered locations.

3.  Special Exclusions: If your policy covers time element loss (such as loss of income, rental value, or extra expense).

We will not pay for:

(a) Any loss caused by or resulting from:

(1) damage or destruction of "finished stock"; or

(2) the time required to reproduce "finished stock."

This exclusion does not apply to extra expense coverage.

(b) Any increase of loss caused by or resulting from:

(1) delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(2) suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your business income during the "period of restoration."

(c) Any extra expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

(d) Any other consequential loss.

**Other Terms Remain The Same**

116

0284524

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation    Document 14-10    Filed 02/25/2005    Page 17 of 20    CM 76 62
580 WALNUT STREET, CINCINNATI, OHIO 45202                                                              (Ed. 07 90)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FLOOD COVERAGE ENDORSEMENT

Your policy is amended as follows:

**A.  COVERAGE**

Coverage added by this endorsement applies only to locations which are not within the
( X ) 100 year flood plain
(   ) 500 year (which includes the 100 year) flood plain
as determined by the Federal Emergency Management Agency.

1.  **Covered Causes Of Loss** include:

   a.  **Flood**

   Flood means a general and temporary condition of partial or complete inundation of normally dry land area from inland or tidal waters.

   b.  **Surface Water & Mudslide**

   (1) Surface water means the unusual and rapid accumulation of water above the ground surface.

   (2) Mudslide includes mudflow caused by surface water and is similar to a river of liquid and flowing mud on the surface of normally dry land area.

   c.  **Tsunami**

   Tsunami means a large wave caused by earthquake or volcanic eruption.

   d.  **Release of water** impounded by a dam.

2.  **Limit of Insurance**
   (is shown only if it is different from the limit(s) for other Covered Causes of Loss). The most we will pay for water damage from a Covered Cause in any one "loss" is the lesser of the limit shown below or the limit in the Declarations.

   | Sublimits | Premises Location |
   |---|---|
   | $ 15,512,400 | |
   | $ | |
   | $ | |
   | $ | On property at any other location not specifically identified above. |
   | $ | In any one policy year. |

3.  **Deductible** $ 25,000    (If different from deductible shown on the Declarations Page.)

   **Waiting Period**    Hours (If different from Waiting Period deductible shown elsewhere on the policy.)

117

a.  **Deductible:**

As respects your claim for "loss" to Covered Property caused by perils listed in paragraph 1. above, we will pay the amount of the adjusted "loss" in excess of the applicable deductible up to the applicable Limit of Insurance.

b.  **Time Element Coverage Waiting Period:**

If your policy covers time element losses (such as loss of income, rental value or extra expense), we will pay only for that portion of the covered loss which exceeds the applicable waiting period.

B.  **EXCLUSIONS**

1.  We will not pay for "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    a.  **Ordinance or Law**

        The enforcement of any ordinance or law:

        (1)  regulating the construction, use or repair of any property; or

        (2)  requiring the tearing down of any property, including the cost of removing its debris.

    b.  **Governmental Action**

        Seizure or destruction of property by order of governmental authority.

    c.  **Nuclear Hazard**

        Nuclear reaction or radiation, or radioactive contamination, however caused.

    d.  **War and Military Action**

        (1)  War, including undeclared or civil war;

        (2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

        (3)  Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

2.  Under this extension of coverage, we will not pay for "loss" caused by or resulting from:

a.  Any loss from a Covered Cause to Covered Property located within the (500 year*) flood plain, as determined by the Federal Emergency Management Agency.

   * If the parenthesis in Coverage A. above is ( X ), for 100 years, then paragraph 2.a. above is amended to (100 year) flood plain.

b.  Water which backs up through sewers or drains, water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks on or into Covered Property.

c.  Landslide

d.  The failure of power or other utility service supplied to a covered location, however caused, if the failure occurs away from the covered location.

**Special Exclusions:**  If your policy covers time element loss (such as loss of income, rental value, or extra expense).

We will not pay for:

a.  Any loss caused by or resulting from:

   (1)  damage or destruction of "finished stock"; or

   (2)  the time required to reproduce "finished stock."

   This exclusion does not apply to extra expense coverage.

b.  Any increase of loss caused by or resulting from:

   (1)  delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   (2)  suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your business income during the "period of restoration."

c.  Any extra expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

d.  Any other consequential loss.


**Other Terms Remain The Same**

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 00 01
(Ed. 06 95)

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. ABANDONMENT

There can be no abandonment of any property to us.

### B. APPRAISAL

If we and you disagree on the value of the property or the amount of "loss, " either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. pay its chosen appraiser; and

2. bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. DUTIES IN THE EVENT OF LOSS

You must see that the following are done in the event of "loss" to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the "loss." Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the "loss" occurred.

4. Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also if feasible, set the damaged property aside and in the best possible order for examination.

5. Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our consent.

6. Permit us to inspect the property and records proving "loss."

7. If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Promptly send us any legal papers or notices received concerning the "loss."

10. Cooperate with us in the investigation or settlement of the claim.

### D. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same "loss," we will not pay more than the actual amount of the "loss."

Copyright, Insurance Services Office, Inc., 1994
(Page 1 of 3)

170

## E. LOSS PAYMENT

We will pay or make good any "loss" covered under this Coverage Part within 30 days after:

1. we reach agreement with you;

2. the entry of final judgment; or

3. the filing of an appraisal award.

We will not be liable for any part of a "loss" that has been paid or made good by others.

## F. OTHER INSURANCE

If you have other insurance covering the same "loss" as the insurance under this Coverage Part, we will pay only the excess over what you should have received from the other insurance. We will pay the excess whether you can collect on the other insurance or not.

## G. PAIR, SETS OR PARTS

1. Pair or Set. In case of "loss" to any part of a pair or set we may:

   a. repair or replace any part to restore the pair or set to its value before the "loss"; or

   b. pay the difference between the value of the pair or set before and after the "loss."

2. Parts. In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

## H. PRIVILEGE TO ADJUST WITH OWNER

In the event of "loss" involving property of others in your care, custody or control, we have the right to :

1. Settle the "loss" with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.

2. Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

## I. RECOVERIES

Any recovery or salvage on a "loss" will accrue entirely to our benefit until the sum paid by us has been made up.

## J. REINSTATEMENT OF LIMIT AFTER LOSS

The Limit of Insurance will not be reduced by the payment of any claim, except for total "loss" of a scheduled item, in which event we will refund the unearned premium on that item.

## K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

## GENERAL CONDITIONS

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other Insured, at any time, concerning:

1. this Coverage Part;

2. the Covered Property;

3. your interest in the Covered Property; or

4. a claim under this Coverage Part.

## B. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

Copyright, Insurance Services Office, Inc., 1994

**1.** there has been full compliance with all the terms of this Coverage Part; and

**2.** the action is brought within 2 years after you first have knowledge of the "loss."

## C. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Coverage Property, will benefit from this insurance.

## D. POLICY PERIOD

We cover "loss" commencing during the policy period shown in the Declarations.

## E. VALUATION

The value of property will be the least of the following amounts:

**1.** the actual cash value of that property;

**2.** the cost of reasonably restoring that property to its condition immediately before "loss"; or

**3.** the cost of replacing that property with substantially identical property.

In the event of "loss," the value of property will be determined as of the time of "loss."

