UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 4:04-CV-40252-FDS

PETERBOROUGH OIL COMPANY, INC., et al.,

    Plaintiffs

v.

GREAT AMERICAN INSURANCE COMPANY,

    Defendant

**BRIEF IN SUPPORT OF DEFENDANT'S CROSS-MOTION
FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Issue Presented**

Is claim for malicious prosecution of an employee for suspected workplace theft within an exclusion in a liability insurance policy for "'personal injury' arising out of an employment-related act," even if prosecution activity was after termination of employment?

**Facts**

The complaint filed by Cheryl Carter against Peterborough Oil Company and Diane Clark, attached as Exhibit A to the Affidavit of Barry A. Bachrach,[1] alleges the following:

Peterborough Oil Company, Inc. (hereinafter "Peterborough") hired Cheryl Carter as a cashier for its gas station in Groton, Massachusetts. (Complaint ¶4) After January 21, 1999 report of cash shortages at the station, Diane Clark, who was employed by

---

[1] Whereas the Defendant cites to the same documents filed by Plaintiff in support of its motion for summary judgment, Defendant refers thereto rather than append duplicative exhibits to Defendant's motion papers.

Peterborough in a management capacity (Id. at ¶3), appeared at the station. (Id. at ¶¶ 8-9) Clark then contacted the Groton Police Department and reported a larceny of over $6,020. over a period of time by an employee. Clark reported that she thought Carter to have been the guilty employee. (Id. at ¶9) Carter was then suspended without pay from her employment duties. (Id. at ¶10) Peterborough terminated her employment on February 16, 1999. (Id. at ¶15) Later, "Peterborough Oil in the person of Diane Clark formally filed criminal charges against Carter accusing her of larceny over $250." (Id. at ¶17) At May 21, 1999 probable cause hearing before the Clerk-Magistrate at Ayer District Court, Carter's counsel reported the existence of a surveillance tape that purportedly showed someone other than Carter playing scratch tickets without paying for them. Groton Police Officer Bolonis asked Clark what she wanted to do. Clark advised the officer and Clerk-Magistrate that she still wanted Carter to be prosecuted for larceny over $250. (Id. at ¶23) On June 24, 1999 a criminal complaint was issued against Carter for larceny over $250 at the request of Peterborough and Clark. (Id. at ¶26) After trial at which Clark testified on behalf of the Commonwealth, Carter was found not guilty of the charge of larceny over $250 on March 8, 2000. (Id. at ¶¶34-35)

Carter sued Peterborough and Clark for malicious prosecution and intentional infliction of emotional distress. (Id. at ¶¶42-46) Ultimately, the jury found against Peterborough and awarded $300,000 to Carter. The jury found in favor of Clark. Judgment was entered accordingly. (Judgment on Jury Verdict, Exhibit F)

Great American Insurance Company ("GAIC") insured Peterborough under policy no. PAC2-47-05-23-08 for the period 9/30/98-9/30/99. (Policy, Exhibit D) That policy covers "bodily injury" caused by an "occurrence." (Id. at p. 52) Malicious prosecution is

within the list of offenses set forth in the policy definition of "personal injury" (Id. at pp. 65-66), but the insurance does not apply to "personal injury" to a person arising out of any employment-related acts. (Id. at p. 83) Consequently, GAIC has disputed responsibility for defense and indemnity of the Carter claims. (Exhibits B, H)

This lawsuit takes issue with GAIC's position.

**Argument**

I.  INTENTIONAL INFLICTION OF DISTRESS CLAIMS ARE NOT COVERED

Four elements are required for liability for intentional infliction of emotional distress:

> It must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it."

Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976) (citations omitted).

Coverage A of the policy covers damages because of "bodily injury" caused by an "occurrence." (Policy, Exhibit D, p. 52) Those terms have been defined as follows in the policy (Id. at pp. 63, 65):

 3.  **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

 12. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

By its very name, elements and nature, intentional infliction of emotional distress is no "accident." As a matter of law, it is not covered under a policy covering "bodily injury" caused by an "accident." E.g., Kilgore v. Resumix, Inc., 1998 Mass.Super.LEXIS 170*10.

