UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-CV-40252-FDS

PETERBOROUGH OIL COMPANY, INC. and DIANE CLARK,
Plaintiffs,

v.

GREAT AMERICAN INSURANCE CO.
Defendant.

**PLAINTIFF'S BRIEF IN OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT OF DEFENDANT AND REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Peterborough Oil Company, Inc. ("Peterborough") filed this action against Great American Insurance Co. ("Great American") for breach of contract and violations of Massachusetts General Laws Chapters 93A and 176D, seeking defense and indemnification in connection with a suit brought against Peterborough by Cheryl Carter. The case is now before this Court on the parties' cross-motions for summary judgment.

Peterborough submits this brief to address the issues raised by Great American to establish that is entitled to judgment for the defense costs incurred to date in the Carter case, the defense costs to be incurred on appeal, and its costs in bringing this action to require Great American to fulfill its contractual obligations. Since the cases relied upon by Great American are inapposite and since application of the pertinent cases supports Peterborough, it is entitled to judgment that Great American must indemnify Peterborough for the judgment entered against it

in the underlying Carter case. Finally, Peterborough is entitled to summary judgment on its claim under Massachusetts General Laws Chapters 93A and 176D, where, as here, liability is clear and Great American continues to disclaim coverage.

As demonstrated in it principal brief, the Plaintiff in the underlying Carter case alleged that Peterborough maliciously prosecuted her and, after trial, the jury found that Peterborough did so. A judgment was entered against Peterborough in the amount of $300,000. The insurance policy issued by Great American expressly provides coverage for malicious prosecution. There exists no applicable exclusion. Hence, Great American violated its clear and obvious duty to defend and to indemnify Peterborough by its continuing denial of coverage.

**ARGUMENT**

I. The Policy Expressly Provides Coverage For The Underlying Plaintiff Carter's Claims and Judgment For Malicious Prosecution.

Great American concedes, as it must, that the policy at issue expressly provides coverage for malicious prosecution. (Great American Brief at 4-5.) Indeed, Great American admits that the endorsement providing for this coverage is significant because it "CHANGES THE POLICY…." (Great American Brief at 5.)

To avoid this express grant of coverage, Great American relies upon the "EMPLOYMENT-RELATED PRACTICES EXCLUSION." That exclusion, which must be construed strictly under Massachusetts law, has no application in this case. Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 282 (1997); Sterilite Corp. v. Continental Casualty Co., 17 Mass. App. Ct. 316, 318 (1983); Mt. Airy Insurance Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997). Neither the terms of the exclusion nor case law from other jurisdictions supports its application in this case.

A. The "Employment-Related Practices Exclusion."

This Court's analysis must, of course, begin with the plain language of the exclusion:

> This insurance does not apply to:
> 1. "Personal Injury" to:
>    a. a person arising out of any:
>       1. refusal to employ that person;
>       2. termination of that person's employment; or
>       3. employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, decipline[sic], defamation, harassment, humiliation, discrimination directed at that person;...[1]

By the express terms of that exclusion, it can have no application here, particularly when it is construed narrowly in accord with well established Massachusetts law.

The Carter complaint unequivocally states a claim of malicious prosecution against Peterborough. Carter alleged that Peterborough maliciously prosecuted her by allegedly urging the continuation of a criminal prosecution when it allegedly became clear that probable cause did not exist.[2] This is the crux of the underlying Plaintiff's Complaint since she succeeded on a theory of continuing malicious prosecution. The complaint and judgment do not involve a refusal to employ or terminate the underlying Plaintiff Carter. Similarly, the complaint and judgment do not involve "coercion, demotion, evaluation, reassignment, decipline[sic], defamation,

[1] See Great American Brief at 5.