Copyright, Insurance Services Office, Inc., 1994

0284524

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 77 31
(Ed. 10 89)

# SPECIAL FLOATER COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F – Definitions.

## A. COVERAGE

We will pay for "Loss" to Covered Property from any of the Covered Causes of Loss.

1. **Covered Property,** as used in this Coverage Form, means scheduled articles described in the Declarations.

2. **Property Not Covered**

   Covered Property does not mean:

   a. accounts, bills, evidences of debt, money, notes, securities, valuable papers, or other documents;

   b. aircraft or watercraft;

   c. land motor vehicles designed for, and while operating upon, public roadways;

   d. bullion, gold, silver, platinum, or other precious alloys or metals, jewelry, watches, precious or semi-precious stones, furs, or fine arts;

   e. animals, birds, fish, insects and plants;

   f. contraband, or property in the course of illegal transporation or trade.

3. **Covered Causes of Loss**

   Covered Causes of Loss means Risks Of Direct Physical "Loss" to Covered Property except those causes of "Loss" listed in the Exclusions.

4. **Coverage Extensions**

   The coinsurance provision in this policy does not apply to the extensions of coverage.

   a. **Debris Removal**

      We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss.

CM 77 31 (Ed. 10 89) XS                                    (Page 1 of 5)

173

The most we will pay for "loss" under this Coverage Extension is 25% of the applicable Limit of Insurance for direct physical "loss" to Covered Property up to a maximum of $25,000.

The limit of Debris Removal is separate from the Limit of Insurance stated elsewhere in the policy.

This additional coverage doesn't apply to the cost to:

(1)   extract "pollutants" from land or water; or

(2)   remove, restore or replace polluted land or water.

**b.   Pollutant Clean Up and Removal**

We will pay your necessary expense to extract "pollutants" from land or water, if the release, discharge or dispersal of the "pollutants" results from a Covered Cause of Loss to Covered Property that occurs during the policy period. Your expenses will be paid only if they are reported to us within 180 days of the earlier of:

(1)   the date of the "loss"; or

(2)   the end of the policy period.

The most we will pay under this Coverage Extension is 10% of the applicable direct physical "loss" limits, up to a maximum of $1,000, for the sum of all such expenses for each separate 12 month policy period.

The limit of Pollutant Clean Up and Removal is separate from the Limit of Insurance stated elsewhere in the policy.

**c.   Additionally Acquired Property**

We will insure additional items similar to those scheduled, including equipment which you buy or lease "long term," but not beyond:

(1)   30 days; or

(2)   the end of the policy period;

whichever occurs first.

The most we will pay in a "loss" under this Coverage Extension is the lesser of:

(1)   10% of the policy loss limit; or

(2)   $10,000

You must report these items to us within thirty (30) days after you obtain them. Premium will be charged from the date of acquisition. If you fail to report new items within the thirty (30) day period coverage will end automatically at the earlier of:

(1)   30 days after the date you acquire the property; or

(2)   the end of the policy period.

124

## B. EXCLUSIONS

1.  We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

    **a.  Governmental Action**

    Seizure or destruction of property by order of governmental authority.

    But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

    **b.  Nuclear Hazard**

    (1)  Any weapon employing atomic fission or fusion; or

    (2)  nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

    **c.  War and Military Action**

    (1)  War, including undeclared or civil war;

    (2)  warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or authority using military personnel or other agents; or

    (3)  insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

    **d.  Earth Movement**

    (1)  Any earth movement such as earthquake, landslide, mine subsidence or earth sinking, rising, shifting, expanding or contracting. But if loss or damage by fire, theft, or explosion results, we will pay for that resulting "loss."

    (2)  Volcanic eruption, explosion or effusion. But if "loss" by fire or volcanic action results, we will pay for that resulting "loss."

    Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

    (a)  airborne volcanic blast or airborne shock waves;

    (b)  ash, dust or particulate matter; or

    (c)  lava flow.

    All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

    Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical "loss" to the described property.

**e. Water**

    **(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

    **(2)** mudslide or mudflow;

    **(3)** water that backs up from a sewer or drain; or

    **(4)** water under the ground surface pressing on, or flowing or seeping through:

        **(a)** foundations, walls, floors or paved surfaces;

        **(b)** basements, whether paved or not; or

        **(c)** doors, windows or other openings.

But if "loss" by fire, explosion, theft or sprinkler leakage results, we will pay for that resulting "loss."

**2.** We will not pay for a "loss" caused by or resulting from any of the following:

  **a.** Delay, loss of use, loss of market or any other consequential loss.

  **b.** Dishonest acts by:

    **(1)** you, your employees or authorized representatives;

    **(2)** anyone else with an interest in the property, or their employees or authorized representatives;

    **(3)** anyone else (other than a carrier for hire) to whom you entrust the property.

This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

  **c.** Unexplained loss, mysterious disappearance or shortage found upon taking inventory.

  **d.** Artificially generated current creating a short circuit or other electric disturbance within Covered Property. But, we will pay for "loss" caused by resulting fire or explosion.

  **e.** Processing or any work upon property covered. But, we will pay for "loss" caused by resulting fire or explosion.

  **f.** Contamination, leakage, breakage, denting, bending, marring, or scratching, unless directly caused by fire, lightning, windstorm, hail, theft or attempted theft, riot, vandalism or collision, upset or overturn of a conveyance.

**3.** We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

  **a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the "loss."

   **b.** Gradual deterioration, hidden or latent defects, any quality in the property that causes it to damage or destroy itself, wear and tear, depreciation, corrosion, rust, dampness, cold or heat, insects, vermin or rodents.

   **c.** Mechanical breakdown or failure of Covered Property.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. DEDUCTIBLE

We will pay the amount of the adjusted "loss" in any one occurrence in excess of the Deductible amount shown in the Declarations, up to the applicable Limit of Insurance.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and Common Policy Conditions:

   **1. Coverage Territory**

      We cover property within:

      **a.** the states of the United States (excluding Alaska);

      **b.** Canada.

   **2. Coinsurance**

      All Covered Property must be insured for at least 80% of its total value as of the time of "loss" or you will incur a penalty.

      The penalty is that we will pay only the proportion of any "loss" that the Limit of Insurance shown in the Declarations for Covered Property bears to 80% of the total value of Covered Property as of the time of "loss."

## F. DEFINITIONS

"**Long Term**" means a lease of 12 or more consecutive months.

"**Loss**" means accidental loss or damage.

"**Pollutant**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

127

GREAT AMERICAN INSURANCE COMPANIES ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CM 79 08
(Ed. 04 98)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF YEAR 2000 AND OTHER DATE RELATED LOSSES

This endorsement modifies insurance provided under the following:

BUSINESS ELECTRONIC SYSTEMS AND TELECOMMUNICATIONS COVERAGE FORM

A. We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

1. The failure, malfunction or inadequacy of:

   a. any of the following, whether belonging to any Insured or to others:

      (1) computer hardware, including microprocessors;

      (2) computer application software;

      (3) computer operating systems and related software;

      (4) computer networks;

      (5) microprocessors (computer chips) not part of any computer systems; or

      (6) any other computerized or electronic equipment or components; or

   b. any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of their items listed in Paragraph A.1.a. of this endorsement;

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A.1. of this endorsement.