Moreover, it is well settled under Massachusetts law that emotional distress does not constitute "bodily injury," within insurance policy usage of that term. Allstate Ins. Co. v. Diamant, 401 Mass. 654, 658 (1988); Richardson v. Liberty Mutual Fire Ins. Co., 47 Mass.App.Ct. 698, 702-703 (1999). Further, if distress were "bodily injury," exclusion (a) from Coverage A ("**a. Expected or Intended Injury** 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured") applies on its face to intentional infliction thereof.

Nor is intentional infliction of emotional distress "personal injury" liability within Coverage B of the policy or among the offenses within the definition of that term. (Policy, Exhibit D, pp. 56, 65-66)

Thus, it is beyond dispute that GAIC does not cover the claims for intentional infliction of emotional distress (Counts III-IV) or the award against Peterborough (Count III) therefor. Indeed, there is no contention otherwise in Peterborough's motion papers.

II.   CLAIM FOR MALICIOUS PROSECUTION IN THIS CONTEXT HAS BEEN EXCLUDED

---

The policy provides as follows, in pertinent part (Policy, Exhibit D, pp. 56, 65-66, 83):

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1.   Insuring Agreement

   a.   We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. ...

13. **"Personal injury"** means injury, other than "bodily injury," arising out of one or more of the following offenses:

   a. false arrest, detention or imprisonment;

   b. malicious prosecution;

   c. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   d. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   e. oral or written publication of material that violates a person's right of privacy.

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

EMPLOYMENT-RELATED PRACTICES EXCLUSION

This insurance does not apply to:

1. "Personal injury" to:

   a. a person arising out of any:

      (1) refusal to employ that person;

      (2) termination of that person's employment; or

      (3) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, decipline [sic], defamation, harassment, humiliation, discrimination directed at that person; ...

   This exclusion applies:

   a. whether the insured may be liable as an employer or in any other capacity; ...

In the absence of ambiguity, insurance policies are not construed strictly against the insurer. Rather, the words of the policy must be construed in their usual and ordinary sense. Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978).

It has been held frequently that the term "employment-related" within an insurance policy exclusion is not ambiguous, even though it is undefined by the policy. E.g, Frank and Freedus v. Allstate Ins. Co., 52 Cal.Rptr.2d 678, 685 (Cal.Ct.App. 1996); Adams v. Pro Sources, Inc., 231 F.Supp.2d 499, 505 (M.D. La. 2002).

Ambiguity exists when the policy language is susceptible to more than one rational interpretation. It does not follow that ambiguity exists solely because the parties disagree as to the provision's meaning. Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co., 220 F.3d 1, 5 (1st Cir. [Mass.] 2000).

Peterborough has cited the inclusion of malicious prosecution within the definition of "personal injury" as "an affirmative grant of coverage." (Plaintiff's Brief, p. 7) However, the coverage or the lack thereof is determined by the relevant insuring agreement. (Policy, Exhibit D, p.56) That limits coverage to "'personal injury' ... to which this insurance applies." The exclusionary endorsement (Id. at p. 83) dictates that "this insurance does not apply to ..." personal injury "arising out of ... termination of that person's employment; or employment-related ... acts."

Massachusetts has no reported case law on the exact exclusion in issue. However, Massachusetts has construed the crucial exclusionary term "arising out of" as follows:

> The phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law. Indeed, cases interpreting the phrase 'arising out of' in insurance exclusionary provisions suggest a causation more analogous to 'bur for' causation, in which the Court examining the exclusion inquires whether there would have been

> personal injuries, and a basis for the Plaintiff's suit, in the absence of the objectionable underlying conduct.