[2] It is alleged in the Complaint, that:

> 23. On May 21, 1999, the Probable Cause hearing before the Clerk-Magistrate in Ayer District Court was resumed. Clark was there as the representative for Peterborough Oil. Counsel for Carter informed the Clerk-Magistrate and Police Officer from the Groton Police Department of the existence of this surveillance tape and the fact that it showed someone other than Carter playing scratch lottery tickets without paying for them. ***Officer Bolonis asked Clark what she wanted to do. Clark advised Officer Bolonis and the Clerk-Magistrate that she still wanted Carter to be prosecuted for larceny over $250.*** (*emphasis added*)

It is also alleged in the Complaint that Carter never again actively worked for Peterborough after it was discovered that over $6,000 was missing on January 21, 1999, and that she was formally terminated on February 16, 1999. (Ex. A to Bachrach Aff. ¶¶11, 15.)

harassment, humiliation [or] discrimination." (Emphasis added.) Put simply, the enumerated exclusionary situations do not exist here. Only an extremely broad and highly attenuated reading of these expressed exclusions could be strained to cover the underlying Plaintiff's complaint and judgment. However, this Court cannot, as Great American requests, read into the exclusion language which does not exist. Thus, the plain application of the language completely undercuts Great American's attempts to avoid it duty to defend and indemnify.

B. The Case Law Does Not Support Great American's Failure To Fulfill Its Contractual Duties.

Both sides agree that there is no Massachusetts case law directly on point. However, courts from other jurisdictions have addressed this exclusion. As discussed below, the cases relied upon by Great American are inapposite and fail to address the issue presented by Peterborough.

Great American primarily relies on the case of Capital Indemnity Corp. v. 1405 Associates, Inc., 340 F.3d 547 (8th Cir. 2003), which fails to address the applicable standard to the issue presented by Peterborough. (Great American Brief at 8.) This case involved underlying claims of arrest and false imprisonment; it did not even involve a claim of malicious prosecution which coverage is expressly provided for by the Great American policy. Moreover, the primary issue, as presented by the insured in that case, was whether the exclusion applied to post-employment conduct. The Court ruled that the exclusion can apply.

Similarly, Great American erroneously relies upon Clinical Research Institute v. Kemper Insurance Co., 84 P.3d 147 (Or. App. 2004.)(Great American Brief at 10).[3] Once again in this

[3] With respect to the duty to defend, however, this case is very helpful to Peterborough. This case held that the failure to identify or separately state claims correctly does not defeat the duty to defend. 84 F.3d at 150. Thus, consistent with Massachusetts law, this Court held that an insurer must provide complete defense if any portion of complaint covered. 84 F.3d at 150.

case, the insured argued that the exclusion did not apply to an employee post-termination. The Court rejected the insured's argument that the employment-related exclusion could not apply post-termination. The Court expressly refused to consider the issue presented in this case: namely, what standard applies to determine whether post-termination allegations come within the employment-relations exclusion; the issue raised by Peterborough by its motion for summary judgment.

Great American also relies on Adams v. North River Insurance Co., 231 F.Supp.2d 499(M.D. La. 2002). This case does not assist Great American because the insured again argued that the exclusion did not apply to post-termination conduct. The Court rejected this argument. The Court specifically refused to address the issue presented here as to what standard applies to determine whether the employment-related exclusion applies, ruling that it was not timely raised and thus waived. 231 F.Supp.2d 499.

II. The Case Law Which Has Addressed The Applicable Test Establishes That Peterborough Is Entitled To Defense And Indemnity From Great American.

Contrary to Great American's brief, the cases relied on by Peterborough establish the applicable standard to determine if post-termination circumstances come within the exclusion at issue. These cases, as applied here, firmly establish that Peterborough is entitled to defense and indemnity.

The case of HS Services v. Nationwide Mutual Insurance Co., 109 F.3d 642 (1997), addresses the issue presented by Peterborough. In determining the appropriate standard, that Court stated (109 F.3d at 646):

> We hold that to 'arise out of" a termination of employment, the defamatory remark at issue must have been a part of or directly and proximately result from the termination....We also hold that for an act or omission to be "employment related," the relationship must be direct and proximate. 109 F.3d at 646. In doing so, it reasoned, "[Although its content is directed to [the underlying Plaintiff's]

> employment, the statements were not made in the context of [the underlying Plaintiff's] employment....While it may be literally true that the remarks "related" to [the underlying Plaintiff's] employment, that relationship was too indirect and attenuated to qualify under the exclusion.(Emphasis added.)