B. If an excluded Cause of Loss as described in Paragraph A. of this endorsement results in one of these specific causes of loss:

1. fire;

2. lightning;

3. explosion;

4. smoke;

5. aircraft or vehicles;

6. falling objects;

7. "water damage"; or

8. theft;

then we will pay only for the loss ("loss") or damage caused by such specific cause of loss.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

128

0284524

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 77 97
(Ed. 05 93)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AUTOMATIC FILL - FAILURE TO SUPPLY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance applies to "bodily injury" or "property damage" resulting from your failure to keep a person or organization with fuel oil or liquified petroleum gas in accordance with an agreement by you to do so.

This insurance does not apply to "bodily injury" or "property damage" resulting from:

* Your inability to furnish fuel oil or liquified petroleum gas in quantities sufficient to satisfy the demand or need therefore due to curtailment, for any reason, or supplies of such products available to you.

* Your intentional failure to furnish fuel oil or liquified petroleum gas to any person or organization in accordance with an agreement to do so, if such intentional failure results from a program instituted by you for the reduction or redistribution of supplies of fuel oil or liquified petroleum gas.

Definition:

**Agreement** – the term agreement, as used in this endorsement, shall mean an agreement, either written or oral, between the Insured and client, that was entered into prior to any claim.

129

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*Kom Holley Harrell*
Secretary

*Carl H. Lindner III*
President

Copyright, Insurance Services Office, Inc. 1982, 1983

130

# GUIDE TO POLICY CONSTRUCTION

A Great American Insurance Company BusinessPro® policy consists of:

    A.  A policy Jacket, containing the Common Policy Conditions, and company officers' signatures;

    B.  A common Policy Declarations;

    C.  One or more underlying lines of insurance Policy Declarations;

    D.  One or more Coverage Parts (each line of insurance is a coverage part) for each line of insurance Declarations.

    Each Coverage Part consists of:

        1.  A line of insurance Conditions form (if applicable);

        2.  One or more Cause of Loss forms (if applicable);

        3.  Applicable Endorsements.

131

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 88 12
(Ed. 07 94)

# NOTICE TO POLICYHOLDERS

## AUDIT OF POLICY

Dear Insured:

Thank you for choosing the **GREAT AMERICAN INSURANCE GROUP** to fill your insurance needs. We are sending this notice to provide information regarding this policy and to assure you that we appreciate your business.

Your **GREAT AMERICAN** policy is auditable. Auditable means that all or part of your cost is an advance payment that is based on estimated exposures you and your agent provided to us. We need the actual amounts to determine the final price we should charge for your policy.

At the expiration of the coverage period of your policy, one of our audit professionals will contact you to confirm your actual business results.

The final audit for your insurance could result in no change, a refund or additional money due Great American.

Thanks again for doing business with us.

Sincerely,

Premium Audit Department
Great American Insurance Group

cc: Agent

GREAT AMERICAN INSURANCE COMPANIES ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

# YEAR 2000 PROBLEM AND YOUR INSURANCE COVERAGE
## POLICYHOLDER NOTIFICATION
### SB 87 25 (04 98)

NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISION OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, <u>THE PROVISIONS OF THE POLICY SHALL PREVAIL.</u>

THIS NOTICE HAS BEEN PREPARED IN CONJUNCTION WITH THE IMPLEMENTATION OF CHANGES TO YOUR POLICY. THIS NOTICE PROVIDES INFORMATION CONCERNING YOUR INSURANCE COVERAGE FOR ANY LOSS OR DAMAGE FROM COMPUTER-RELATED OR OTHER ELECTRONIC PRODUCTS' FAILURE TO RECOGNIZE THE CHANGE TO THE YEAR 2000.

PLEASE READ THIS NOTICE CAREFULLY.

When the year 2000 arrives, it is anticipated that many computer systems will fail to work. This is because they have been programmed to read only the last two digits of dates. The first two digits are assumed to be 19. Hence, today, the computer "sees" 97 and assumes that the year is 1997. When the year 2000 arrives, it will only read the 00, and then may assume that the year is 1900. For example, an individual born in 1970, the computer would calculate their age in 1999 as:

$$99 - 70 = 29$$

In the year 2000, the age would be calculated as:

$$00 - 70 = -70$$

This problem is critical because programmers who are capable of fixing this problem are becoming scarce and the problem has to be corrected before the year 2000. Uncorrected, resulting losses may range from lost or corrupted data to damaged inventory.

Your individual business may be affected by the change to the year 2000. Each computer, computer-related system or other electronic product may experience problems, and the size, number and kind of problems can vary greatly. Since each situation is unique, it is not possible to predict the possible computer-related or other electronic problems you may experience due to the change to the year 2000. It is important that you examine and evaluate your current situation on an individual basis. In many situations it may be necessary for a professional computer consultant to analyze your computers, computer-related systems and other electronic products for year 2000 compliance. It may be prudent to consult with such a professional.

Endorsement SB 87 25 04 98 is attached to your policy. This endorsement clarifies that under your policy you have no coverage for loss or damage from any computer or other electronic equipment's inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond. This exclusion will apply regardless of whether the computer or other electronic product or device (including computer chips) belongs to you or to others.

133

## YEAR 2000 PROBLEM AND YOUR INSURANCE COVERAGE
## POLICYHOLDER NOTIFICATION
## CM 79 08 (04 98)

NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISION OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS SUMMARY, <u>THE PROVISIONS OF THE POLICY SHALL PREVAIL.</u>

THIS NOTICE HAS BEEN PREPARED IN CONJUNCTION WITH THE IMPLEMENTATION OF CHANGES TO YOUR POLICY. THIS NOTICE PROVIDES INFORMATION CONCERNING YOUR INSURANCE COVERAGE FOR ANY LOSS OR DAMAGE FROM COMPUTER-RELATED OR OTHER ELECTRONIC PRODUCTS' FAILURE TO RECOGNIZE THE CHANGE TO THE YEAR 2000.

PLEASE READ THIS NOTICE CAREFULLY.

When the year 2000 arrives, it is anticipated that many computer systems will fail to work. This is because they have been programmed to read only the last two digits of dates. The first two digits are assumed to be 19. Hence, today the computer "sees" 97 and assumes that the year is 1997. When the year 2000 arrives, it will only read the 00, and then may assume that the year is 1900. For example, an individual born in 1970, the computer would calculate their age in 1999 as:

$$99 - 70 = 29$$

In the year 2000, the age would be calculated as:

$$00 - 70 = -70$$

This problem is critical because programmers who are capable of fixing this problem are becoming scarce and the problem has to be corrected before the year 2000. Uncorrected, resulting losses may range from lost or corrupted data to damaged inventory.

Your individual business may be affected by the change to the year 2000. Each computer, computer-related system or other electronic product may experience problems, and the size, number and kind of problems can vary greatly. Since each situation is unique, it is not possible to predict the possible computer-related or other electronic problems you may experience due to the change to the year 2000. It is important that you examine and evaluate your current situation on an individual basis. In many situations it may be necessary for a professional computer consultant to analyze your computers, computer-related systems and other electronic products for year 2000 compliance. It may be prudent to consult with such a professional.

Endorsement CM 79 08 (04 98) is attached to your policy. This endorsement clarifies that under your policy, you have no coverage for any "loss" or damage from any computer or other electronic equipment's inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond. This exclusion will apply regardless of whether the computer or other electronic product or device (including computer chips) belongs to you or to others.