Bagley v. Monticello Ins. Co., 430 Mass. 454, 457 (1999) (citations omitted). See also Brazas Sporting Arms, Inc., supra, 220 F.3d at 6-7. (Under Massachusetts law, phrase "arising out of" in an insurance policy should be construed broadly and is generally understood to mean "originating from," "growing out of," "flowing from," "incident to," or "having connection with").

Surely, prosecution of Carter for larceny of Peterborough funds was "incident to" or had "connection with" the termination of her employment by Peterborough in these circumstances, within ¶(a)(2) of the exclusion.

"But for" the employment relationship with Carter and the employment-related acts of investigation of the cash shortfall and report to the police, there would have been no criminal proceedings to initiate or perpetuate at the probable cause hearing and no "personal injury." The occurrences which precipitated the criminal charges took place during employment and in the course thereof. Clearly, the malicious prosecution for workplace larceny was a "personal injury," which "arose out of" or "flowed from" employment, within ¶(a)(3) of the exclusion.

Though the "personal injury," i.e., the malicious prosecution, need not have itself been the employment-related act but only have arisen out of an employment-related act, GAIC submits that it fits comfortably within the exclusionary list of examples of employment-related acts, including "coercion," "harassment" and "humiliation." Malice is a requisite element of recovery for the tort of malicious prosecution. Nolan, Tort Law, 37 M.P.S. §78, citing Shattuck v. Simonds, 191 Mass. 506, 508 (1906). Malice involves an ulterior purpose other than that of bringing the offender to justice. Restatement, Second,

Torts §653(a). The Massachusetts law as to malice in this context is the following (underline added; citations omitted):

> The malice necessary to be shown in order to maintain this [malicious prosecution] action, is not necessarily revenge or other base and malignant passion. What ever is done *willfully and purposely*, if it be at the same time *wrong and unlawful*, and that known to the party, is in legal contemplation malicious. That which is done contrary to one's own conviction of duty, or with a willful disregard of the rights of others, *whether it be to compass some unlawful end, or some lawful end by unlawful means*, or, in the language of the charge, *to do a wrong and unlawful act knowing it to be such*, constitutes legal malice (emphasis added). Our reasoning in *Wills* demonstrates that an improper motive is essential. … That improper motive may be one of vexation, harassment, annoyance, or attempting to achieve an unlawful end or a lawful end through an unlawful means.

Beecy v. Pucciarelli, 387 Mass. 589, n. 9 (1982). Thus, malicious prosecution is, indeed, a form of "coercion," "harassment" or "humiliation," within the examples of excluded employment-related acts.

Massachusetts has no case law on identical facts and policy language. (The exclusionary language in Parish of Christ Church v. Church Ins. Co., 116 F.3d 419 (1st Cir. [Mass.] 1999), infra, is distinct.) The most analogous case elsewhere is supportive of GAIC disclaimer. Capital Indemnity Corp. v. 1405 Associates, Inc., 340 F.3d 547 (8th Cir. 2003), is directly on point. After termination of an employee, the insured reported to the authorities her failure to have turned over all the rent receipts she had collected prior to her departure. The employee was arrested. Thereafter, she sued for false arrest, false imprisonment and other torts. A virtually identical employment-related practices exclusion was in issue. "Arising out of" was interpreted the same way as under Massachusetts law, i.e., originating from, having its origins in, growing out of or flowing from. Such a simple causal relationship existed, because all of the torts flowed from her employment with the insured.

The Court observed that such exclusions bar coverage for "virtually any claim arising out of the employment relationship." There was no duty to defend or indemnify.