Thus, the issue presented is whether Peterborough's conduct was too "indirect and attenuated to be excluded under an employment practices exclusion. 109 F.3d at 646. See also Waffle House, Inc. v. The Travelers Indemnity Co. of Illinois, 114 S.W. 3d 601, 608-09 (2003); Great American Insurance Co. v. Hartford Insurance, 621 N.E. 2d 796 (Ohio App. 1993). The Waffle House and Great American Courts reason, just as the courts in this Commonwealth, that exclusions must be strictly construed and that such an expansive reading of "arising out of" would virtually read the express grant of coverage out of the policy.[4]

Application of those cases substantiate that the underlying Complaint and the facts reasonably known to Great American established at least a possibility of coverage under the policy for purposes of defense coverage.[5] Moreover, the jury verdict and judgment establish that Carter's claims come within the plain language of the policy for purposes of indemnification.

The plain language of the identified exclusions under the employment related practices simply have no application to the malicious prosecution alleged by Carter. Here, the allegedly wrongful action was Peterborough's statement to a police officer at a probable cause hearing to proceed after which the Clerk Magistrate, in fact, found probable cause to proceed. This was

---

[4] Once again it is significant that a specific endorsement expressly provided coverage for malicious prosecution and that endorsement provided that it changed the terms of the policy.

[5] Great American has to defend Peterborough if the allegations in the underlying Carter suit were "reasonably susceptible" of an interpretation that they state a claim covered by Great American's policy. Merchants Insurance Co. of New Hampshire Inc. v. United States Fidelity & Guarantee Co., 143 F.3d 5, 6-8 (1st Cir. 1998); New England Mutual Life Insurance Co. v. Liberty Mutual Insurance Co., 40 Mass. App. Ct. 722, 723 (1996); Sterilite, 17 Mass. App. Ct. at 318. Put otherwise, an insurer's obligation to defend against a liability claim is determined by the allegations in the complaint and facts known or readily ascertainable by the insurer on investigation can also give rise to a duty to defend. Boston Symphony Orchestra, 406 Mass. at 10-11; Desrosiers v. Royal Insurance Co., 339 Mass. 677, 681-82 (1964).

months after the termination of her employment and too attenuated to directly relate to any of the enumerated exclusions under the "Employment-Related Practices" exclusion. The allegedly actionable conduct by Peterborough was too indirect and too attenuated as a matter of law to come within the employment-related practices exclusion which must be narrowly construed under Massachusetts law. Put simply, a statement at a probably cause hearing cannot possibly have any direct relationship to the employment exclusion, and no insured could reasonably expect that it would.

III. <u>The Massachusetts Doctrine of Reasonable Expectation Of The Insured Further Supports That Peterborough Is Entitled To Coverage.</u>

The Massachusetts Supreme Judicial Court has applied the reasonable expectation doctrine which provides: "When construing language in an insurance policy, we `consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.'" <u>Western Alliance Insurance Co. v. Jarnail Singh Gill</u>, 426 Mass. 115, 117 (1997); <u>Hakim v. Massachusetts Insurers' Insolvency Fund</u>, 424 Mass. 275, 282 (1997); <u>Hazen Paper Co. v. United States Fidelity & Guaranty Co</u>., 407 Mass. 689, 700 (1990); <u>Slater v. United States Fidelity & Guaranty Co</u>., 379 Mass. 801, 803 (1980); <u>Feinberg v. Commercial Union Insurance Co</u>., 54 Mass. App. Ct. 587, 592 (2002); <u>Peters v. United National Insurance Co</u>., 53 Mass. App. Ct. 775, 778 (2002). This rule applies even if the contractual language is unambiguous. See <u>Hazen Paper Co.</u>, 407 Mass. at 700; <u>Bond Bros., Inc. v. Robinson</u>, 393 Mass. 546, 551 (1984); <u>Jefferson Insurance Co. v. Holyoke</u>, 23 Mass. App. Ct. 472, 476-77 (1987).

Courts from other jurisdictions have also generally adopted the reasonable expectation doctrine and have indicated that a contract must be interpreted "to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning." <u>Zacarias v. Allstate Insurance Co.</u>, 775 A.2d 1262, 1264 (2001); <u>Gibson v.</u>

Callaghan, 730 A.2d 1278, 1283 (N.J. 1999). Thus, as stated by the New Jersey Supreme Court, "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though a painstaking study of the policy provisions would have negated those expectations." Sparks v. St. Paul Insurance Co., 495 A.2d 406, 414 (N.J. 1985) (quoting R. Keaton, Insurance Law 351 (1971). See also Atwater Creamery Co. v. Western National Mutual Insurance Co., 366 N.W. 2d 271, 277 (Minn. 1985) (Minnesota Supreme Court overruled trial court's determination that coverage was unavailable for burglary, stating, "[t]he doctrine does not automatically remove from the insured a responsibility to read the policy. It does, however, recognize that in certain instances, such as where major exclusions are hidden in the definitions section, the insured should be held only to reasonable knowledge of the literal terms and conditions.")