134

0284524

**GREAT AMERICAN INSURANCE COMPANIES** ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 00 21
(Ed. 04 98)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT
    OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) with respect to which an "Insured" under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or

   any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) the "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "Insured" or (b) has been discharged or dispersed therefrom;

Copyright, Insurance Services Office, Inc., 1997

0284524

(2) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "Insured"; or

(3) the "bodily injury" or "property damage" arises out of the furnishing by an "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"hazardous properties" includes radioactive, toxic or explosive properties;

"nuclear material" means "source material," "special nuclear material" or "by-product material";

"source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source ma-

terial" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) any "nuclear reactor";

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

(c) any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997

136

**GREAT AMERICAN INSURANCE COMPANIES** ®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 02 47
(Ed. 04 98)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MAINE CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT−RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraphs **2.**, **4.** and **6.** of the **CANCELLATION** Common Policy Condition are replaced by the following:

  **2.** We may cancel this policy by mailing or delivering written notice of cancellation to the first Named Insured. If we cancel, cancellation will not be effective prior to 10 days after the receipt by the first Named Insured of the notice of cancellation.

  **4.** Notice of cancellation to the first Named Insured will state the effective date of and reasons for cancellation. The policy period will end on that date.

  **6.** A post office certificate of mailing to the first Named Insured at the last known mailing address will be conclusive proof of receipt of notice on the third calendar day after mailing.

**B.** If this policy has been in effect for 60 days or more, or if it is a renewal or continuation of a policy issued by us, the following is added to the **CANCELLATION** Common Policy Condition and supersedes any other provisions to the contrary:

  **7.** We may cancel this policy only for one or more of the following reasons:

    **a.** nonpayment of premium;

    **b.** fraud or material misrepresentation made by you or with your consent in obtaining the policy, continuing the policy or in presenting a claim under the policy;

    **c.** substantial change in the risk which increases the risk of loss after insurance coverage has been issued or renewed, including, but not limited to, an increase in exposure due to regulation, legislation or court decision;

    **d.** failure to comply with reasonable loss control recommendations;

    **e.** substantial breach of contractual duties, conditions or warranties; or

    **f.** determination by the Superintendent of Insurance that the continuation of a class or block of business to which the policy belongs will jeopardize our solvency or will place us in violation of the insurance laws of Maine or any other state.

Copyright, Insurance Services Office, Inc., 1997

IL 02 47 (Ed. 04/98) XS

**C.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail or deliver notice of nonrenewal to the first Named Insured. Nonrenewal will not be effective prior to 30 days after the receipt by the first Named Insured of the notice of non-renewal. A post office certificate of mailing to the first Named Insured at the last known mailing address will be conclusive proof of receipt of notice on the third calendar day after mailing.

Copyright, Insurance Services Office, Inc., 1997

138

GREAT AMERICAN INSURANCE COMPANIES®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 01 89
(Ed. 04 98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MAINE – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY
FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS
 FORM – ADDITIONAL COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY
AND EQUIPMENT COVERAGE FORM

The **CONCEALMENT, MISREPRESENTATION OR FRAUD** Condition is replaced by the following:

**Concealment, Misrepresentation Or Fraud**

We do not provide coverage to one or more Insureds ("Insureds") who, at any time:

1.  intentionally concealed or misrepresented a material fact;

2.  engaged in fraudulent conduct; or

3.  made a false statement;

relating to this insurance.

Copyright, Insurance Services Office, Inc., 1997

IL 89 (Ed. 04/98) XS

139

0284524

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

Document 14-11     Filed 02/25/2005     Page 20 of 20

IL 71 25
(Ed. 10 92)

# NAMED INSURED ENDORSEMENT

It is agreed that the Named Insured and the Form of Business Organization shown in the Declarations is amended to read as follows:

PETERBOROUGH OIL CO., INC.
WILMART, INC.
WILSON OIL CO.
RICHARD CARTIER - CHAIRMAN
JOSEPH HART - PRESIDENT
JOHN FORD - TREASURER
TIMOTHY PETERSEN - VICE PRESIDENT
RELBIC TRALTY TRUST
RELBIC ASSOCIATES
C.H. PARTNERS, I
C.H. PARTNERS, II
C.F.H.P. ASSOCIATES, (LIMITED PARTNERSHIP)
C.F.H.P. II, ASSOCIATES, (LIMITED PARTNERSHIP)
C.F.H.P. III, ASSOCIATES, (LIMITED PARTNERSHIP
C.F.H.P. IV, ASSOCIATES, (LIMITED PARTNERSHIP
C.F.H.P. V, ASSOCIATES, (LIMITED PARTNERHSHIP
C.F.H.P. VI, ASSOCIATES, (LIMITED PARTNERHSHIP
  & P ENTERPRISES, INC. (HOLD LIQUOR LICENSE)
r.H.P. REALTY ASSOCIATES, OF N.H. LLC

0284524

Case 4:04-cv-40252-FDS    Document 14-12    Filed 02/25/2005    Page 1 of 9    141-149

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 88 02 (Ed. 11 85)

# BUSINESSPRO GENERAL ENDORSEMENT

## SCHEDULE OF LOSS PAYEES/MORTGAGEES
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| NAME | LOCATION |
|------|----------|
| - - - - | - - - - - - - - |
| GRANITE BANK<br>122 WEST STREET<br>KEENE, NH  03431 | 9,13,20,21 |
| CFX BANK<br>194 WEST STREET<br>P.O. BOX 746<br>KEENE, NH  03431 | 1,6,8,23 |
| BYRON H. WOOD, JR.<br>57 LAKE AVENUE<br>SPENCER, MA | 25 |
| CHESHIRE COUNTY S/B | 1,2,3,4,14 |
| RICHARD & LOUISE CARTIER | 18 |

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

# BUSINESSPRO GENERAL ENDORSEMENT

## SCHEDULE OF ADDITIONAL INSUREDS

| NAME | LOCATION |
| ---- | -------- |
| CFHP III | 19 |
| CFHP ASSOCIATES LIMITED PARTNERSHIP | 20 |
| HP ENTERPRISES, INC. | 21-1 |
| CFHP VI ASSOCIATES LIMITED PARTNERSHIP | 21-2 |
| MICHAEL APOSTOLAS 38 LOW STREET NEWBURY, MA | 22 |
| MARGARET O'NEIL ) FRANKLIN STREET PEABODY, MA | 22 |
| CFHP V ASSOCIATES LIMITED PARTNERSHIP | 14 |
| RICHARD CARTIER | 15 |
| RICHARD & LOUISE CARTIER | 18 |

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 70 69
(Ed. 01 89)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
GARAGE COVERAGE PART
TRUCKERS COVERAGE PART
FARM COVERAGE PART
PRODUCTS AND COMPLETED OPERATIONS COVERAGE PART
SAFEPAK LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of or related in any way to asbestos or asbestos-containing materials.

We shall not have the duty to defend any such claim or "suit."

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

**IL 00 20**
(Ed. 11 85)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EFFECTIVE TIME CHANGES

This endorsement modifies the COMMON POLICY DECLARATIONS.

The 12:01 A.M. inception and expiration time of this policy is replaced by 12 noon standard time.