Peterborough's attack upon GAIC's disclaimer focuses upon the fact that some criminal proceedings took place after cessation of Carter's employment, particularly the probable cause hearing and Clark's expressed desire at that time for prosecution. (Plaintiff's Brief, pp. 10-11)

Peterborough has cited post-trial argument of Carter's counsel in support of Peterborough's fixation upon the May 21, 1999 hearing. (Plaintiff's Brief, p. 4) It is difficult to discern the materiality of this post-trial, hearsay, conclusory attorney argument to GAIC's duty to defend or the lack thereof. With respect to duty to indemnify, reliance thereon is misplaced. Given that Clark was the Peterborough actor at that proceeding and Clark was exonerated by the jury on the malicious prosecution claim against her (Exhibit A, Complaint, ¶23; Exhibit F, Judgment on Jury Verdict), there seem to be only two possible conclusions: Either (1) the verdict against Peterborough on malicious prosecution was premised upon that May 21, 1999 continuation of proceedings, in which case the verdict was fatally inconsistent and should be vacated on appeal, which is pending; or (2) the malicious prosecution verdict against Peterborough was necessarily predicated upon other activity. Indeed, the Complaint sets forth a long history of Peterborough involvement with the criminal charges. (Exhibit A) Even the assertion of Carter's counsel quoted by Peterborough refers to evidence of the May 21, 1999 hearing as "primary," acknowledging that there was evidence of other malicious prosecution activity. In either event, for the two reasons stated, Peterborough's reliance upon the May 21, 1999 proceeding does not support argument that GAIC must indemnify the award in favor of Carter.

In any event, the employment-related practices exclusion is not rendered inapplicable if some activities post-dated termination of Carter's employment by Peterborough. The exclusionary endorsement language refutes that an employment relationship is necessary:

This exclusion applies:

(1)   Whether the insured may be liable as an employer or in any other capacity.

Indeed, scores of reported cases have applied employment-related practices exclusions to acts which post-dated termination of employment. E.g., Parish of Christ Church v. Church Ins. Co., 116 F.3d 419 (1st Cir. [Mass.] 1999). Argument that there must be an existing employment relationship at the time of the tort has been rejected repeatedly. E.g., Clinical Research Institute v. Kemper Ins. Co., 84 P.3d 147 (Ore.App. 2004) (Court emphasized that the identical exclusion used the term "person," rather than "employee," and presupposed liability in a capacity other than employer, which "encompasses actions in which there is no existing employment relationship"); Adams v. Pro Sources, Inc., 231 F.Supp.2d 499, 505 (M.D. La. 2002) (EPL exclusion does not apply only to acts coinciding with the period of employment, but applied to post-employment retaliatory defamation, which was made in the context of employment and related to the claimant's performance); Potomac Ins. Co. of Ill. v. Peppers, 890 F.Supp. 634, 645 (S.D. Tex. 1995) (publication two months after cessation of business relationship arose out of claimants' positions and was related to the insured's employment practices, within exclusion thereof).

The three cases cited by Peterborough in this respect are inapposite.

In Great American Ins. Co. v. Hartford Ins. Co., 621 N.E.2d 796 (OhioApp. 1993), extortionary threats to invade an ex-employee's privacy by public exposure of his sordid personal background unless he settled his legal actions against the employer were not within

exclusion of "personal injury arising out of discrimination or humiliation directly or indirectly related to the employment or prospective employment of any person or persons by any insured" for summary judgment purposes. Given potential or arguable coverage for post-employment threats without discriminatory intent, the insurer was required to defend.

Clearly, that policy language is not remotely comparable to that in Peterborough's policy. Moreover, investigation, report to police, instigation and/or continuation of criminal proceedings against Carter for <u>workplace</u> theft are utterly distinct from the extortionary threat to disclose personal matter in the Ohio case.

In <u>Waffle House, Inc. v. Travelers Indemnity Co.</u>, 114, S.W. 3d 601 (Tex.App. 2 Dist. 2003), relied upon by Peterborough, defamatory statements were made to a competitor over two years after termination. The statements were made to the competitor in an attempt to prevent other employees from leaving the company. They did not arise out of the claimant's termination. Hence, there was no causal relationship between the defamation and the claimant's employment. The <u>context</u> was prevention of employee defection, not the claimant's employment.