To be sure, any objective insured would reasonably expect coverage in the circumstances presented. The Great American Policy expressly provides coverage for malicious prosecution. Indeed, it did so by a special endorsement which, by its language, changed the terms of the policy. The claim of malicious prosecution obviously involves some type of civil or criminal prosecution. A reasonable insured would not expect to be deprived of coverage by simply informing a police officer, some several months after the employee's termination, that the probable cause hearing should proceed in the face of a question whether to do so just prior to the second day of hearings before a Clerk Magistrate. Indeed, to apply the exclusion here would virtually write out the grant of coverage expressly provided. Such application of an exclusion violates Massachusetts law. See Vappi & Co. v, Aetna Casualty & Insurance Co., 348 Mass. 427, 431 (1965). See also R.Keeton, Insurance Law at Variance with Policy Provisions, 89 Harv. L. Rev. 961, 967 (1970); Merchants Insurance Co. of New Hampshire v. USF &G, 145 F.3d 5(1st

Cir. 1998). Thus, Peterborough's motion should be granted because of the inconsistency between the express grant of coverage and the exclusion at issue as applied to this case.

IV. Great American Must Provide Indemnity For The Malicious Prosecution Claim Because Great American Cannot Apportion The Jury's Verdict By Which It Is Bound.

Without citing any authority, Great American claims it has no obligation to indemnify Peterborough because the jury verdict awarded the underlying Plaintiff Carter $300,000 dollars under the malicious prosecution claim as well as an intentional infliction claim. (Great American Brief at 3-4.) This argument ignores well established law and should be rejected.

In EEOC v. Southern Pub. Co., 894 F.2d 785, 791 (5th Cir. 1999), the Court held that the insured must pay indemnification costs, unless the costs can be readily apportioned. In the instant case, Great American cannot allocate the damages between covered and non-covered claims. They are simply not allocable under the jury verdict rendered. Hence, Great American must provide complete indemnification to Peterborough.

V. Great American's Denial Of Coverage Violated Massachusetts General Laws 93A and 176D.

It is a violation of Massachusetts General Laws Chapters 93A, § 11, and 176D, § (3)(d) if an insurance company denies coverage where coverage is clear. Great American's obligation to defend and indemnify Peterborough were clear under the policy terms. Great American ignored its clear and absolute obligations. Indeed, based on the information available to Great American, it can be concluded only that such violations were willful and knowing violations of Chapters 93A and 176D. Thus, this Court should find Great American liable under those statutes and award Peterborough double or treble costs and its reasonable attorney's fees.

## CONCLUSION

For the reasons set forth in Peterborough's principle brief and above, Great American was obligated to provide a defense. Since the claims as alleged in the Complaint reasonably adumbrate a covered claim, Great American breached its obligation to provide Peterborough with a complete defense in this case, regardless of whether a claim may not have been covered. That breach continues since the case is on appeal and Great American continues to deny its duty to provide defense. Hence, this Court should enter judgment against Great American ruling that it must reimburse Peterborough for costs incurred to date, the costs of appeal, and the attorney's fees and costs of bringing this action. Liberty Mutual Insurance Co. v. Continental Casualty Co., 771 F.2d 579, 582 (1st Cir. 1985); Rubenstein v. Royal Insurance Co. of America, 44 Mass. App. Ct. 842, 852 (1998).[6]

In addition, Great American is obligated to indemnify Peterborough for the judgment rendered against it on the underlying Plaintiff's malicious judgment claim. Great American has set forth no basis for avoiding its obligations. Thus, this Court should grant Peterborough's motion for summary judgment and enter judgment in its favor for defense costs, indemnification and under Chapter 93A.

PETERBOROUGH OIL COMPANY, INC.
and DIANE CLARK
By their attorneys,

Barry A. Bachrach (BBO #025490)
James P. Hoban (BBO #633929)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

Date: April 7, 2005

[6] This issue was affirmed in Rubenstein v. Royal Insurance Co. of America, 429 Mass. 355, 356 (1999).