IL 00 20 (Ed. 11/85) XS

Copyright, Insurance Services Office, Inc., 1984
Copyright, ISO Commercial Risk Services, Inc., 1984

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

**IL 00 22**
(Ed. 05 87)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EFFECTIVE TIME CHANGES - REPLACEMENT OF 12 NOON

This endorsement modifies the **COMMON POLICY DECLARATIONS.**

To the extent that coverage in this policy replaces coverage in other policies terminating noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

IL 00 22 (Ed. 05/87) XS

Copyright, Insurance Services Office Inc., 1987
Copyright, ISO Commercial Risk Services, Inc., 1987

144

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 01 35
(Ed. 12 86)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW HAMPSHIRE CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

A. Paragraphs 2. and 3. of the **CANCELLATION** Common Policy Conditions are replaced by the following:

    **2. a.** We may cancel this policy by mailing or delivering to you written notice of cancellation, stating the reasons for cancellation, at least:

        **(1)** 10 days before the effective date of cancellation if we cancel for:

            **(a)** Nonpayment of premium; or

            **(b)** Substantial increase in hazard;

        **(2)** 60 days before the effective date of cancellation if we cancel for any other reason.

    **b.** If this policy has been in effect for 60 days or more, or if this is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

        **(1)** Nonpayment of premium;

        **(2)** Fraud or material misrepresentation affecting the policy or in the presentation of a claim thereunder, or violation of any of the terms or conditions of the policy; or

        **(3)** Substantial increase in hazard; provided that cancellation for this reason shall be effective only after prior approval of the Commissioner.

    **3.** We will mail or deliver our notice to your last mailing address known to us. If notice is mailed, it will be by:

    **a.** Certified mail or certificate of mailing if cancellation is for nonpayment of premium.

    **b.** Certified mail if cancellation is for any other reason.

Copyright, Insurance Services Office, Inc., 1985, 1986
(Page 1 of 2)

145

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reasons for nonrenewal, to your last mailing address known to us at least 60 days prior to the expiration of the policy, or its anniversary date if it is a policy written for a term of more than one year.

2. However, we need not mail or deliver this notice if:

   **(a)** We have indicated a willingness to renew;

   **(b)** We refuse to renew due to nonpayment of premium;

   **(c)** You do not pay any advance premium required by us for renewal; or

   **(d)** Any property covered in this policy is insured under any other insurance policy.

3. If notice is mailed, proof of mailing will be sufficient proof of notice.

Copyright, Insurance Services Office, Inc., 1985, 1986

0284524

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

SB 86 95 (Ed. 07 98)

Policy No.   PAC   2-47-05-23 - 08

## SELECT BUSINESS POLICY FOR FUEL OIL DEALERS - GROUP II

| NAMED INSURED: | PETERBOROUGH OIL CO., INC. | POLICY PERIOD:<br>09/30/98   to   09/30/99 |
|---|---|---|

**TOTAL PROPERTY PREMIUM:**   $ 38,776

### DEDUCTIBLE AMOUNTS:

| $ | 500 | EDP Mechanical breakdown | $ | N/A | In transit |
|---|---|---|---|---|---|
| $ | 1,000 | All other | | | |

### NOT AT A DESCRIBED PREMISES:

Insurance is provided only for those coverages for which a Limit of Insurance has been inserted:

| | Newly Acquired or Constructed Locations | At any other location | In transit, in or on any one conveyance unit |
|---|---|---|---|
| Building | $ 500,000 | $ 100,000 | NOT COVERED |
| Business Personal Property | $ 250,000 | $ 100,000 | $ 15,000 |
| Business Income | $ 15,000 | NOT COVERED | NOT COVERED |
| Extra Expense | $ 15,000 | NOT COVERED | NOT COVERED |

### DESCRIBED PREMISES:

At the locations specified below, insurance is provided for those coverages for which a Limit of Insurance has been inserted:

Location:          Building:          Address: BLANKET PER SCHEDULE ON FILE
                                              WITH THE COMPANY

**BUILDING:**        Limit $ 15,512,400       Valuation   RC

**BUSINESS PERSONAL PROPERTY:**        Limit $ INCLUDED       Valuation   RC

**BUSINESS INCOME INCLUDING EXTRA EXPENSE:**        Limit $ NO COVERAGE       Valuation   --

**MORTGAGEHOLDER:**   SEE FORM IL 8802

                SEE FORM SB 8802 FOR ADDITIONAL
                                  COVERAGES

## SUPPLEMENTARY COVERAGES

A.   The coverages below apply per location. If you purchase additional limits for any of these coverages at a specified location, the Limits of Insurance shown at that location will reflect your total limits, including the Limits of Insurance shown below.

| | | |
|---|---|---|
| $ | 25,000 | Accounts Receivable |
| $ | 1,950,000 | Business Income and Extra Expense Coverage |
| $ | 10,000 | Damage to Petroleum Products due to Surface Water |
| $ | 10,500 | Debris Removal |
| | | Electronic Data Processing Equipment: |
| $ | 200,000 | Hardware, Data and Media, Extra Expense Combined Limit |
| $ | 100,000 | Employee Dishonesty |
| $ | 5,000 | Fire Department Service Charge |
| $ | 2,500 | Fire Protection Device Recharge |
| $ | 5,000 | Loss Data Preparation |
| $ | 25,000 | Loss due to Wrongful Delivery |
| $ | 5,000 | Personal Effects |
| $ | 25,000 | Pollutant Clean Up and Removal – "Specified Causes of Loss" |
| $ | 30,000 | TAC Card Coverage |
| $ | 5,000 | Tool Floater |
| $ | 25,000 | Valuable Papers |

B.   The coverage below apply on a policy aggregate basis.

| | | |
|---|---|---|
| $ | 25,000 | Pollutant Clean Up and Removal – "Loading and Unloading" and/or Pollutant Clean Up and Removal – Mechanical Failure of a Vehicle |

**FORMS AND ENDORSEMENTS** applicable to this Coverage Part and made a part of this Policy at the time of issue are listed on the attached Forms and Endorsements Schedule, SB 88 01 (11/85).

148

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

# SELECT BUSINESS POLICY FORMS AND ENDORSEMENTS EXTENSION SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | | ST | Date Added* or Date Deleted | Form Description |
|---|---|---|---|---|---|
| 1. | SB8601 | 11/97 | MA | | SELECT BUSINESS POLICY CONDITIONS |
| 2. | SB8602 | 11/97 | MA | | BUILDING & PERSONAL PROP COV FORM |
| 3. | CM0001 | 06/95 | MA | | COMMERCIAL INLAND MARINE CONDITIONS |
| 4. | CM7658 | 10/88 | MA | | BUSINESS ELECT SYSTEMS & TELECOMM |
| 5. | CM7731 | 10/89 | MA | | SPECIAL FLOATER COVERAGE FORM |
| 6. | CM0066 | 06/95 | MA | | ACCOUNTS RECEIVABLE COVERAGE FORM |
| 7. | CM0067 | 06/95 | MA | | VALUABLE PAPERS & RECORDS COV FORM |
| 8. | CR1000 | 04/97 | MA | | CRIME GENERAL PROVISIONS (LOSS SUST) |
| 9. | CR0001 | 10/90 | MA | | EMPLOYEE DISHONESTY COVERAGE FORM |
| 10. | SB8697 | 09/98 | MA | | SPECIAL COV FOR FUEL OIL DEALERS |
| 11. | SB8605 | 11/97 | MA | | BUSINESS INCOME & EXTRA EXPENSE COV |
| 12. | CP1218 | 06/95 | MA | | LOSS PAYABLE PROVISIONS |
| 13. | SB8725 | 04/98 | MA | | EXCLU OF CERTAIN COMPUTER RELATED LOSSES |
| 14. | CM7908 | 04/98 | ME | | EXCLU YR 2000/DATE RELATED LOSSES |
| 15. | CM7661 | 07/90 | MA | | EARTHQUAKE COVERAGE ENDORSEMENT |
| 16. | CM7662 | 07/90 | MA | | FLOOD COVERAGE ENDORSEMENT |
| 17. | SB8617 | 01/88 | MA | | MA CHANGES |
| 18. | CP0102 | 10/90 | NH | | NH CHANGES |
| 19. | CP0121 | 06/95 | NH | | |
| 20. | SB8802 | 01/88 | MA | | GENERAL ENDORSEMENT |

f not at inception

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                      SUPERIOR COURT
                                                   CIVIL ACTION NO. 02-1794 L