Conversely, investigation, report to police and even involvement with the prosecution of an ex-employee for <u>on the job larceny from the employer</u> are certainly in the employment context. There is no marketplace or business context. Moreover, it should be noted that the <u>Waffle House</u> rationale and holding were criticized by another Texas District Court of Appeals in <u>Altivia Corp. v. Greenwich Ins. Co.</u>, 2004 Tex.App.LEXIS 7655, n. 2 (Tex.App. 14 Dist. 2004).

Finally, in <u>HS Services, Inc. v. Nationwide Mut. Ins. Co.</u>, 109 F.2d 642 (9th Cir. [Calif.] 1997), relied upon by Peterborough, the insured's former president formed a

competing company and told common vendors that the insured was in dire financial straits. In response, the insured circulated a memo to staff and outside brokers that the president had been terminated for acts of dishonesty, which generated a claim for defamation. The Court acknowledged that the timing of the defamation, i.e., post-termination of employment, did not preclude applicability of the exclusion. However, because the defamatory remarks were not part of the claimant's termination and their proximate cause was his own remark in the marketplace which had been made as a competitor, the chain of causation between the termination and the remarks may have been broken, according to two Justices. There was a vigorous dissent.

Again, there was no competition or marketplace or business context in the case at bar. The only context was employment. Peterborough and Carter never had any relationship other than employer-employee. Nothing broke the causal relationship between employment and the act(s) in question.

In conclusion, GAIC submits that the relationship of Peterborough's acts to Carter's employment is patent and indisputable. In fact, an "employment-related practice" or "policy" (exclusion ¶(a)(3)) of prosecution of employees to the fullest extent of the law for suspected workplace pilferage relates not just to the former employee, but sends an important message to the existent workforce, as well. Clearly, the Employment-Related Practices Exclusion applied to the claims against Peterborough and excused GAIC from defense and indemnity as a matter of law.

III.  CHAPTER 93A AND 176D CLAIMS MUST BE DISMISSED

At the outset, it is well settled that alleged violation of M.G.L. c. 176D §3(9) does not support a c. 93A §11, i.e., business against business claim. E.g., Spencer Press, Inc. v. Utica Mut. Ins. Co., 42 Mass.App.Ct. 631, 636 (1997).

More importantly, GAIC's proper and correct denial of coverage does not violate the unfair or deceptive trade practices statutes as a matter of law. Brazas Sporting Arms, Inc., supra, 220 F.3d at 10; Transamerica Ins. Co. v. KMS Patriots, Inc., 52 Mass.App.Ct. 189, 197 (2001).

In fact, even if this Court were to find potential coverage under the policy, GAIC may not be held liable under the consumer protection statutes if its disclaimer was based on a reasonable or plausible interpretation of the policy. O'Connell v. Reliance Ins. Co., 50 Mass.App.Ct. 334, 337 (2000); Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987); Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 754 (1993). It is beyond cavil that GAIC's interpretation of its policy, which is supported by case law, has been at least plausible.

Therefore, Peterborough's c. 93A/176D claim (Count III) against GAIC must be dismissed as a matter of law.

**Conclusion**

As a matter of law, GAIC had no duty to defend or indemnify against Carter's claims. Therefore, Peterborough's motion for summary judgment should be denied. GAIC's cross-motion for summary judgment should be allowed.

Respectfully submitted,

GREAT AMERICAN INSURANCE COMPANY

By its Attorneys,

Date: March 17, 2005

David D. Dowd, BBO#132660
Curley & Curley, P.C.
27 School Street, Suite 600
Boston, MA 02108
(617) 523-2990/(617) 523/7602 fax

**Certificate of Service**

I, David D. Dowd, hereby certify that I served a true and correct copy of the foregoing pleading by mailing a copy postage prepaid to the following counsel of record:

Barry A. Bachrach, Esquire
Bowditch & Dewey LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156

Date: March 17, 2005

David D. Dowd

- 14 -