**************************************
CHERYL CARTER                          *
    Plaintiff                  *
                                       *
    v.                         *
                                       *
PETERBOROUGH OIL COMPANY, INC.., and   *
DIANE CLARK,                           *
    Defendants                 *
**************************************

## PLAINTIFF'S OPPOSITION TO DEFENDANT PETERBOROUGH OIL COMPANY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

    Plaintiff Cheryl Carter hereby opposes defendant Peterborough Oil Company's Motion for Judgment Notwithstanding the Verdict.

## I.   Plaintiff's Evidence Produced At Trial

    The following is a summary of the evidence that plaintiff produced at trial in support of her claims.

    Peterborough Oil Company, Inc. ("Peterborough") hired Cheryl Carter in January, 1998, at Mr. Mike's in Groton, Massachusetts, as a cashier. On April 29, 1998, Peterborough did a formal performance appraisal on Carter and rated her above average to outstanding. As a result it gave her a $.50 per hour raise and promoted her from a part-time cashier to the full-time Assistant Manager. In August, 1998, Peterborough reviewed Carter's performance again and gave her another $.50 per hour raise.

1

criminal proceeding is measured at the time that person initiates a criminal complaint. That legal argument totally ignores the above precedent regarding someone <u>who takes an active part in continuing or procuring the continuation of criminal proceedings</u> initiated by another. That is something totally different, and Peterborough still has presented nothing that would contradict the above case authority regarding someone who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by another. The Court's legal ruling on this issue was correct and remains unchallenged.

Based upon the foregoing law, there was ample evidence that Peterborough took an active part in continuing or procuring the continuation of the criminal proceedings against Carter. The primary evidence was that at the second probable cause hearing, when Officer Bolonis and Clark were informed of a surveillance tape that showed someone other than Carter playing scratch tickets without paying for them, Officer Bolonis asked Clark what Peterborough wanted to do. Rather than ask to review the tape, Clark said that Peterborough wanted to prosecute. And therefore, without ever seeing the surveillance tape, the Clerk-Magistrate issued the criminal complaint against Carter.

Furthermore Peterborough came to know that the time period for elevated lottery sales coincided with Granger's employment, not with Carter's managing the Groton store. And lastly Peterborough knew, after it finally reviewed the surveillance tape which showed Granger playing scratch tickets without paying for them, that Granger's daily shift sheet for that day showed that she was $23 short in scratch tickets. Yet, Peterborough in essence lied and continued with the prosecution.

The Court's ruling on this point was correct.

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

CIVIL DOCKET# **MICV2002-01794**

RE:   **Carter v Peterborough Oil Company, Inc. et al**

TO:  James P Hoban, Esquire
Bowditch & Dewey
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156

_____

## NOTICE OF JUDGMENT ENTRY

This is to notify you that a judgment in the above referenced action has been entered on the docket.  A copy of the judgment is attached.

Dated at Lowell, Massachusetts this 29th day of April,  2004.

Edward J. Sullivan,
Clerk of the Courts

BY:....................................................
Martha Fulham
Assistant Clerk

Telephone: 978-453-0201 EXT 231

cvdnotjud_2.wpd 2553622 judverp erricoc

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

*24*

CIVIL DOCKET# **MICV2002-01794**

Carter
vs.
Peterborough Oil Company, Inc. et al

## JUDGMENT ON JURY VERDICT

This action came on for trial before the Court and a jury, Jane Haggerty, Justice, presiding, the issues having been duly tried and the jury having rendered its verdict,

It is **ORDERED and ADJUDGED:**

That the plaintiff(s), **Cheryl Carter** recover of the defendant(s), **Peterborough Oil Company, Inc.,** the sum of **$300,000.00** with interest thereon from 04/29/2002 to 04/28/2004 in the sum of **$72,000.63** as provided by law, and its costs of action.

Cause of action as to Diane Clark is hereby DISMISSED.

Dated at Cambridge, Massachusetts this 28th day of April, 2004.

BY:.......................................

Assistant Clerk

Dated: 04/28/2004

Entered: 04/29/2004

Copies mailed 04/29/2004



*Bowditch*
*&Dewey*
ATTORNEYS

Direct telephone:(508) 926-3448
Direct facsimile: (508) 929-3026
Email: jhoban@bowditch.com

September 28, 2004

*VIA FACSIMILE – 1-781-767-0662*
*AND REGULAR MAIL*

William J. Curtin, CPCU
Senior General Adjuster
Great American Insurance Group
P.O. Box 411
Holbrook, MA 02343

RE:    *Cheryl A. Carter v. Peterborough Oil Company, Inc., et al*
       *Civil Action No. 02-1794-L*
       *Insured:*     *Peterborough Oil Company, Inc.*
       *Claim No.:*   *702-507878*
       *Policy No.:*  *PAC 2470523*
       *Policy Period: 9/30/98 – 9/30/99*

Dear Mr. Curtin:

As you know, this office was retained by your insured to defend the above-referenced action. We have also previously contacted Great American Insurance Group ("Great American") regarding Great American's failure to provide Peterborough Oil Company, Inc. ("Peterborough") with defense and indemnification under the above-referenced commercial general liability policy (the "Policy").

As you know, in this action the plaintiff, Cheryl Carter ("Carter"), asserts causes of action for malicious prosecution (Counts I and II) and intentional infliction of emotional distress (Counts III and IV) against Peterborough Oil Company, Inc. and Diane Clark arising out of the Middlesex County District Attorney's Office unsuccessful prosecution of Carter for Larceny over $250 in violation of G.L. c. 266, § 30.

The purported wrongful conduct of Peterborough Oil and its Director of Retail, Diane Clark ("Clark"), alleged in the Complaint was the procurement of the continuation of the

{J:\CLIENTS\lit\302602\0001\00475470.DOC;2}

BOWDITCH & DEWEY, LLP  311 MAIN STREET  PO BOX 15156  WORCESTER, MA 01615-0156
T 508 791 3511  F 508 756 7636  www.bowditch.com

William J. Curtin, CPCU
Senior General Adjuster
September 28, 2004
Page 2

criminal prosecution when it allegedly became clear that probable cause did not exist.[1]

Although Great American was promptly notified of this claim and provided with a copy of the Summons and Complaint, it denied coverage. In March 2004, Great American was notified of the approaching trial date and demand was once again made that Great American defend and indemnify its insured as required by the Policy. Great American again failed, neglected and refused to honor its obligations under the Policy. Trial commenced on April 20, 2004, and at its conclusion, the jury returned a verdict for Carter in the amount of $300,000 plus statutory interest. A copy of the judgment is enclosed.

Peterborough timely moved for judgment notwithstanding the verdict, a new trial, and remittitur. These requests for relief were opposed by Carter. After hearing, the Court denied these requests and a timely appeal of the judgment was taken. Copies of these materials are also enclosed.

Several weeks after the conclusion of the Trial, Great American responded to Peterborough's demand for defense and indemnification by letter dated May 6, 2004. In that letter, Peterborough denied coverage in reliance on Section A of the EMPLOYMENT-RELATED PRACTICES EXCLUSION to the Policy. Great American did not consider or evaluate coverage under COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY and did not offer any explanation as to why coverage was not available under that coverage grant.

Had Great American taken the time to evaluate coverage under Coverage B of the Policy, it would have been evident that the case falls within the coverage grant and there is no applicable exclusion on these facts.

In this regard, Coverage B of the Policy provides coverage for "'personal injury' caused

---

[1] It is alleged in the Complaint, that:

> 23. On May 21, 1999, the Probable Cause hearing before the Clerk-Magistrate in Ayer District Court was resumed. Clark was there as the representative for Peterborough Oil. Counsel for Carter informed the Clerk-Magistrate and Police Officer from the Groton Police Department of the existence of this surveillance tape and the fact that it showed someone other than Carter playing scratch lottery tickets without paying for them. *Officer Bolonis asked Clark what she wanted to do. Clark advised Officer Bolonis and the Clerk-Magistrate that she still wanted Carter to be prosecuted for larceny over $250.* (*emphasis added*)

It is also alleged in the Complaint that Carter never again actively worked for Peterborough after it was discovered that over $6,000 was missing on January 21, 1999, and that she was formally terminated on February 16, 1999. (Complaint, ¶¶11, 15.)

William J. Curtin, CPCU
Senior General Adjuster
September 28, 2004
Page 3

by an offense arising out of your business." [2]  "Personal Injury" is defined in the Policy as
"injury, other than 'bodily injury', arising out of one or more of the following offenses:…*b.
malicious prosecution*."[3]  (emphasis added)  Thus, the Policy contains an affirmative grant of
coverage for malicious prosecution claims arising out of the insured's business.

   With respect to this coverage grant, the Employment-Related Practices Exclusion only
abrogates coverage for employment-related practices such as the refusal to employ, the
termination of a person's employment, demotion, reassignment, or discipline.[4]

---

[2] Coverage B states in pertinent part:

### COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1.  Insuring Agreement**

   a.      We will pay those sums that the Insured becomes legally obligated
   to pay as damages because of "*personal injury*" or "advertising injury" to
   which this insurance applies.  We will have the right and duty to defend the
   Insured against any "suit" seeking those damages.  However, we will have
   no duty to defend the Insured against any "suit" seeking damages for
   "personal injury" or "advertising injury" to which this insurance does not
   apply.
      …

   b.      This insurance applies to:

      (1)      "*personal injury" caused by an offense arising out of your
      business*, excluding advertising, publishing, broadcasting or
      telecasting done by or for you;
      …
      but only if the offense was committed in the "coverage territory"
      during the policy period.

(emphasis added)

[3] In Massachusetts, "malicious prosecution" is a well defined common law tort.  To state a claim for
malicious prosecution the plaintiff must prove: (1) the defendant initiated a prior criminal or civil proceeding against
the plaintiff; (2) the prior proceeding was instituted without probable cause; (3) the prior proceeding was instituted
with malice; and (4) the prior proceeding terminated in favor of the plaintiff.

[4] The Employment-Related Exclusion provides in part:

   B.      The following exclusion is added to Paragraph 2., Exclusions of
   COVERAGE B - PERSONAL AND ADVERTISING INJURY
   LIABILITY (Section I - Coverages):

   This insurance does not apply to:

   1.      "Personal injury" to:

      a.      a person arising out of any:

         (1)      refusal to employ that person;

William J. Curtin, CPCU
Senior General Adjuster
September 28, 2004
Page 4

The malicious prosecution claims asserted in this action did not arise out of any employment related act. Rather, the claims were premised on acts occurring in the context of a criminal proceeding in the Ayer District Court.

At Trial, although it was undisputed that neither Peterborough or Clark initiated the criminal proceedings, the Court permitted Carter to proceed on its malicious prosecution claims under a continuation theory. Copies of Defendants' Motions in Limine on this issue are enclosed.

The only evidence of any action taken by any agent of Peterborough in an effort to procure the continuation of the criminal prosecution was Diane Clark's purported request at the May 21, 1999 Probable Cause Hearing that the hearing go forward after Carter's counsel's represented to the Clerk-Magistrate that there was a video surveillance tape which purportedly contained exculpatory footage. The relevant testimony of Carter is enclosed for your reference.

Indeed, in Carter's oppositions to Peterborough's post-trial motions, Carter asserted that:

> [T]here was ample evidence that Peterborough took an active part in continuing or procuring the continuation of criminal proceedings against Carter. ***The primary evidence*** was that at the second probable cause hearing, when officer Bolonis and Clark were informed of a surveillance tape that showed someone other than Carter playing scratch tickets without paying for them, Officer Bolonis asked Carter what Peterborough what it wanted to do. Rather than review the tape, Clark said that

---

(2)     termination of that person's employment; or

(3)     employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, decipline [sic], defamation, harassment, humiliation, discrimination directed at that person; or

b.     the spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in Paragraphs (1), (2) or (3) above is directed.

This exclusion applies:

a.     whether the Insured may be liable as an employer or in any other capacity; and

b.     to any obligation to share damages with or repay someone else who must pay damages because of the injury.

William J. Curtin, CPCU
Senior General Adjuster
September 28, 2004
Page 5

> Peterborough wanted to prosecute. And therefore, without ever seeing the
> surveillance tape, the Clerk-Magistrate issued the criminal complaint
> against Carter. (*emphasis added*)

(Oppositions at p. 9.)

This evidence is now binding on Great American for purposes of this coverage dispute as a result of its breach of its duty to defend. Thus, for purposes of coverage, the "personal injury" to Carter did not arise out of a failure to employ, a termination, or other employment related practice, policy act or omission. Rather, the "personal injury" arose out of a statement made in the course of a criminal proceeding, months after the employment relationship had ended. As such, the exclusion does not apply.

As you no doubt are aware, an insurer's obligation to defend against a liability claim is determined by the allegations in the Complaint and facts known or readily ascertainable by the insurer on investigation can also give rise to a duty to defend. If the allegations in the Complaint or the facts ascertained through the insurer's investigation are reasonably susceptible of an interpretation that they state a claim covered by the policy terms, the insurer must undertake the defense. Stated another way, in order to give rise to the duty to defend, the underlying complaint need only show a possibility of coverage. The insurer seeking to disclaim coverage based upon an exclusionary clause bears the burden of proving that the facts of the case fall within the scope of the exclusionary clause.

Here, the underlying Complaint and evidence introduced at Trial clearly established at least a possibility of coverage under the Policy and, as such, Great American was obligated to provide a defense. As a result of Great American's breach of that duty to defend, Great American is now: (1) bound by all material matters decided in the underlying action which bear on the coverage issue; (2) liable for the defense costs incurred by Peterborough in the underlying action; and (3) liable for the attorneys' fees and costs incurred by Peterborough if it is required to bring a declaratory judgment to establish Great American's duty to defend and indemnify against this claim. [5]

Peterborough once again requests that Great American reconsider its coverage position and honor its defense and indemnification obligations under the Policy. If you fail to do so within the next five (5) days, Peterborough will have no choice but to initiate a declaratory

---

[5] Indeed, under Massachusetts law, an insurer that wrongfully declines to defend a claim will bear the burden of proving that the claim was not within the policy's coverages for purposes of indemnification.

William J. Curtin, CPCU
Senior General Adjuster
September 28, 2004
Page 6

judgment action to establish Great American defense and indemnification obligations under the Policy, and will also seek multiple damages and attorneys' fees under G.L. c. 93A as a result of Great American's unfair claims practices.

Very truly yours,

James P. Hoban

JPH:kld:jfh
Enclosures
cc:     Mr. Jack Ford (w/enclosures)
        Thomas P. Mullins, Esquire (w/enclosures)
        Barry A. Bachrach, Esquire (w/enclosures)

# CURLEY & CURLEY, P.C.
### ATTORNEYS AT LAW
27 SCHOOL STREET
BOSTON   MASSACHUSETTS   02108

———————

(617) 523-2990
ΓACSIMILE (617) 523-7602

ROBERT A. CURLEY
ROBERT A. CURLEY, JR.
EUGENE F. NOWELL
DAVID D. DOWD
MARTIN J. ROONEY*
STEPHEN J. GILL
C. MARK FURCOLO
JONI KATZ MACKLER
KIM M. ROUSSOS
LISA M. CAPERNA

OF COUNSEL
LISABETH RYAN KUNDERT

WRITER'S E-MAIL ADDRESS:
ddd@curleylaw.com

*ALSO MEMBER OF NEW HAMPSHIRE BAR

October 29, 2004

James P. Hoban, Esquire
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA   01615-0155

**Re:   Cheryl A. Carter v. Peterborough Oil Company, Inc., et al.
        GAIC Claim No. 702-507878**

Dear Mr. Hoban:

This office represents Great American Insurance Co. ("GAIC") with respect to the above matter. This is in response to your letter dated September 28, 2004 to William Curtin, as well as prior challenges to GAIC's coverage position. This is in supplementation to Mr. Curtin's letters dated May 20, 2002 and May 6, 2004, which are incorporated herein by reference.

It appears that the verdict against Peterborough Oil Company was premised upon intentional infliction of emotional distress and malicious prosecution.

The former tort is not listed among the offenses comprising "personal injury," as defined by the policy. Moreover, it is well settled under Massachusetts law that emotional distress does not constitute "bodily injury," within insurance policy usage of that term. Allstate Ins. Co. v. Diamant, 401 Mass. 654, 658 (1988); Richardson v. Liberty Mutual Fire Ins. Co., 47 Mass.App.Ct. 698, 702-703 (1999). It is beyond reasonable dispute that GAIC does not cover the award against Peterborough for infliction of distress (Count III).

Malicious prosecution is an offense within the policy definition of "personal injury." However, the "Coverage B.  Personal and Advertising Injury Liability" insuring agreement restricts indemnity and defense to "'personal injury' … to which this insurance applies." Section B of endorsement CG 21 47, "Employment-Related Practices Exclusion," modifies personal

James P. Hoban, Esquire
October 29, 2004
Page 2

injury liability by dictating that "this insurance does not apply to 'personal injury' to: a person arising out of ..." termination of a person's employment or employment-related acts, practices or omissions, inter alia. Your argument that malicious prosecution is a "personal injury" as defined by the policy is undisputed, but it is to no avail with respect to this excluded employment-related personal injury.

You have also argued zealously that Carter was no longer an employee at the time of certain criminal proceedings. However, please note that the exclusionary endorsement recites as follows:

This exclusion applies:

(1)     Whether the insured may be liable as an employer or in any other capacity; ...

Indeed, scores of reported cases have applied employment-related practices exclusions to acts which post-dated termination of employment. E.g., Parish of Christ Church v. Church Ins. Co., 116 F.3d 419 (1ˢᵗ Cir. [Mass.] 1999). Your argument that there must be an existing employment relationship at the time of the tort has been rejected repeatedly. E.g., Clinical Research Institute v. Kemper Ins. Co., 84 F.3d 147 (Ore.App. 2004).

Massachusetts has no reported case law on the exact exclusion in issue. However, Massachusetts has construed the crucial exclusionary term "arising out of" as follows:

The phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law. Indeed, cases interpreting the phrase 'arising out of' in insurance exclusionary provisions suggest a causation more analogous to 'but for' causation, in which the Court examining the exclusion inquires whether there would have been personal injuries, and a basis for the Plaintiff's suit, in the absence of the objectionable underlying conduct.

Bagley v. Monticello Ins. Co., 430 Mass. 454, 457 (1999) (citations omitted). See also Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co., 220 F.3d 1 (2000) (Under Massachusetts law, phrase "arising out of" in an insurance policy is generally understood to mean originating from, growing out of, flowing from, incident to, or having connection with).

"But for" the employment relationship with Carter and the employment-related acts of investigation of the cash shortfall and report to the police, there would have been no criminal proceedings to perpetuate at the probable cause hearing. The occurrences which precipitated the criminal charges took place during employment and in the course thereof. Clearly, the malicious prosecution, including continuation of criminal proceedings, for workplace larceny "arose out of" employment and constituted employment-related acts.

Though Massachusetts has no case law on identical facts and policy language, cases elsewhere are numerous and uniformly supportive of GAIC's disclaimer in these circumstances. For example, Capitol Indemnity Corp. v. 1405 Associates, Inc., 340 F.3d 547 (8ᵗʰ Cir. 2003), is directly on point. After termination of an employee, the insured reported to the authorities her

James P. Hoban, Esquire
October 29, 2004
Page 3

failure to have turned over all the rent receipts she had collected prior to her departure. She sued for false arrest, false imprisonment and other torts. A very similar EPL exclusion was in issue. "Arising out of" was interpreted the same way under Missouri law, i.e., originating from, having its origins in, growing out of or flowing from. Such a simple causal relationship existed, because all of the torts flowed from her employment with the insured. The Court observed that such exclusions bar coverage for "virtually any claim arising out of the employment relationship." There was no coverage for the claims.

The nexus between malicious prosecution of Carter for workplace pilferage and embezzlement and her employment by Peterborough Oil Company is self-evident and indisputable. The only relationship between Carter and Peterborough was that of employee-employer. Accordingly, GAIC clearly does not cover this loss. It is compelled to respectfully reject your arguments and reiterate its disclaimer.

Though irrelevant to coverage or the lack thereof, I do offer the gratuitous observation that prospects for appellate reversal of the award for malicious prosecution appear strong. In the few cases where acts other than initiation of criminal proceedings were deemed actionable malicious prosecution offenses, the actors were all law enforcement personnel, not private corporate citizens like Peterborough Oil Company, Inc. Also, it appears that Carter has identified no Peterborough personnel with any involvement with the criminal proceedings other than Diane Clark. Consequently, with respect to malicious prosecution at least, if not infliction of emotional distress which involved Ms. Gambino and other personnel, the jury's findings in favor of Clark and against Peterborough are inconsistent on their face and irreconcilable. Exoneration of the employee-defendant compels exoneration of the employer in these circumstances.

The failure to have mentioned herein any policy condition, provision, defense or argument should not be deemed a waiver thereof. GAIC relies upon all of its rights under the policy and law.

Very truly yours,

David D. Dowd

DDD:es